# Exhibit A

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **PAOLINA MILARDO and ARNALDO GIAMMARCO,**<br><br>**Petitioners,**<br><br>**v.**<br><br>**R. GIL KERLIKOWSKE, Commissioner, U.S. Customs and Border Protection; JEH JOHNSON, Secretary, U.S. Department of Homeland Security; SARAH SALDAÑA; Director, U.S. Immigration and Customs Enforcement; and LORETTA E. LYNCH, Attorney General,**<br><br>**Respondents.** | **Misc. No. ________________**<br><br>**March 16, 2016** |

**DECLARATION OF ATTORNEY MICHAEL J. WISHNIE IN SUPPORT OF EMERGENCY PETITION FOR WRITS OF HABEAS CORPUS *AD TESTIFICANDUM***

**I, Michael J. Wishnie, in accordance with 28 U.S.C. § 1746, declare as follows:**

1. **I am a licensed attorney in the State of Connecticut and am admitted to practice in the District of Connecticut. I am counsel of record for Petitioners Arnaldo Giammarco and Paolina Milardo in this matter. I am personally familiar with the facts stated below and, if called as a witness, could testify competently thereto.**

2. **Attached as Exhibit 1 are true and accurate copies of the subpoenas issued by Representative William Tong and Senator Eric D. Coleman, co-chairs of the Connecticut General Assembly's Judiciary Committee, commanding the in-person testimony at the Committee's informational hearing**

**scheduled for April 4, 2016 in Hartford of Petitioners Milardo and Giammarco.**

3. **Attached as Exhibit 2 are true and correct copies of letters from Sean Gallagher, Field Office Director, Boston Field Office, U.S. Department of Homeland Security, dated March 8, 2016, denying the applications of Petitioners Milardo and Giammarco for humanitarian parole to comply with their subpoenas.**
4. **A true and accurate copy of a webpage confirming Petitioner Milardo's denial of ESTA (Electronic System of Travel Authorization) is attached as Exhibit 3. A true and accurate copy of a webpage confirming Petitioner Giammarco's denial of ESTA (Electronic System of Travel Authorization) is attached as Exhibit 4.**
5. **A true and accurate copy of a confirmation of Petitioner Milardo's DS-160 form is attached as Exhibit 5 and a true and accurate copy of an email confirming her consular appointment is attached as Exhibit 6.**
6. **A true and accurate copy of a confirmation of Petitioner Giammarco's DS-160 form is attached as Exhibit 7 and a true and accurate copy of a confirmation of his consular appointment is attached as Exhibit 8.**
7. **Attached as Exhibit 9 is a true and accurate copy of a letter from the Connecticut Department of Mental Health and Addiction Services regarding Petitioner Milardo's treatment with Problem Gambling Services for her gambling disorder.**

8. **Attached as Exhibit 10 is a true and accurate copy of Petitioner Milardo's Order of Removal in U.S. Immigration Court.**

9. **Attached as Exhibit 11 is a true and accurate copy of a decision from the U.S. Department of Veterans Affairs stating Petitioner Milardo's husband, Anthony Milardo's, rating of disability connected with his military service.**

10. **Attached as Exhibit 12 is a true and accurate copy the online docket for Petitioner Milardo's state habeas case in Connecticut Superior Court, confirming her trial dates as April 18 and 20, 2016.**

11. **Attached as Exhibit 13 is a true and accurate copy of Petitioner Giammarco's DD-214 form. Attached as Exhibit 14 is a true and accurate copy of Petitioner Giammarco's Enlisted Evaluation Report.**

12. **Attached as Exhibit 15 is a true and accurate copy of the decision by Board of Immigration Appeals dismissing Petitioner Giammarco's appeal and affirming his order of removal.**

13. **Attached as Exhibit 16 is a true and accurate copy of the memorandum in opposition to a motion to quash in *In re Evangelos Dimitrios Soukas*. *See* App. to Mem. in Opp. to Mot. to Quash, *In re Evangelos Dimitrios Soukas*, No. 1:07-mc-00134-TFH (D.D.C. Apr. 10, 2007), ECF No. 3.**

14. **Attached as Exhibit 17 is an unaltered screenshot of an Internet Reliability Test Petitioner Milardo did on her computer in her apartment in Melilli, Sicily on March 8, 2016. Also attached as Exhibit 18 is a true and accurate excerpt of Akamai's 2015 State of the Internet Report.**

15. Attached as Exhibit 19 is a true and accurate copy of the email from Leonard Boyle, Deputy Chief State's Attorney, dated March 20, 2014, informing me that the state's attorneys who prosecuted Petitioner Giammarco did not oppose his pardon application.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: March 16, 2016
New Haven, CT

__/s/Michael Wishnie_________________
Michael J. Wishnie (ct27221)
Jerome N. Frank Legal Services
Organization

# Exhibit 1

# STATE OF CONNECTICUT
# GENERAL ASSEMBLY
# JUDICIARY COMMITTEE

## SUBPOENA AD TESTIFICANDUM

To: Paolina Milardo
Via Mameli #1
Melilli PR 96010, Italia

c/o Michael J. Wishnie, Esq.
Jerome N. Frank Legal Services Organization
Yale Law School
127 Wall Street
New Haven, CT 06511
*Counsel and Authorized Representative for Service*

**GREETINGS:**

**BY AUTHORITY OF THE STATE OF CONNECTICUT**, and more particularly pursuant to section 2-46 of the Connecticut General Statutes, you are hereby commanded to appear before the Judiciary Committee of the Connecticut General Assembly, at an informational hearing to be held in Room 2C of the Legislative Office Building in Hartford, Connecticut at 1:00 p.m., on April 4, 2016, or on such day when such hearing is reconvened, to give your testimony on what you know regarding the inquiry before the committee concerning the impact of Connecticut criminal convictions on immigrant households, including the Milardo family, affected by deportation or threat of deportation. Your presence is necessary for committee members to evaluate your credibility, as well as your acceptance of responsibility and remorse for the specific events that occurred in this state which resulted in your deportation from the United States of America.

HEREOF fail not, under penalty of law

To any proper officer to serve and return.

Dated at Hartford, Connecticut this 25 day of February, 2016

Representative William Tong
House Co-Chairperson
Judiciary Committee
Connecticut General Assembly

Senator Eric D. Coleman
Senate Co-Chairperson
Judiciary Committee
Connecticut General Assembly

A TRUE COPY
ATTEST:

MICHAEL DELORENZO
CONNECTICUT STATE MARSHAL
& INDIFFERENT PERSON

# STATE OF CONNECTICUT
# GENERAL ASSEMBLY
# JUDICIARY COMMITTEE

## SUBPOENA AD TESTIFICANDUM

To: Arnaldo Giammarco
Via Sulmona 20
67030 Campo di Fano AQ, Italia

c/o Michael J. Wishnie, Esq.
Jerome N. Frank Legal Services Organization
Yale Law School
127 Wall Street
New Haven, CT 06511
*Counsel and Authorized Representative for Service*

GREETINGS:

**BY AUTHORITY OF THE STATE OF CONNECTICUT**, and more particularly pursuant to section 2-46 of the Connecticut General Statutes, you are hereby commanded to appear before the Judiciary Committee of the Connecticut General Assembly, at an informational hearing to be held in Room 2C of the Legislative Office Building in Hartford, Connecticut at 1:00 p.m., on April 4, 2016, or on such day when such hearing is reconvened, to give your testimony on what you know regarding the inquiry before the committee concerning the impact of Connecticut criminal convictions on immigrant households, including the Giammarco family, affected by deportation or threat of deportation. Your presence is necessary for committee members to evaluate your credibility, as well as your acceptance of responsibility and remorse for the specific events that occurred in this state which resulted in your deportation from the United States of America.

HEREOF fail not, under penalty of law

To any proper officer to serve and return.

Dated at Hartford, Connecticut this 25th day of February, 2016

Representative William Tong
House Co-Chairperson
Judiciary Committee
Connecticut General Assembly

Senator Eric D. Coleman
Senate Co-Chairperson
Judiciary Committee
Connecticut General Assembly

A TRUE COPY
ATTEST:

MICHAEL DELORENZO
CONNECTICUT STATE MARSHAL
& INDIFFERENT PERSON

# Exhibit 2

*Enforcement and Removal Operation*
*Boston Field Office*

**U.S. Department of Homeland Security**
10 New England Executive Park
Burlington, MA 01803

U.S. Immigration
and Customs
Enforcement

March 8, 2016

Michael J. Wishnie
The Jerome N. Frank Legal Services Organization
Yale Law School
P.O. Box 209090
New Haven, CT 06520-9090

RE: Request for Significant Public Benefit and Humanitarian Parole
Paolina Milardo; a.k.a, Paolina Emanuele

Dear Mr. Wishnie:

Reference is made to your February 29, 2016 request for significant public benefit and humanitarian parole, which was filed on behalf of your client Paolina Milardo.

The basis of your request is that the Judiciary Committee of the Connecticut General Assembly has subpoenaed your client to appear at an informational hearing on April 4, 2016, to give testimony on the impact of Connecticut criminal convictions on immigrant households; to serve as a witness in her state habeas trial, and to reunite Ms. Milardo with her family.

Prosecutorial discretion is the authority of an agency charged with enforcing a law to decide to what degree to enforce the law against a particular individual. U.S. Immigration and Customs Enforcement (ICE), like any other law enforcement agency, has prosecutorial discretion and may exercise it in the ordinary course of enforcement. These discretionary decisions take on different forms and include requests for parole. Such decisions are made on a case-by-case basis, after considering the totality of the circumstances, both positive and negative, and must conform with ICE's enforcement priorities, namely national security, public safety, and border security.

Humanitarian parole is used sparingly to bring someone who is otherwise inadmissible into the United States for a temporary period of time due to a compelling emergency. Significant public benefit parole is a temporary measure generally used to provide a legal mechanism for informants, witnesses, criminals, and defendants who are otherwise inadmissible to be present in the United States so that they may assist with ongoing investigations, prosecutions, or testify as witnesses in proceedings being, or to be, conducted by judicial, administrative, or legislative bodies.

After careful consideration of all factors addressed in your request, it has been determined that the granting of parole is not warranted in Ms. Milardo's case.

There is no compelling emergent reason to justify humanitarian parole. Moreover, Ms. Milardo's physical presence in the United States is not necessary to provide testimony before the Judiciary Committee of the Connecticut General Assembly's informational hearing, or at her state habeas trial. Videoconferencing technologies are widely utilized across the country for a variety of reasons. The most widespread and accepted use of videoconferencing in the courtroom is remote witness testimony, which is authorized in federal civil cases by Federal Rule of Civil Procedure 43(a). Such technology has been widely embraced in state and federal courts in the United States, as well as abroad.

Please note that ICE has many offices overseas, including in Italy. In an effort to facilitate Ms. Milardo's testimony before at the Judiciary Committee of the Connecticut General Assembly's informational hearing on April 4, 2016, I may be able to provide Ms. Milardo access to ICE video teleconferencing resources. If Ms. Milardo decides to avail herself of this opportunity, please feel free to reach out to our Hartford office and we will begin making arrangements.

Sincerely,

Sean Gallagher
Field Office Director

*Enforcement and Removal Operation*
*Boston Field Office*

**U.S. Department of Homeland Security**
10 New England Executive Park
Burlington, MA 01803

U.S. Immigration
and Customs
Enforcement

March 8, 2016

Michael J. Wishnie
The Jerome N. Frank Legal Services Organization
Yale Law School
P.O. Box 209090
New Haven, CT 06520-9090

RE: Request for Significant Public Benefit and Humanitarian Parole
Arnaldo Giammarco A012 013 630

Dear Mr. Wishnie:

Reference is made to your February 29, 2016 request for significant public benefit and humanitarian parole, which was filed on behalf of your client Arnaldo Giammarco.

The basis of your request is that the Judiciary Committee of the Connecticut General Assembly has subpoenaed your client to appear at an informational hearing on April 4, 2016, to give testimony on the impact of Connecticut criminal convictions on immigrant households, as well as to reunite Mr. Giammarco with his family.

Prosecutorial discretion is the authority of an agency charged with enforcing a law to decide to what degree to enforce the law against a particular individual. U.S. Immigration and Customs Enforcement (ICE), like any other law enforcement agency, has prosecutorial discretion and may exercise it in the ordinary course of enforcement. These discretionary decisions take on different forms and include requests for parole. Such decisions are made on a case-by-case basis, after considering the totality of the circumstances, both positive and negative, and must conform with ICE's enforcement priorities, namely national security, public safety, and border security.

Humanitarian parole is used sparingly to bring someone who is otherwise inadmissible into the United States for a temporary period of time due to a compelling emergency. Significant public benefit parole is a temporary measure generally used to provide a legal mechanism for informants, witnesses, criminals, and defendants who are otherwise inadmissible to be present in the United States so that they may assist with ongoing investigations, prosecutions, or testify as witnesses in proceedings being, or to be, conducted by judicial, administrative, or legislative bodies.

After careful consideration of all factors addressed in your request, it has been determined that the granting of parole is not warranted in Mr. Giammarco's case.

There is no compelling emergent reason to justify humanitarian parole.  Moreover, Mr. Giammarco's physical presence in the United States is not necessary to provide testimony before the Judiciary Committee of the Connecticut General Assembly's informational hearing.  Videoconferencing technologies are widely utilized across the country for a variety of reasons. The most widespread and accepted use of videoconferencing in the courtroom is remote witness testimony, which is authorized in federal civil cases by Federal Rule of Civil Procedure 43(a).  Such technology has been widely embraced in state and federal courts in the United States, as well as abroad.

Please note that ICE has many offices overseas, including in Italy. In an effort to facilitate Mr. Giammarco's testimony before at the Judiciary Committee of the Connecticut General Assembly's informational hearing on April 4, 2016, I may be able to provide Mr. Giammarco access to ICE video teleconferencing resources.  If Mr. Giammarco decides to avail himself of this opportunity, please feel free to reach out to our Hartford office and we will begin making arrangements.


Sincerely,

Sean Gallagher
Field Office Director

# Exhibit 3

 Official Website of the Department of Homeland Security

U.S. Customs and
Border Protection

ESTA
Electronic System for
Travel Authorization

# TRAVEL NOT AUTHORIZED

You are not authorized to travel to the United States under the Visa Waiver Program. You may be able to obtain a visa from the Department of State for your travel. Please visit the United States Department of State website at http://www.travel.state.gov/ for additional information about applying for a visa.

## PAYMENT RECEIPT

You have successfully submitted payment for the application listed below. A request by the cardholder to the bank for a refund of fees will result in an automatic denial of the application. Please print this page for your personal records.

| NAME | DATE OF BIRTH | APPLICATION NUMBER | PASSPORT NUMBER | STATUS | EXPIRES |
|---|---|---|---|---|---|
| PAOLINA EMANUELE | Mar 9, 1950 | RWWXRB8BRWQFKT2H | YA4363863 | Travel Not Authorized | N/A |

**PAYMENT SUMMARY**

| | |
|---|---|
| **PAYMENT RECEIVED:** | US $4.00 |
| **PAYMENT DATE:** | March 6, 2016 3:58:57 PM |
| **PAYMENT TRACKING CODE:** | 153413 |

**DHS RECOMMENDS YOU PRINT THIS SCREEN FOR YOUR RECORDS.**

Paperwork Reduction Act: An agency may not conduct or sponsor an information collection and a person is not required to respond to this information unless it

displays a current valid OMB control number and an expiration date. The control number for this collection is 1651-0111. The estimated average time to complete this application is 22 minutes. If you have any comments regarding this burden estimate you can write to U.S. Customs and Border Protection, Office of Regulations and Rulings, 90 K Street, NE, 10th Floor, Washington DC 20229. Expiration Sep 30, 2018.

The ESTA logo is a registered trademark of the U.S. Department of Homeland Security. Its use, without permission, is unauthorized and in violation of trademark law. For more information, or to request the use of the logo, please go to **help.cbp.gov** and submit a request by clicking on "Ask a Question." When selecting the Product (under Additional Information) use "ESTA" and the sub-product "Logo Assistance" to expedite handling of your request.

# Exhibit 4

 Official Website of the Department of Homeland Security

U.S. Customs and
Border Protection

ESTA
Electronic System for
Travel Authorization

# TRAVEL NOT AUTHORIZED

You are not authorized to travel to the United States under the Visa Waiver Program. You may be able to obtain a visa from the Department of State for your travel. Please visit the United States Department of State website at http://www.travel.state.gov/ for additional information about applying for a visa.

## PAYMENT RECEIPT

You have successfully submitted payment for the application listed below. A request by the cardholder to the bank for a refund of fees will result in an automatic denial of the application. Please print this page for your personal records.

| NAME | DATE OF BIRTH | APPLICATION NUMBER | PASSPORT NUMBER | STATUS | EXPIRES |
|---|---|---|---|---|---|
| ARNOLDO GIAMMARCO | Jan 18, 1956 | R799RB97RWQ44H2F | YA4080858 | Travel Not Authorized | N/A |

**PAYMENT SUMMARY**

| | |
|---|---|
| **PAYMENT RECEIVED:** | US $4.00 |
| **PAYMENT DATE:** | March 6, 2016 2:45:24 PM |
| **PAYMENT TRACKING CODE:** | 018145 |

**DHS RECOMMENDS YOU PRINT THIS SCREEN FOR YOUR RECORDS.**

Paperwork Reduction Act: An agency may not conduct or sponsor an information collection and a person is not required to respond to this information unless it

displays a current valid OMB control number and an expiration date. The control number for this collection is 1651-0111. The estimated average time to complete this application is 22 minutes. If you have any comments regarding this burden estimate you can write to U.S. Customs and Border Protection, Office of Regulations and Rulings, 90 K Street, NE, 10th Floor, Washington DC 20229. Expiration Sep 30, 2018.

The ESTA logo is a registered trademark of the U.S. Department of Homeland Security. Its use, without permission, is unauthorized and in violation of trademark law. For more information, or to request the use of the logo, please go to **help.cbp.gov** and submit a request by clicking on "Ask a Question." When selecting the Product (under Additional Information) use "ESTA" and the sub-product "Logo Assistance" to expedite handling of your request.

# Exhibit 5



U.S. DEPARTMENT of STATE
CONSULAR ELECTRONIC APPLICATION CENTER

Online Nonimmigrant Visa Application (DS-160)

# Confirmation

**This confirms the submission of the Nonimmigrant visa application for:**

| | |
|---|---|
| Name Provided: | EMANUELE, PAOLINA |
| Date Of Birth: | 09 MAR 1950 |
| Place of Birth: | MELILLI, ITALY |
| Gender: | Female |
| Country/Region of Origin (Nationality) : | ITALY |
| Passport Number: | YA4363863 |
| Purpose of Travel: | BUSINESS/PERSONAL (B1/B2) |
| Completed On: | 10 MAR 2016 |
| Confirmation No: | **AA005RX28U** |

**THIS IS NOT A VISA**

Location Selected:

**NPL**
**U.S. Consulate General Naples**
**Piazza della Repubblica**
**Naples, Italy**

Version 01.02.02

Note: Electronically submitting your DS-160 online application is the FIRST STEP in the visa application process. The next step is to review the internet page of the embassy or consulate where you plan to apply for your visa. Most visa applicants will need to schedule a visa interview, though some applicants may qualify for visa renewal. The embassy or consulate information may include specific local instructions about scheduling interviews, submitting your visa application, and other frequently asked questions.

**YOU MUST BRING** the confirmation page and the following document(s) with you at all steps during the application process:

**Passport**

You may also provide any additional documents you feel will support your case.



**YOU MUST SUBMIT** the confirmation page with a clear and legible barcode at the time of your interview. If you do not have access to a printer at this time, select the option to email your confirmation page to an email address. You may print or email your application for your own records. **YOU DO NOT** need to submit the application at the time of the interview.

Please note that you will be required to provide proof that you have paid the visa application fee and any other fees associated with your application. There may be other fees associated with the visa application process. Please check your country's Reciprocity Schedule for any other fees you may owe.

If you have further questions, or to find out how to contact the Consular Post, please go to http://italy.usembassy.gov or http://travel.state.gov.

NOTE: Unless exempt from an interview, you will be required to sign your application by providing a biometric signature, i.e. your fingerprint before a consular officer. By providing this biometric signature you are certifying under penalty of perjury that you have read and understood the questions in your nonimmigrant visa application and that all statements that appear in your nonimmigrant visa application have been made by you and are true and complete to the best of your knowledge and belief. Furthermore at the time of your interview, you will be required to certify under penalty of perjury that all statements in your application and those made during your interview are true and compete to the best of your knowledge and belief.

You electronically signed your application on 10-Mar-2016 08:42:25 (GMT-05:00). You were required to electronically sign your application yourself, unless otherwise exempt by regulation, even if the application was prepared by someone other than yourself. Your electronic signature certifies that you have read and understood the questions in this application and that your answers are true and correct to the best of your knowledge and belief. The submission of an application containing any false or misleading statements may result in the permanent refusal of a visa or the denial of entry into the United States. All declarations made in this application are unsworn declarations made under penalty of perjury. (28 U.S.C. 1746).

You certified that you understand that you are required to submit your visa to the United States Immigration Officer at the port where you apply to enter the United States, and that possession of the visa does not entitle you to enter the United States if, upon your arrival, you are found to be inadmissible under U.S. immigration laws. You certified that you understand that any willfully false or misleading statement or willful concealment of a material fact made by you within the application may subject you to permanent exclusion from the United States and, if you are admitted to the United States, may subject you to criminal prosecution and/or deportation.

The information that you have provided in your application and other information submitted with your application may be accessible to other government agencies having statutory or other lawful authority to use such information, including for law enforcement and immigration law enforcement purposes. If fingerprints are collected as part of your application process, they may be used for the purpose of comparing them to other fingerprints in the FBI's Next Generation Identification (NGI) fingerprint system or its successor systems (including civil, criminal, and latent fingerprint repositories). The photograph that you provide with your application may be used for employment verification or other U.S. law purposes.

# Exhibit 6

**From:** **Ram, Megha** megha.ram@clinics.yale.edu
**Subject:** FW: [Teammilardo] L'appuntamento è stato fissato.
**Date:** March 10, 2016 at 9:31 AM
**To:** Hallett, Nicole nicole.hallett@yale.edu, Parkin, Jason jason.parkin@yale.edu, teammilardo@mailman.yale.edu, SThypinBermeo@nyclu.org, Korthuis, Aaron aaron.korthuis@clinics.yale.edu, Simonich, Claire claire.simonich@clinics.yale.edu

RM

Here is confirmation of Paula's appointment. Scroll down for English.

---------------
Megha Ram
Law Student Intern
Jerome N. Frank Legal Services Organization
Yale Law School

PRIVILEGED AND CONFIDENTIAL
This e-mail message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential, and exempt from disclosure. If you are not the intended recipient, please do not disseminate, distribute, or copy this communication, by e-mail or otherwise. Instead, please notify me immediately by return e-mail (including the original message in your reply) and by telephone and then delete and discard all copies of the e-mail.

---

**From:** donotreply@usvisa-info.com [donotreply@usvisa-info.com]
**Sent:** Thursday, March 10, 2016 9:29 AM
**To:** Ram, Megha
**Subject:** L'appuntamento è stato fissato.

È stato fissato con successo un appuntamento per la richiesta di Visto per non immigranti per gli Stati Uniti.

**Si prega di verificare i dettagli dell'appuntamento illustrati di seguito.**

**Apprezziamo la vostra opinione!** Vi chiediamo cortesemente di completare un breve sondaggio, per farci sapere cosa ne pensate del nostro servizio:

Partecipa al Sondaggio sulla Soddisfazione del Cliente

**Grazie per le Sue risposte!**

Print

L’aggiornamento della consegna dei documenti di richiesta Visto ad un recapito personale o aziendale è disponibile per **30.00 EUR**.

**Acquista l’aggiornamento della consegna ad un recapito personale o aziendale**

# CSC/DoS americano Istruzioni per visto non immigrante

Si prega di leggere per intero le presenti istruzioni. La mancata aderenza alle presenti istruzioni può ritardare l'approvazione della Sua richiesta di visto USA non immigrante.

Per completare questa richiesta di visto USA non immigrante, ciascun richiedente elencato qui di

seguito deve comparire per un'intervista personale presso il consolato americano recando i documenti di supporto alla richiesta di visto.

Raccogliere i documenti per ciascun richiedente elencato qui di seguito. Fare in modo che ciascun richiedente porti con sé una copia delle sue istruzioni individuali all'intervista presso il consolato.

---

# Istruzioni per la richiesta di visto

| | |
|---|---|
| **Nome del richiedente** | **Paolina Emanuele** |
| **Classe di visto** | B1/B2 Affari e turismo (visitatore temporaneo) |
| **Numero DS-160** | AA005RX28U |
| **Numero di passaporto** | YA4363863 |
| **Sede DoS** | Naples |
| **Numero DS-160** |  AA005RX28U |
| **Numero di passaporto** |  YA4363863 |

Si deve presentare per un'intervista di persona presso il consolato. Raduni i documenti elencati qui di seguito e li porti con sé in occasione del Suo appuntamento, insieme a una copia delle presenti istruzioni.

In generale, solo coloro che richiedono un Visto ed hanno un appuntamento fissato sono autorizzati ad entrare nella Sezione Consolare. I genitori o i tutori legali sono autorizzati ad accompagnare i figli minori. Per istruzioni specifiche riguardanti traduttori o badanti, visitare il sito web della Sezione Consolare.

Tutti i visitatori della Sezione Consolare sono sottoposti a controlli da parte del personale di sicurezza prima dell'ingresso. Per saperne di più sulle misure di sicurezza e sulle limitazioni si prega di visitare il sito Web della Sezione Consolare http://italy.usembassy.gov/visa/procedures.html.

**Data dell'intervista presso il consolato:**
17 March, 2016, 08:00 CET
**Sede:**
Piazza della Repubblica
Naples,
80122
Ha tempo fino al 16 March, 2016, 15:00 CET per cancellare o riprogrammare l'appuntamento. È possibile cancellare o riprogrammare l'appuntamento dalla "Pagina di riepilogo richiedente".

# Documenti generali richiesti per tutti i tipi di Visto

I seguenti documenti sono richiesti per tutti i tipi di visto:

1. Passaporto in corso di validità e valido per recarsi negli Stati Uniti. Il passaporto deve essere valido per almeno sei mesi oltre il periodo di permanenza negli Stati Uniti (a meno che non sia previsto diversamente da accordi specifici tra Paesi).
2. Il passaporto contentente il Visto per gli Stati Uniti emesso più di recente (se applicabile).
3. Pagina di conferma del modulo DS-160 per la richiesta di visto non immigrante.
4. Pagina di Conferma ed Istruzioni Stampata da questo sito web.
5. Una fotografia a colori di 5 cm per lato scattata negli ultimi 6 mesi. Ulteriori dettagli relativi alle linee guida del Dipartimento di Stato in merito alla fotografia si trovano alla pagina: http://travel.state.gov/content/passports/english/passports/photos/photos.html.
6. I familiari accompagnatori, a meno che non entrino negli Stati Uniti per un motivo diverso, devono presentare un certificato di matrimonio (il coniuge) e/o un certificato di nascita (figli non sposati di età inferiore a 21 anni), a seconda del caso. Numerosi tipi di visto richiedono ulteriori documenti. Si veda la sezione qui di seguito.

## (B) VISITATORE: AFFARI, TURISMO, CURE MEDICHE

- Siate pronti a presentare i seguenti documenti, se viaggiate per cure mediche:
  - Diagnosi medica stilata da un medico locale, in cui sia descritta la natura della patologia e il motivo per il quale è necessario sottoporsi a terapie negli Stati Uniti.
  - Lettera di un medico o di una struttura medica negli Stati Uniti indicante la disponibilità a trattare la patologia diagnosticata e in cui venga descritta dettagliatamente la durata e il costo della terapia (incluse spese per l'onorario del medico, costi di ricovero e qualsiasi altra spesa di natura medica).
  - Prova della copertura delle spese di trasporto e mediche, nonché disponibilità finanziaria sufficiente a garantire il proprio sostentamento negli Stati Uniti. Ciò può essere effettuato tramite documentazione bancaria o altre dichiarazioni in merito a reddito/risparmi o tramite copie certificate della dichiarazione dei redditi (del paziente o della persona o dell'organizzazione che paga le terapie).

Possono essere utili, a sostegno della domanda di visto, documenti comprovanti le seguenti condizioni:

condizioni:

**NOTA: I richiedenti ai quali non è richiesto di effettuare un colloquio consolare, non devono presentare i documenti elencati di seguito. I documenti elencati di seguito sono richiesti solo per i richiedenti che hanno un appuntamento per un colloquio consolare di persona.**

- La volontà di lasciare gli Stati Uniti al termine del viaggio.
- La disponibilità di fondi sufficienti a coprire tutte le spese durante il soggiorno negli Stati Uniti.
- La prova che si abbiano legami significativi con il paese in cui si intende ritornare al termine del soggiorno negli Stati Uniti (ciò è generalmente dimostrato provando di avere una famiglia, una professione, delle proprietà, un impiego o altri legami e impegni in un paese diverso dagli Stati Uniti).

# Tassa di Emissione del Visto (Tassa di Reciprocità)

A seconda del Paese di cittadinanza del richiedente e del tipo di visto, il richiedente potrebbe anche dover pagare una tariffa aggiuntiva per l'emissione del visto, nota come tassa di reciprocità. Informazioni dettagliate in merito alla tassa di reciprocità si trovano alla pagina http://travel.state.gov/content/visas/english/fees/reciprocity-by-country.html

# Restituzione dei Documenti

**Tipo di Consegna:**Ritiro dei Documenti di Persona
**Indirizzo di Consegna:**Via Galileo Galilei
snc - Zona Industriale
CARINI (PA), SICILIA, 90044
Italy

Avete tempo fino al 17 March, 2016, 06:00 CET per modificare la sede presso la quale saranno consegnati i documenti relativi al visto. Trascorso tale termine, l'opzione per modificare la sede del corriere verrà disattivata dal vostro account e a quel punto non sarà più consentito alcun cambiamento.

Istruzioni di stampa

---

You have successfully scheduled an appointment for your U.S. Nonimmigrant Visa application.

**Please verify your appointment details, shown below.**

**We Value Your Opinion!** Please complete a short survey and let us know how we are doing:

Take Customer Satisfaction Survey

**Thank you for your feedback!**

Print

Delivery upgrade of your visa application documents to a personal or business address is available for **30.00 EUR**.

**Purchase delivery upgrade to personal or business address**

# CSC/United States DoS Nonimmigrant Visa Instructions

Please read these instructions in their entirety. Failure to comply with these instructions may delay the approval of your U.S. Nonimmigrant Visa application.

To complete this application for a U.S. Nonimmigrant Visa, each applicant listed below must appear with supporting Visa application documents for an in-person interview at the U.S. Consular Section.

Please gather the documents for each applicant listed below. Have each of the applicants bring a copy of their individual instructions with them to the Consular Section interview.

---

# Instructions for Paolina Emanuele

| | |
|---|---|
| **Applicant Name** | **Paolina Emanuele** |
| **Visa Class** | B1/B2 Business & Tourism (Temporary visitor) |
| **DS-160 Number** | AA005RX28U |
| **Passport Number** | YA4363863 |
| **Destination** | Naples |

**DS-160 Number**

AA005RX28U



**Passport Number** 

YA4363863

You must appear for an in-person interview at the Consular Section. Please gather the documents listed below and bring them with you to your interview and a copy of these instructions.

In general, only Visa applicants with scheduled appointments are allowed to enter the Consular Section. Parents or legal guardians are allowed to accompany minor children. For special instructions concerning translators or caregivers, visit the Consular Section website.

All visitors to the Consular Section are screened by security personnel prior to entry. To learn more about the security precautions and restrictions please visit the Consular Section Web site at http://italy.usembassy.gov/visa/procedures.html.

**Consular Section Interview Date:**
17 March, 2016, 08:00 CET
**Consular Section Location:**
Piazza della Repubblica
Naples,
80122
You have until 16 March, 2016, 15:00 CET to cancel or reschedule your appointment. You can cancel or reschedule your appointment from the "Applicant Summary Page".

# General Required Documents - For All Visa Types

The following documents are required for all visa types:

1. Current Passport valid for travel to the United States. The passport must be valid for at least six months beyond the period of stay in the United States (unless exempt by country-specific agreements.)
2. Passport containing the most recently issued U.S. Visa (if applicable).
3. Nonimmigrant Visa Application, Form DS-160 confirmation page.
4. Confirmation and Instructions page printed from this website
5. One 5 x 5 cm (or 2" x 2") color photo taken within the last 6 months. Further details regarding Department of State photo guidelines can be found at: http://travel.state.gov/content/passports/english/passports/photos/photos.html.
6. Accompanying family members, unless entering the United States for another purpose, should present an original marriage certificate (spouse) and/or birth certification (for unmarried children under 21), as applicable. Many visa types require additional documents. Please see the section below.

## (B) VISITOR: BUSINESS, TOURISM, MEDICAL TREATMENT

- Be ready to present the following documents, if traveling for medical treatment:
  - Medical diagnosis from a local physician, explaining the nature of the ailment and the reason treatment is needed in the United States.
  - Letter from a physician or medical facility in the United States stating the willingness to treat the diagnosed ailment, and detailing the projected length and cost of treatment (including doctors' fees, hospitalization fees, and all medical-related expenses).
  - Proof that the patient's transportation, medical, and living expenses in the United States will be paid. This may be in the form of bank or other statements of income/savings or certified copies of income tax returns (either the patient's or the person or organization paying for the treatment).

The following documents may be useful in support of your visa application:

**NOTE - Applicants who are not required to attend a consular interview, do not need to submit the documents listed below. The documents listed below are required only for applicants who have an in-person consular interview appointment.**

- Intention to depart the United States upon completion of your travel.
- Sufficient funds to cover all expenses while in the United States.
- Evidence that you have significant ties to the country to which you intend to return at the end of your stay in the United States (This is generally established by evidence of family, professional, property, employment or other ties and commitments to a country other than the United States.)

# Visa Issuance Fee (Reciprocity Fee)

Depending on the applicant's country of citizenship and the visa type, the applicant may also be required to pay an additional fee for visa issuance, known as a reciprocity fee. Detailed information about reciprocity fees can be found at http://travel.state.gov/content/visas/english/fees/reciprocity-by-country.html

# Document Return

**Delivery Type:**In-Person Document Collection
**Delivery Address:**Via Galileo Galilei
snc - Zona Industriale
CARINI (PA), SICILIA, 90044
Italy
You only have until 17 March, 2016, 06:00 CET to change the location where your visa documents will be delivered. After the time indicated above, the option to change the courier

location will be deactivated from your account and at this point no courier changes will be allowed.

Print Instructions

---

Best regards,

The CSC Visa Appointment and Information Service Team

_______________________________________________
Teammilardo mailing list
Teammilardo@mailman.yale.edu
http://mailman.yale.edu/mailman/listinfo/teammilardo

# Exhibit 7

U.S. DEPARTMENT of STATE
CONSULAR ELECTRONIC APPLICATION CENTER

Online Nonimmigrant Visa Application (DS-160)

# Confirmation

**This confirms the submission of the Nonimmigrant visa application for:**

You must bring a 5 cm x 5 cm passport-like photo to your interview.

| | |
|---|---|
| Name Provided: | GIAMMARCO, ARNALDO |
| Date Of Birth: | 18 JAN 1956 |
| Place of Birth: | PREZZA, ITALY |
| Gender: | Male |
| Country/Region of Origin (Nationality) : | ITALY |
| Passport Number: | YA4080858 |
| Purpose of Travel: | BUSINESS/PERSONAL (B1/B2) |
| Completed On: | 11 MAR 2016 |
| Confirmation No: | |

Location Selected:

**NPL**
**U.S. Consulate General Naples**
**Piazza della Repubblica**
**Naples, Italy**

Version 01.02.02

THIS IS NOT A VISA

Note: Electronically submitting your DS-160 online application is the FIRST STEP in the visa application process. The next step is to review the internet page of the embassy or consulate where you plan to apply for your visa. Most visa applicants will need to schedule a visa interview, though some applicants may qualify for visa renewal. The embassy or consulate information may include specific local instructions about scheduling interviews, submitting your visa application, and other frequently asked questions.

**YOU MUST BRING** the confirmation page and the following document(s) with you at all steps during the application process:

**Passport**

You may also provide any additional documents you feel will support your case.



# Instructions

**YOU MUST SUBMIT** the confirmation page with a clear and legible barcode at the time of your interview. If you do not have access to a printer at this time, select the option to email your confirmation page to an email address. You may print or email your application for your own records. **YOU DO NOT** need to submit the application at the time of the interview.

Please note that you will be required to provide proof that you have paid the visa application fee and any other fees associated with your application. There may be other fees associated with the visa application process. Please check your country's Reciprocity Schedule for any other fees you may owe.

If you have further questions, or to find out how to contact the Consular Post, please go to http://italy.usembassy.gov or http://travel.state.gov.

NOTE: The photo you have submitted with your visa application did not meet the quality standards specified in the instructions on photo submission for visa applicants. Please have new photos taken, specifically following the photo guideline instructions on http://travel.state.gov.

NOTE: Unless exempt from an interview, you will be required to sign your application by providing a biometric signature, i.e. your fingerprint before a consular officer. By providing this biometric signature you are certifying under penalty of perjury that you have read and understood the questions in your nonimmigrant visa application and that all statements that appear in your nonimmigrant visa application have been made by you and are true and complete to the best of your knowledge and belief. Furthermore at the time of your interview, you will be required to certify under penalty of perjury that all statements in your application and those made during your interview are true and compete to the best of your knowledge and belief.

You electronically signed your application on 11-Mar-2016 10:23:34 (GMT-05:00). You were required to electronically sign your application yourself, unless otherwise exempt by regulation, even if the application was prepared by someone other than yourself. Your electronic signature certifies that you have read and understood the questions in this application and that your answers are true and correct to the best of your knowledge and belief. The submission of an application containing any false or misleading statements may result in the permanent refusal of a visa or the denial of entry into the United States. All declarations made in this application are unsworn declarations made under penalty of perjury. (28 U.S.C. 1746).

You certified that you understand that you are required to submit your visa to the United States Immigration Officer at the port where you apply to enter the United States, and that possession of the visa does not entitle you to enter the United States if, upon your arrival, you are found to be inadmissible under U.S. immigration laws. You certified that you understand that any willfully false or misleading statement or willful concealment of a material fact made by you within the application may subject you to permanent exclusion from the United States and, if you are admitted to the United States, may subject you to criminal prosecution and/or deportation.

The information that you have provided in your application and other information submitted with your application may be accessible to other government agencies having statutory or other lawful authority to use such information, including for law enforcement and immigration law enforcement purposes. If fingerprints are collected as part of your application process, they may be used for the purpose of comparing them to other fingerprints in the FBI's Next Generation Identification (NGI) fingerprint system or its successor systems (including civil, criminal, and latent fingerprint repositories). The photograph that you provide with your application may be used for employment verification or other U.S. law purposes.

# Exhibit 8

# Confirmation and Instructions

Delivery upgrade of your visa application documents to a personal or business address is available for **30.00 EUR**.
**Purchase delivery upgrade to personal or business address**

# CSC/United States DoS Nonimmigrant Visa Instructions

Please read these instructions in their entirety. Failure to comply with these instructions may delay the approval of your U.S. Nonimmigrant Visa application.
To complete this application for a U.S. Nonimmigrant Visa, each applicant listed below must appear with supporting Visa application documents for an in-person interview at the U.S. Consular Section.

Please gather the documents for each applicant listed below. Have each of the applicants bring a copy of their individual instructions with them to the Consular Section interview.

# Instructions for Arnaldo Giammarco

| | |
|---|---|
| **Applicant Name** | **Arnaldo Giammarco** |
| **Visa Class** | B1/B2 Business & Tourism (Temporary visitor) |
| **DS-160 Number** | AA005S49XM |
| **Passport Number** | YA4080858 |
| **Destination** | Naples |

**DS-160 Number**

AA005S49XM

**Passport Number**

YA4080858

You must appear for an in-person interview at the Consular Section. Please gather the documents listed below and bring them with you to your interview and a copy of these instructions.

In general, only Visa applicants with scheduled appointments are allowed to enter the Consular Section. Parents or legal guardians are allowed to accompany minor children. For special instructions concerning translators or caregivers, visit the Consular Section website.

All visitors to the Consular Section are screened by security personnel prior to entry. To learn more about the security precautions and restrictions please visit the Consular Section Web site at http://italy.usembassy.gov/visa/procedures.html.

**Consular Section Interview Date:**
17 March, 2016, 08:15 CET
**Consular Section Location:**
Piazza della Repubblica
Naples,
80122

You have until 16 March, 2016, 15:00 CET to cancel or reschedule your appointment. You can cancel or reschedule your appointment from the "Applicant Summary Page".

# General Required Documents - For All Visa Types

The following documents are required for all visa types:

1. Current Passport valid for travel to the United States. The passport must be valid for at least six months beyond the period of stay in the United States (unless exempt by country-specific agreements.)
2. Passport containing the most recently issued U.S. Visa (if applicable).
3. Nonimmigrant Visa Application, Form DS-160 confirmation page.
4. Confirmation and Instructions page printed from this website
5. One 5 x 5 cm (or 2" x 2") color photo taken within the last 6 months. Further details regarding Department of State photo guidelines can be found at: http://travel.state.gov/content/passports/english/passports/photos/photos.html.
6. Accompanying family members, unless entering the United States for another purpose, should present an original marriage certificate (spouse) and/or birth certification (for unmarried children under 21), as applicable. Many visa types require addition documents. Please see the section below.

## (B) VISITOR: BUSINESS, TOURISM, MEDICAL TREATMENT

- Be ready to present the following documents, if traveling for medical treatment:
  - Medical diagnosis from a local physician, explaining the nature of the ailment and the reason treatment is needed in the United States.
  - Letter from a physician or medical facility in the United States stating the willingness to treat the diagnosed ailment, and detailing the projected length and cost of treatment (including doctors' fees, hospitalization fees, and all medical-related expenses).

- Proof that the patient's transportation, medical, and living expenses in the United States will be paid. This may be in the form o bank or other statements of income/savings or certified copies of income tax returns (either the patient's or the person or organization paying for the treatment).

The following documents may be useful in support of your visa application:

**NOTE - Applicants who are not required to attend a consular interview, do not need to submit the documents listed below. The documents listed below are required only for applicants who have an in-person consular interview appointment.**

- Intention to depart the United States upon completion of your travel.
- Sufficient funds to cover all expenses while in the United States.
- Evidence that you have significant ties to the country to which you intend to return at the end of your stay in the United States (This is generally established by evidence of family, professional, property, employment or other ties and commitments to a country other than the United States.)

# Visa Issuance Fee (Reciprocity Fee)

Depending on the applicant's country of citizenship and the visa type, the applicant may also be required to pay an additional fe for visa issuance, known as a reciprocity fee. Detailed information about reciprocity fees can be found at http://travel.state.gov/content/visas/english/fees/reciprocity-by-country.html

# Document Return

**Delivery Type:** In-Person Document Collection

**Delivery Address:** Via Paolo Borsellino,125
CASANDRINO (NA), CAMPANIA, 80025
Italy

You only have until 17 March, 2016, 06:00 CET to change the location where your visa documents will be delivered. After the time indicated above, the option to change the courier location will be deactivated from your account and at this point no couri changes will be allowed.

Close

# Exhibit 9

# STATE OF CONNECTICUT

**DEPARTMENT OF MENTAL HEALTH AND ADDICTION SERVICES**

*PROBLEM GAMBLING SERVICES*

M. JODI RELL
GOVERNOR

Patricia Rehmer, MSN
COMMISSIONER

May 13, 2010

John D. Maxwell, Esq.
Brown Paindiris & Scott, LLP
2252 Main St.
Glastonbury, CT 06033

RE: Paula Milardo, CA00002620159

Dear Mr. Maxwell:

Paula Milardo has been a client at DMHAS, Problem Gambling Services since 02/18/2010. Ms. Milardo has been consistent and reliable in attending weekly individual sessions and group counseling sessions since that time. Ms. Milardo has meets individually with Judith Niland, NCGC-II and in the group setting with Lori Rugle, PhD, NCGC-II. During her treatment with Problem Gambling Services, Ms. Milardo has been very open regarding her gambling problems and the consequences of her gambling emotionally, financially and legally. She has been very compliant with all treatment recommendations and has made significant progress in her recovery since initiating treatment.

Ms. Milardo meets diagnostic criteria for Pathological Gambling, which has been a recognized psychiatric disorder and included in the Diagnostic and Statistical Manual of the American Psychiatric Association since 1980. The key features of this disorder include "persistent and maladaptive gambling behavior that disrupts personal, family, or vocational pursuits." Research has demonstrated that biological and genetic risk factors apply to vulnerability for pathological gambling that are consistent and comparable to those that are involved in substance dependence. While studies have consistently reported that approximately two-thirds of individuals seeking treatment for pathological gambling have committed some illegal act, this behavior is not due to underlying antisocial traits. As is the case with Ms. Milardo, illegal acts are clearly related to the gambling disorder and the financial desperation that develops as the disorder progresses.

Ms. Milardo has demonstrated a high level of motivation and commitment to the recovery process. In such cases, the diagnosis of pathological gambling has often been used as a basis for sentence mitigation and the following recommendations have been utilized effectively:

1. At least 3 years monitored probation in lieu of incarceration or accelerated rehabilitation with 3 years probation.
2. Court monitored financial restitution
3. Continuation in individual and group counseling

At this point, I would evaluate Ms. Milardo's prognosis to remain abstinent from gambling as quite good. If we can be of any further assistance, please contact us directly.

Sincerely,

Lori Rugle, PhD, NCGC-II
Director, Problem Gambling Services

# Exhibit 10

**UNITED STATES IMMIGRATION COURT**
**JFK FEDERAL BLDG., ROOM 320**
**BOSTON, MA 02203**

IN THE REMOVAL CASE OF
**Alien # 012-020-282**
**Alien Name: EMANUELE, PAOLINA**
RESPONDENT

**ORDERS**

This is a memorandum of the Court's Decision and Orders entered on **August 29, 2011.**
This memorandum is solely for the convenience of the parties. The oral or written Findings, Decision and Orders is the official opinion in this case.
( ) Both parties waived issuance of a formal oral decision in the case.

[X] The respondent was ordered REMOVED from the United States to ____________________ ( ) in absentia.

[ ] Respondent's application for VOLUNTARY DEPARTURE was DENIED and respondent was ordered removed to ____________________, in the alternative to ____________________.

[ ] Respondent's application for VOLUNTARY DEPARTURE was GRANTED until ____________________, upon posting a voluntary departure bond in the amount of $__________ to DHS within five business days from the date of this Order, with an alternate Order of removal to ____________________ or ____________________. Respondent shall present to DHS within ( ) thirty days ( ) sixty days from the date of this Order, all necessary travel documents for voluntary departure.

[ ] Respondent's application for ASYLUM was
( ) granted ( ) denied ( ) withdrawn with prejudice.
( ) subject to the ANNUAL CAP under the INA section 207(a)(5).
( ) Respondent knowingly filed a FRIVOLOUS asylum application.

[ ] Respondent's application for WITHHOLDING of removal under INA section 241(b) (3) was
( ) granted ( ) denied ( ) withdrawn with prejudice.

[ ] Respondent's application for WITHHOLDING of removal under the Torture Convention was
( ) granted ( ) denied ( ) withdrawn with prejudice.

[ ] Respondent's application for DEFERRAL of removal under the Torture Convention was
( ) granted ( ) denied ( ) withdrawn with prejudice.

[ ] Respondent's application for CANCELLATION of removal under section ( ) 203(b) of NACARA, ( ) 240A(a) ( ) 240A(b)(1) ( ) 240A(b)(2) of the INA, was
( ) granted ( ) denied ( ) withdrawn with prejudice.
If granted, it was ordered that the DHS issue all appropriate documents necessary to give effect to this Order.
Respondent ( ) is ( ) is not subject to the ANNUAL CAP under INA section 240A(e).

[ ] Respondent's application for a WAIVER under the INA section __________ was
( ) granted ( ) denied ( ) withdrawn or ( ) other ____________________.
( ) The conditions imposed by INA section 216 on the respondent's permanent resident status were removed.

[ ] Respondent's application for ADJUSTMENT of status under section __________ of the
( ) INA ( ) NACARA ( ) ____________________ was
( ) granted ( ) denied ( ) withdrawn with prejudice.
( ) granted on a conditional basis under § 216 of the INA.
If granted, it was ordered that DHS issue all appropriate documents necessary to give effect to this Order.

**Alien Number: 012-020-282** **Alien Name: EMANUELE, PAOLINA**

[ ] Respondent's status was RESCINDED pursuant to the INA section 246.

[ ] Respondent's motion to WITHDRAW his application for admission was ( ) granted ( ) denied. If the respondent fails to abide by any of the conditions directed by the district director of DHS, then the alternate order of removal shall become immediately effective without further notice or proceedings: the respondent shall be removed from the United States to ______________________.

[ ] Respondent was ADMITTED as a ______________________ until ______________. As a condition of admission, the respondent was ordered to post a $ ______________ bond.

[ ] Case was ( ) TERMINATED ( ) with ( ) without prejudice ( ) ADMINISTRATIVELY CLOSED.

[ ] Respondent was orally advised of the LIMITATION on discretionary relief and consequences for failure to depart as ordered.
[ ] If you fail to voluntarily depart when and as required, you shall be subject to civil money penalty of at least $1,000, but not more than $5,000, and be ineligible for a period of 10 years for any further relief under INA sections 240A, 240B, 245, and 248 (INA Section 240B(d)).
[ ] If you are under a final order of removal, and if you willfully fail or refuse to 1) depart when and as required, 2) make timely application in good faith for any documents necessary for departure, or 3) present yourself for removal at the time and place required, or, if you conspire to or take any action designed to prevent or hamper your departure, you shall be subject to civil money penalty of up to $500 for each day under such violation. (INA section 274D(a)). If you are removable pursuant to INA 237(a), then you shall further be fined and/or imprisoned for up to 10 years. (INA section 243(a)(1)).

[X] Other: Final Order

______________________________

______________________________

[signature]
**STEVEN F. DAY**, Immigration Judge
**Date: August 29, 2011**

APPEAL: WAIVED -- RESERVED

BY: RESPONDENT -- DHS -- BOTH

DUE BY: ______/______/______

**CERTIFICATE OF SERVICE**
THIS DOCUMENT WAS SERVED BY: MAIL (M) PERSONAL SERVICE (P)
TO: [ ] ALIEN [ ] ALIEN c/o Custodial Officer [X] ALIEN's ATT/REP [X] DHS
DATE: **Aug 29, 2011** BY: [ ] COURT STAFF ________ [ ] JUDGE [signature]
Attachments: [ ] EOIR-33 [ ] EOIR-28 [ ] Legal Services List [ ] Other

Y2

# Exhibit 11



**DEPARTMENT OF VETERANS AFFAIRS**
**Hartford Regional Office**
**Evidence Intake Center**
**P.O. Box 4444**
**Newnan, GA 30271**

NOV 27 2015

ANTHONY MILARDO
1150 SOUTH MAIN ST
APT 213
MIDDLETOWN, CT 06457

In Reply Refer To: 308/211/323/DJO
CSS 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
MILARDO, Anthony

Dear Mr. Milardo:

The Board of Veterans Appeals made their decision on your appeal on August 3, 2015. We have implemented their decision based on the evidence.

This letter tells you about your entitlement amount and payment start date and what we decided. It includes a copy of our rating decision that gives the evidence used and reasons for our decision. We have also included information about additional benefits, what to do if you disagree with our decision, and who to contact if you have questions or need assistance.

## Your Award Amount and Payment Start Date

Your monthly entitlement amount is shown below:

| Monthly Entitlement Amount | Payment Start Date | Reason For Change |
|---|---|---|
| $984.00 | Aug 1, 2007 | Compensation Rating Increased, Spouse Paula Added to Award |
| $1,006.00 | Dec 1, 2007 | Cost of Living Increase |
| $1,064.00 | Dec 1, 2008 | Cost of Living Increase |
| $1,102.00 | Dec 1, 2011 | Cost of Living Increase |
| $2,924.00 | Jul 1, 2012 | Compensation Rating Increased, Individual Unemployability Granted |
| $2,973.00 | Dec 1, 2012 | Cost of Living Increased |
| $3,017.60 | Dec 1, 2013 | Cost of Living Increased |
| $3,068.90 | Dec 1, 2014 | Cost of Living Increased |

We are paying you as a veteran with one dependent. Your payment includes an additional amount for your spouse, Paula. *Let us know right away if there is any change in your marital status (for example, death, divorce, annulment).*

## You Can Expect Payment

Your payment begins the first day of the month following your effective date. You will receive a payment covering the initial amount due under this award, minus any withholdings. Thereafter, payment will be made at the beginning of each month for the prior month. For example, benefits due for May are paid on or about June 1.

**Your payment will be directed to the financial institution and account number that you specified. To confirm when your payment was deposited, please contact that financial institution.**

***If this account is no longer open,***
please notify us immediately.

## What We Decided

We determined that the following service connected condition has worsened, so we granted an increase in your assigned percentage:

| Medical Description | Old Percent (%) Assigned | New Percent (%) Assigned | Effective Date |
|---|---|---|---|
| Generalized anxiety disorder | 30% | 50% | Jul 2, 2007 |

We granted entitlement to the 100% rate effective June 20, 2012, because you are unable to work due to your service connected disabilities.

*No examination will be scheduled in the future.*

Basic eligibility to Dependents' Educational Assistance is established from June 20, 2012.

**Your overall or combined rating is 60% effective July 2, 2007, it then becomes 80% effective June 20, 2012. Please note that your monthly payment will increase because you were granted individual unemployability effective June 20, 2012.** We do not add the individual percentages of each condition to determine your combined rating. We use a combined rating table that considers the effect from the most serious to the least serious conditions.

We have enclosed a copy of your Rating Decision for your review. It provides a detailed explanation of our decision, the evidence considered, and the reasons for our decision. Your Rating Decision and this letter constitute our decision based on your claim received on August 3, 2015. It represents all claims we understood to be specifically made, implied, or inferred in that claim.

We enclosed a VA Form 21-8760, "Additional Information for Veterans with Service-Connected Permanent and Total Disability," which explains certain factors concerning your benefits.

We enclosed a VA Form 21-8764, "Disability Compensation Award Attachment-Important Information," which explains certain factors concerning your benefits.

## Are You Entitled to Additional Benefits?

The Department of Education provides a program for Veterans to discharge their student loans. To be eligible, the Veteran must have a service-connected disability(ies) that is 100% disabling, or be totally disabled based on an Individual Unemployability determination. For more information concerning this benefit, please call toll-free 1-888-303-7818. Visit the website at **http://www.disabilitydischarge.com/Home/**.

If you served overseas in support of a combat operation you may be eligible for mental health counseling at no cost to you at the Veteran's Resource Center. For more information on this benefit please visit **http://www.myhealth.va.gov/mhv-portal-web/**.

You may be eligible for medical care by the VA health care system for any service connected disability. You may apply for medical care or treatment at the nearest medical facility. If you apply in person, present a copy of this letter to the Patient Registration/Eligibility Section. If you apply by writing a letter, include your VA file number and a copy of this letter.

REDUCE OR ELIMINATE
YOUR MEDICAL CO-PAYMENTS

If you receive care at a VA medical facility, **please call our Health Benefits Call Center at 1-877-222-VETS (8387) or notify your local VA medical center** of this change in your compensation benefits. This rating decision may reduce or eliminate your co-payments for your VA-provided medical care. You may also be eligible for a refund based on this rating decision. Information regarding VA health care eligibility and co-payments is available at our website **http://www.va.gov/healthbenefits/cost/**.

You should contact your State office of Veteran's affairs for information on any tax, license, or fee-related benefits for which you may be eligible as a Veteran (or surviving dependent of a Veteran). State offices of Veteran's affairs are available at **http://www.va.gov/statedva.htm**.

The VA provides Blind Rehabilitation services to eligible blind, low vision, or visually impaired Veterans to help them regain their independence and quality of life. The Veteran's blindness, low vision, or vision impairment does NOT have to be related or caused by military service. If you need help with your vision loss, please contact your nearest Visual Impairment Services Team Coordinator (VIST) at the eye clinic at your nearest VA Medical Center. For more information, go to **http://www.rehab.va.gov/blindrehab/**.

You may be able to receive vocational rehabilitation employment services. The enclosed VA Form 28-8890, "Important Information About Vocational Rehabilitation Benefits," explains this benefit completely. To apply for this benefit, complete and return the enclosed VA Form 28-1900, "Disabled Veterans Application for Vocational Rehabilitation."

Because of the rating action described in this letter, you may be eligible to have your government life insurance premiums waived. (This doesn't apply if you have Veterans Group Life Insurance [VGLI]). *If your answer is "yes" to all of the following questions,* you should contact the VA Insurance Center at the following toll free telephone number in order to request a "waiver of premiums" on your government life insurance policy. Call 1-800-669-8477.

- Do you have an active government life insurance policy?
- Do you currently pay premiums for your government life insurance policy?
- Are you considered to be unemployable, or are you rated 100% disabled by VA?
- Were you under age 65 when you became unable to work or 100% disabled?

You and your dependent(s) may be eligible for the Survivors' and Dependents' Educational Assistance. We are enclosing a VA pamphlet 22-73-3, *Summary of Education Benefits*, which explains the program. To file an application, complete and return the enclosed VA Form 22-5490.

Surviving spouses and children of Service Members who die in the line of duty after September 10, 2001, may also be eligible for the Fry Scholarship, which offers entitlement to the Post-9/11 GI Bill. Benefits include tuition and fee payments, a monthly housing allowance, and a books and supplies stipend. Please visit the GI Bill webpage at www.benefits.va.gov/gibill/index.asp for more information.

Your combined evaluation is 30 percent or more disabling; therefore, you may be eligible for additional benefits based on dependency. If you wish to submit a claim for dependents, please complete and return the attached VA Form 21-686c, *Declaration of Status of Dependents.* Please fill out every blank on the form. We may be able to pay you retroactive benefits for your dependents if you submit the VA Form 21-686c, *Declaration of Status of Dependents* or report dependents within a year from the date of this letter.

## When and Where to Send the Information or Evidence

Send the information or the evidence to the applicable address on the enclosed *Where to Send your Written Correspondence* form. Please put your full name and VA file number on the evidence.

We may be able to pay you from the date we received your claim, if we receive the information or evidence within one year from the date of this letter and we decide that you are entitled to VA benefits. If we do not receive the evidence within one year from the date of this letter, we can only pay you from the date we receive the evidence.

## What You Should Do If You Disagree With Our Decision

If you do not agree with our decision, you must complete and return to us the enclosed VA Form 21-0958, Notice of Disagreement, in order to initiate your appeal. You have one year from the date of this letter to appeal the decision. The enclosed VA Form 4107, "Your Rights to Appeal Our Decision," explains your right to appeal.

## What Is eBenefits?

eBenefits provides electronic resources in a self-service environment to Servicemembers, Veterans, and their families. Use of these resources often helps us serve you faster! Through the eBenefits website you can:

- Submit claims for benefits and/or upload documents directly to the VA
- Request to add or change your dependents
- Update your contact and direct deposit information and view payment history
- Request a Veterans Service Officer to represent you
- Track the status of your claim or appeal
- Obtain verification of your military service, civil service preference, or VA benefits
- And much more!

Enrolling in eBenefits is easy. Just visit www.eBenefits.va.gov for more information. If you submit a claim in the future, consider filing through eBenefits. Filing electronically, especially if you participate in our fully developed claim program, may result in faster decision than if you submit your claim through the mail.

## If You Have Questions or Need Assistance

If you have any questions, you may contact us by telephone, e-mail, or letter.

| If you | Here is what to do. |
|---|---|
| Telephone | Call us at 1-800-827-1000. If you use a Telecommunications Device for the Deaf (TDD), the Federal number is 711. |
| Use the Internet | Send electronic inquiries through the Internet at https://iris.va.gov. |
| Write | VA now uses a centralized mail system. For all written communications, put your full name and VA file number on the letter. Please mail or fax all written correspondence to the appropriate address listed on the attached *Where to Send Your Written Correspondence*. |

In all cases, be sure to refer to your VA file number **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**.

If you are looking for general information about benefits and eligibility, you should visit our website at https://www.va.gov, or search the Frequently Asked Questions (FAQs) at https://iris.va.gov.

We sent a copy of this letter to your representative, Robert V Chisholm, whom you can also contact if you have questions or need assistance.

Sincerely yours,

Regional Office Director

Enclosure(s): Rating Decision
Where to Send Your Written Correspondence
VA Form 21-0958
VA Form 28-1900
VA Form 21-8760
VA Form 21-8764
VA Form 28-8890
VA Form 22-5490
VA pamphlet 22-73-3
VA Form 21-686c
VA Form 4107

cc: Robert V Chisholm



**DEPARTMENT OF VETERANS AFFAIRS**

**Anthony Milardo**

**VA File Number**
**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**

**Represented By:**
**ROBERT V CHISHOLM**

**Rating Decision**
**10/02/2015**

## INTRODUCTION

The records reflect that you are a veteran of the Vietnam Era. You served in the Army from June 8, 1966 to June 2, 1968. The Board of Veterans Appeals made their decision on your appeal on August 3, 2015. We have implemented their decision based on the evidence listed below.

## DECISION

1. Entitlement to individual unemployability is granted effective June 20, 2012.

2. Entitlement to an evaluation in excess of 30 percent for generalized anxiety disorder, for the period prior to June 4, 2014, is granted and a 50 percent for generalized anxiety disorder is assigned effective July 2, 2007.

3. Basic eligibility to Dependents' Educational Assistance is established from June 20, 2012.

**EVIDENCE**

- Board of Veterans Appeals Decision, dated August 3, 2015, and all evidence contained therein

**REASONS FOR DECISION**

**1. Entitlement to individual unemployability.**

In its August 2015 decision, the Board of Veterans' Appeals granted entitlement to individual unemployability due to your service connected disabilities. That decision is implemented here. The effective date of this award is June 20, 2012, the date the minimum percentage requirements for this benefit were first met.

**2. Entitlement to an evaluation in excess of 30 percent for generalized anxiety disorder for the period prior to June 4, 2014.**

In its August 2015 decision, the Board of Veterans' Appeals granted an initial increased evaluation of 50 percent for an anxiety disorder was warranted for the entire appeal period in question, which was noted as extending back to the July 2, 2007 effective date for the initial grant of service connection of this disability. That decision is implemented here. Accordingly, entitlement to an evaluation in excess of 30 percent for generalized anxiety disorder, for the period prior to June 4, 2014, is granted and a 50 percent for generalized anxiety disorder is assigned effective July 2, 2007, the date your initial claim was received.

An evaluation of 50 percent is assigned for occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships. A higher evaluation of 70 percent is not warranted unless there are deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); inability to establish and maintain effective relationships.

**3. Eligibility to Dependents' Educational Assistance under 38 U.S.C. chapter 35.**

Eligibility to Dependents' Educational Assistance is derived from a veteran who was discharged under other than dishonorable conditions; and, has a permanent and total service-connected disability; or a permanent and total disability was in existence at the time of death; or the veteran died as a result of a service-connected disability. Also, eligibility exists for a serviceperson who died in service. Finally, eligibility can be derived from a service member who, as a member of the armed forces on active duty, has been listed for more than 90 days as: missing in action; captured in line of duty by a hostile force; or forcibly detained or interned in line of duty by a foreign government or power.

Basic eligibility to Dependents' Education Assistance is granted as the evidence shows you currently has a total service-connected disability, permanent in nature (individual unemployability due to service connected disabilities). The effective date of this award is June 20, 2012, the date the requirements for this benefit were first met.

**REFERENCES:**

Title 38 of the Code of Federal Regulations, Pensions, Bonuses and Veterans' Relief contains the regulations of the Department of Veterans Affairs which govern entitlement to all veteran benefits. For additional information regarding applicable laws and regulations, please consult your local library, or visit us at our web site, www.va.gov.

# Exhibit 12



State of Connecticut Judicial Branch
# Civil and Family Inquiry

Civil / Family Home
-
Attorney/Firm Case List
Attorney/Firm Look-up
-
Docket Number Search
Party Name Search
Property Address Search
-
Short Calendars
By Court Location
By Juris Number
Motions to Seal or Close
Calendar Notices
Short Calendar Quick Guide
-
Court Events By Date
Court Events By Juris Number
-
Scheduling Inquiry
-
Pending Foreclosure Sales
-
Questions & Answers
Court Information
Legal Terms

Comments

**TSR-CV15-4007217-S** **MILARDO, PAOLINA #376252 v. ST OF CT, COMM. OF CORR., JUDICIAL-CSSD**

**Suffix:** IAC **Case Type:** M30 **File Date:** 05/21/2015 **Return Date:** 06/23/2015

Case Detail | Notices | History | Scheduled Court Dates | E-Services Login | Screen Section Help

To receive an email when there is activity on this case, click here.

**Information Updated as of:** 03/11/2016

**Case Information**

**Case Type:** M30 - Misc - Habeas Corpus (extradition release from Penal Institution)
**Court Location:** ROCKVILLE-GA19
**List Type:** No List Type
**Trial List Claim:**
**Last Action Date:** 03/09/2016 (The "last action date" is the date the information was entered in the system)

**Disposition Information**

**Disposition Date:**
**Disposition:**
**Judge or Magistrate:**

**Party & Appearance Information**

| Party | | No Fee Party | Category |
|---|---|---|---|
| **P-01 PAOLINA MILARDO** | | | Plaintiff |
| **Attorney:** MICHAEL J WISHNIE (429553)<br>YALE LAW SCHOOL<br>PO BOX 209090<br>NEW HAVEN, CT 065209090 | File Date: 05/21/2015 | | |
| **Attorney:** A NICOLE HALLETT (430547)<br>P.O. BOX 209090<br>NEW HAVEN, CT 06520 | File Date: 02/02/2016 | | |
| **Attorney:** JASON PARKIN (431946)<br>PACE LAW SCHOOL<br>80 NORTH BROADWAY<br>WHITE PLAINS, NY 10603 | File Date: 02/02/2016 | | |
| **D-01 STATE OF CONNECTICUT**<br>Non-Appearing | | | Defendant |
| **D-02 COMMISSIONER OF CORRECTION** | | | Defendant |
| **Attorney:** RANDALL SCOTT BOWERS (436067)<br>CSAO-CIVIL LITIGATION<br>300 CORPORATE PLACE<br>ROCKY HILL, CT 06067 | File Date: 09/08/2015 | | |
| **D-03 JUDICIAL - CSSD**<br>Non-Appearing | | | Defendant |

**Viewing Documents on Civil Cases:**

- Documents, court orders and judicial notices in 2014 and future civil cases are available publicly over the internet.*
- For cases filed prior to 2014, court orders and judicial notices that are electronic are available publicly over the internet. Orders can be viewed by selecting the link to the order

from the list below. Notices can be viewed by clicking the **Notices** tab above and selecting the link.*

- If there is an e in front of the docket number at the top of this page, then the file is electronic. Documents and court orders can be viewed at any judicial district courthouse and at some geographical area courthouses during normal business hours.*
- You can view pleadings or other documents that are not electronic during normal business hours at the Clerk's Office in the Judicial District where the case is located.*
- Viewing of documents protected by law or court order may be limited.

* unless otherwise restricted

**Motions / Pleadings / Documents / Case Status**

| Entry No | File Date | Filed By | Description | Arguable |
|---|---|---|---|---|
| 101.00 | 05/21/2015 | P | **SUMMONS** | No |
| 102.00 | 05/21/2015 | P | **APPLICATION FOR WRIT OF HABEAS CORPUS** | No |
| 103.00 | 06/08/2015 | P | **RETURN OF SERVICE** | No |
| 104.00 | 06/29/2015 | C | **ORDER SEE FILE**<br>*RESULT:* Order 6/29/2015 BY THE COURT | No |
| 105.00 | 07/06/2015 | D | **MOTION TO DISMISS**<br>*RESULT:* Denied 8/27/2015 HON VERNON OLIVER | Yes |
| 106.00 | 07/06/2015 | D | **MEMORANDUM IN SUPPORT OF MOTION** | No |
| 107.00 | 07/09/2015 | P | **CERTIFICATE OF NO TRANSCRIPT NEEDED** | No |
| 108.00 | 07/09/2015 | P | **NOTICE TO ALL PARTIES** | No |
| 109.00 | 08/04/2015 | P | **OBJECTION TO MOTION** | No |
| 110.00 | 08/04/2015 | P | **MEMORANDUM IN OPPOSITION TO MOTION** | No |
| 111.00 | 09/29/2015 | D | **REQUEST TO REVISE** | No |
| 112.00 | 10/16/2015 | P | **OBJECTION**<br>*RESULT:* Overruled 11/3/2015 HON VERNON OLIVER | No |
| 113.00 | 11/17/2015 | P | **AMENDED COMPLAINT**<br>**Last Updated:** Date Filed - 11/18/2015 | No |
| 114.00 | 12/23/2015 | D | **RETURN TO WRIT OF HABEAS CORPUS** | No |
| 115.00 | 12/23/2015 | D | **NOTICE** | No |
| 116.00 | 12/23/2015 | D | **REQUEST** | No |
| 117.00 | 01/29/2016 | P | **MOTION - SEE FILE**<br>*RESULT:* Order 2/2/2016 HON VERNON OLIVER<br>**Last Updated:** Result Information - 02/01/2016 | No |
| 118.00 | 02/03/2016 | P | **CERTIFICATE** | No |
| 119.00 | 02/09/2016 | P | **NOTICE** | No |
| 120.00 | 02/11/2016 | P | **REQUEST** | No |
| 121.00 | 03/08/2016 | P | **LIST OF WITNESSES** ! NEW | No |
| 122.00 | 03/08/2016 | P | **DISCLOSURE OF EXPERT WITNESS** ! NEW | No |
| 123.00 | 03/08/2016 | P | **MOTION - SEE FILE** ! NEW<br>*RESULT:* Granted 3/9/2016 HON VERNON OLIVER | No |

**Scheduled Court Dates as of 03/10/2016**

**TSR-CV15-4007217-S - MILARDO, PAOLINA #376252 v. ST OF CT, COMM. OF CORR., JUDICIAL-CSSD**

| # | Date | Time | Event Description | Status |
|---|---|---|---|---|
| 1 | 04/18/2016 | 10:00AM | Trial | Proceeding |

| 2 | 04/20/2016 | 10:00AM | Trial | Proceeding |
|---|---|---|---|---|

Judicial ADR events may be heard in a court that is different from the court where the case is filed. To check location information about an ADR event, select the **Notices** tab on the top of the case detail page.

Matters that appear on the Short Calendar and Family Support Magistrate Calendar are shown as scheduled court events on this page. The date displayed on this page is the date of the calendar.

All matters on a family support magistrate calendar are presumed ready to go forward.

The status of a Short Calendar matter is not displayed because it is determined by markings made by the parties as required by the calendar notices and the civil or family standing orders. Markings made electronically can be viewed by those who have electronic access through the Markings History link on the Civil/Family Menu in E-Services. Markings made by telephone can only be obtained through the clerk's office. If more than one motion is on a single short calendar, the calendar will be listed once on this page. You can see more information on matters appearing on Short Calendars and Family Support Magistrate Calendars by going to the Civil/Family Case Look-Up page and Short Calendars By Juris Number or By Court Location.

Periodic changes to terminology that do not affect the status of the case may be made.

This list does not constitute or replace official notice of scheduled court events.

**Disclaimer:** For civil and family cases statewide, case information can be seen on this website for a period of time, from one year to a maximum period of ten years, after the disposition date. If the Connecticut Practice Book Sections 7-10 and 7-11 give a shorter period of time, the case information will be displayed for the shorter period. Under the Federal Violence Against Women Act of 2005, cases for relief from physical abuse, foreign protective orders, and motions that would be likely to publicly reveal the identity or location of a protected party may not be displayed and may be available only at the courts.

Attorneys | Case Look-up | Courts | Directories | EducationalResources | E-Services | FAQ's | Juror Information | News & Updates | Opinions | Opportunities | Self-Help | Home

Common Legal Terms | Contact Us | Site Map | Website Policies

Copyright © 2016, State of Connecticut Judicial Branch

Page Created on 3/11/2016 at 10:56:04 AM

# Exhibit 13

THIS IS AN IMPORTANT RECORD SAFEGUARD IT.

- 1. LAST NAME-FIRST NAME-MIDDLE NAME: GIAMMARCO, ARNALDO
- 2. SEX: M
- 3. SOCIAL SECURITY NUMBER: [redacted]
- 4. DATE OF BIRTH: YEAR 55, MONTH 01, DAY 18
- 5. DEPARTMENT, COMPONENT AND BRANCH OR CLASS: ARMY-RA
- 6a. GRADE, RATE OR RANK: SP4
- b. PAY GRADE: E4
- 7. DATE OF RANK: YEAR 79, MONTH 03, DAY 01
- 8a. SELECTIVE SERVICE NUMBER: NA
- b. SELECTIVE SERVICE LOCAL BOARD NUMBER, CITY, STATE AND ZIP CODE: LB #NA
- c. HOME OF RECORD AT TIME OF ENTRY INTO ACTIVE SERVICE (Street, RFD, City, State and ZIP Code): HARTFORD CT 06114
- 9a. TYPE OF SEPARATION: REL FROM AD
- b. STATION OR INSTALLATION AT WHICH EFFECTED: FORT DIX, NEW JERSEY
- c. AUTHORITY AND REASON: ------------------------------
- d. EFFECTIVE DATE: YEAR 79, MONTH 07, DAY 25
- e. CHARACTER OF SERVICE: HONORABLE
- f. TYPE OF CERTIFICATE ISSUED: NONE
- 10. REENLISTMENT CODE: ---------------
- 11. LAST DUTY ASSIGNMENT AND MAJOR COMMAND: BTRY B 2ND BN 6TH FA USAREUR E5
- 12. COMMAND TO WHICH TRANSFERRED: USAR CON GP(REINF )RCPAC ST LOUIS MO
- 13. TERMINAL DATE OF RESERVE/MSS OBLIGATION: YEAR 82, MONTH 06, DAY 25
- 14. PLACE OF ENTRY INTO CURRENT ACTIVE SERVICE (City, State and ZIP Code): NEW HAVEN CT 06510
- 15. DATE ENTERED ACTIVE DUTY THIS PERIOD: YEAR 75, MONTH 07, DAY 29
- 16a. PRIMARY SPECIALTY NUMBER AND TITLE: 13B10 ~~CANNON~~ CRMN 761215 ES NONE
- b. RELATED CIVILIAN OCCUPATION AND D.O.T. NUMBER: NA
- 17a. SECONDARY SPECIALTY NUMBER AND TITLE: NA
- b. RELATED CIVILIAN OCCUPATION AND D.O.T. NUMBER: NA

18. RECORD OF SERVICE

| RECORD OF SERVICE | YEARS | MONTHS | DAYS |
|---|---|---|---|
| (a) NET ACTIVE SERVICE THIS PERIOD | 02 | 11 | 27 |
| (b) PRIOR ACTIVE SERVICE | 00 | 00 | 00 |
| (c) TOTAL ACTIVE SERVICE (a+b) | 02 | 11 | 27 |
| (d) PRIOR INACTIVE SERVICE | 00 | 01 | 03 |
| (e) TOTAL SERVICE FOR PAY (c+d) | 03 | 00 | 30 |
| (f) ~~FOREIGN AND/OR SEA~~ SERVICE THIS PERIOD | 02 | 05 | 20 |

- 19. INDOCHINA OR KOREA SERVICE SINCE AUGUST 5, 1964: ☐ YES ☒ NO
- 20. HIGHEST EDUCATION LEVEL SUCCESSFULLY COMPLETED (In Years): SECONDARY/HIGH SCHOOL 11 YRS (1-12 grades) COLLEGE 0 YRS
- 21. TIME LOST (Preceding Two Yrs): NONE
- 22. DAYS ACCRUED LEAVE PAID: 30 1/2
- 23. SERVICEMEN'S GROUP LIFE INSURANCE COVERAGE: ☐ $15,000 ☐ $5,000 ☒ $20,000 ☐ $10,000 ☐ NONE
- 24. DISABILITY SEVERANCE PAY: ☒ NO ☐ YES AMOUNT
- 25. PERSONNEL SECURITY INVESTIGATION: a. TYPE NA; b. DATE COMPLETED NA
- 26. DECORATIONS, MEDALS, BADGES, COMMENDATIONS, CITATIONS AND CAMPAIGN RIBBONS AWARDED OR AUTHORIZED: EXPERT HAND GRENADE SHARPSHOOTER M16
- 27. REMARKS:

INDIVIDUAL REQUESTS A COPY OF THE DD FORM 214 *a.s.*
REF ITEM 18F EUR/GERMANY

... IS A TRUE COPY
...TY VA FORM 4505
*Nicholas D. O'Rhara VBC*
... COUNSELOR

- 28. MAILING ADDRESS AFTER SEPARATION (Street, RFD, City, County, State and ZIP Code): 204 GEORGE ST HARTFORD( ) CT 06114
- 29. SIGNATURE OF PERSON BEING SEPARATED: *Arnaldo Giammarco*
- 30. TYPED NAME, GRADE AND TITLE OF AUTHORIZING OFFICER: W. H. GILBERT CW2 USA CHIEF SEP BRANCH
- 31. SIGNATURE OF OFFICER AUTHORIZED TO SIGN: [signature]

DD FORM 214, 1 NOV 72 — PREVIOUS EDITIONS OF THIS FORM ARE OBSOLETE. THIS IS AN IMPORTANT RECORD SAFEGUARD IT. REPORT OF SEPARATION FROM ACTIVE DUTY

1.

# Exhibit 14

Jan. 6. 2012 10:52AM No. 0419 P. 4

DEPARTMENTS OF THE ARMY AND THE AIR
NATIONAL GUARD BUREAU

# REPORT OF SEPARATION AND RECORD OF SERVICE

REPORT OF SEPARATION AND RECORD OF SERVICE IN THE[1] ARMY NATIONAL GUARD OF CONNECTICUT AND AS A RESERVE OF THE[2] ARMY

1. Insert either Army or Air 2. Enlisted personnel only - insert only Army or Air Force

| 1. LAST NAME - FIRST NAME - MIDDLE NAME | 2. DEPARTMENT, COMPONENT AND BRANCH | 3. SOCIAL SECURITY NUMBER |
|---|---|---|
| GIAMMARCO, ARNALDO | CTARNG | [redacted] |

| 4. DATE OF ENL. YR | MO | DA | 5a. RANK | 5b. PAY GRADE | 6. DATE OF RANK YR | MO | DA | 7. DATE OF BIRTH YR | MO | DA |
|---|---|---|---|---|---|---|---|---|---|---|
| 80 | 01 | 27 | SGT | E-5 | 80 | 01 | 27 | 56 | 01 | 18 |

8a. STATION OR INSTALLATION AT WHICH EFFECTED: Btry A, 2d Bn, 192d FA Hartford, CT 06114

8b. EFFECTIVE DATE: YR 83 MO 01 DA 26

9. COMMAND TO WHICH TRANSFERRED: NA

| 10. RECORD OF SERVICE | YRS | MOS | DAYS |
|---|---|---|---|
| (a) NET SERVICE THIS PERIOD | 03 | 00 | 00 |
| (b) PRIOR RESERVE COMPONENT SERVICE | 00 | 07 | 05 |
| (c) PRIOR ACTIVE FEDERAL SERVICE | 02 | 11 | 27 |
| (d) TOTAL SERVICE FOR PAY | 06 | 07 | 02 |

11. TERMINAL DATE OF RESERVE/MILITARY SERVICE OBLIGATION: YR NA MO DA

12. MILITARY EDUCATION (Course Title, number of weeks, month and year completed)
USAFATC OSUT 13B 12Wks '76

13. PRIMARY SPECIALITY NUMBER, TITLE AND DATE AWARDED (Additional speciality numbers and titles)
13E20 Fire Direction Op Sp

14. HIGHEST EDUCATION LEVEL SUCCESSFULLY COMPLETED
SECONDARY/HIGH SCHOOL 11 YRS(Gr 1-12) COLLEGE 0 YRS

15. DECORATIONS, MEDALS, BADGES, COMMENDATIONS, CITATIONS AND CAMPAIGN RIBBONS AWARDED THIS PERIOD (State Awards may be Included)
M-16 SS Qual Badge

16. SERVICEMAN'S GROUP LIFE INSURANCE COV
☒ YES ☐ NO
AMT $ 35,000

17. PERSONNEL SECURITY INVESTIGATION
a. TYPE: None
b. DATE COMPLETED: NA

18. REMARKS
Place of Enlistment: Hartford, CT
ADT: 760729-790725
NGB Form 55 mailed to SM last known address
Orders 2-1 OTAG CT dtd 17 Jan 83

"A CERTIFIED TRUE COPY"
ADJUTANT GENERAL-CT
OFFICIAL MILITARY FILES

19. MAILING ADDRESS AFTER SEPARATION (Street, RFD, City, County, State and Zip Code)
201 George St
Hartford, Ct 06114

20. SIGNATURE OF PERSON BEING SEPARATED
Unavailable for signature

21. TYPED NAME, GRADE AND TITLE OF AUTHORIZING OFFICER
RICHARD G GRANT CPT, FA

22. SIGNATURE OF OFFICER AUTHORIZED TO SIGN
[signature]

23. AUTHORITY AND REASON
Para 7-9a NGR 600-200

24. CHARACTER OF SERVICE: HONORABLE

25. TYPE OF CERTIFICATE USED: NGB Form 55

26. REENLISTMENT ELIGIBILITY

27. ☐ REQUEST ☐ DECLINE COPIES OF MY NGB FORM 22 INITIALS ______

NGB FORM 22, 1 FEB 83 (Replaces NGB Form 22, dated 15 Oct 76 and NGB Form 22-1, dated 1 Jun 78, which are obsolete)

MPRJ COPY (3)

# Exhibit 15

**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

RECEIVED
OCT - 4 2012

**Mary Foden**
**Law Office of Maria Luisa De Castor Foden, LLC**
**107 Oak Street**
**Hartford, CT 06106**

**DHS/ICE Office of Chief Counsel - BOS**
**P.O. Box 8728**
**Boston, MA 02114**

**Name: GIAMMARCO, ARNALDO**

**A 012-013-630**

**Date of this notice: 10/1/2012**

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

Donna Carr

Donna Carr
Chief Clerk

Enclosure

Panel Members:
Malphrus, Garry D.

**schuckec**
Userteam: Docket

**U.S. Department of Justice**
Executive Office for Immigration Review

Falls Church, Virginia 22041

Decision of the Board of Immigration Appeals

File: A012 013 630 - Boston, MA Date: OCT - 1 2012

In re: ARNALDO GIAMMARCO

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT: Mary Foden, Esquire

APPLICATION: Cancellation of removal; continuance; termination

The respondent appeals the Immigration Judge's May 15, 2012, decision pretermitting his application for cancellation of removal under section 240A(a) of the Immigration and Nationality Act, 8 U.S.C. § 1229b(a), denying his request for a continuance, denying his request to terminate proceedings, and ordering him removed. The appeal will be dismissed.

We review for clear error the findings of fact, including the determination of credibility, made by the Immigration Judge. 8 C.F.R. § 1003.1(d)(3)(i). We review de novo all other issues, including whether the parties have met the relevant burden of proof, and issues of discretion. 8 C.F.R. § 1003.1(d)(3)(ii).

The respondent, a native and citizen of Italy and a resident of the United States since 1960, admitted the allegations and conceded removability as charged (I.J. at 2; Exh. 2). The respondent submitted evidence that he filed an application for naturalization with the former Immigration and Naturalization Service ("INS") in 1982. As the Department of Homeland Security ("DHS") indicated before the Immigration Court, the position of United States Citizenship and Immigration Service ("USCIS") is that the application was never completed at the time it was filed, so there is no application currently pending before USCIS (Tr. at 61-62, 67-68, 132, 149-150, 155-56). The respondent, who admits he is not a citizen of the United States, essentially claims that as there was no decision on the application, it is still pending before USCIS and it should be granted nunc pro tunc from the date that it was filed (Respondent's Br. at 3-4). He asks this Board to determine whether the USCIS failed to properly adjudicate his application for naturalization. He also asks this Board to terminate proceedings, in accordance with *Matter of Hidalgo*, 24 I&N Dec. 103 (BIA 2007), to allow the respondent to proceed with his application for naturalization. The respondent also requests a continuance.

Neither the Board nor an Immigration Judge has jurisdiction over naturalization determinations. As explained by DHS, there is no application currently pending before the agency (Tr. at 61-62, 67-68, 132, 149-150, 155-56). As the DHS has exclusive jurisdiction over naturalization determinations, this Board has no jurisdiction "to look beneath or second-guess" the DHS's reasons for its actions pertaining to the underlying naturalization application. *See Matter of Hidalgo*, *supra*, at 106-07 (we cannot review the propriety of the DHS's naturalization ruling). The respondent cites to the United States Court of Appeals for the Second Circuit's decision in *Azize v. Bureau of*

*Citizenship and Immigration Services*, 549 F.3d 86 (2d Cir. 2010), in support of his argument that this Board has jurisdiction to examine the propriety of DHS's actions. However, the respondent's reliance on that case is misplaced, as that case arose in the United States District Court in a different circuit on a writ of habeas corpus and is not binding in immigration proceedings. As such, this Board has no jurisdiction to evaluate USCIS's determination that his application for naturalization is not pending.

As neither the Immigration Judge nor the Board has jurisdiction to adjudicate applications for naturalization, removal proceedings may only be terminated pursuant to 8 C.F.R. § 1239.2(f) if the DHS has presented an affirmative communication attesting to the alien's prima facie eligibility for naturalization. *See Matter of Hidalgo*, *supra* (reaffirming the long-standing holding in *Matter of Cruz*, 15 I&N Dec. 236 (BIA 1975)). Here, the DHS presented no such communication. We have also held that the Board has "no authority to compel the DHS to acknowledge the respondent's eligibility for naturalization." *Id.* at 107 (citation omitted). It therefore follows that the Immigration Judge has no authority to compel the DHS to submit its position as to the respondent's prima facie eligibility for naturalization. Given the foregoing, the Immigration Judge properly denied the respondent's request to terminate proceedings.

Further, the Immigration Judge did not abuse his discretion in denying the respondent's request for an additional continuance. *See Matter of Perez-Andrade*, 19 I&N Dec. 433 (BIA 1997); *Matter of Sibrun*, 18 I&N Dec. 354 (BIA 1983); 8 C.F.R. § 1003.29. The respondent's request for a continuance was based on the assertion that he had a pending application for naturalization before USCIS; however, as stated above, the DHS indicated that no such application was pending before it. Moreover, the respondent had been granted a number of continuances in order to pursue his request for additional information regarding his application for naturalization. As such, we conclude that no good cause existed for an additional continuance, and would also conclude that no further continuance were warranted even if the application for naturalization filed in 1982 were still viewed as pending.

The respondent does not challenge the Immigration Judge's denial of his application for cancellation of removal. As no argument has been raised on appeal, we consider the matter waived for appellate purposes. Accordingly, the following order will be entered.

ORDER: The respondent's appeal is dismissed.

FOR THE BOARD

900 Asylum Avenue, Hartford, CT 06105

October 12, 1982

A12 013 630 Citz. N400

Chief of Police
Police Department
Hartford, CT

GIAMMARCO, Arnaldo male

204 George St., Hartford, CT

---

Italy 1/18/56 U.S. Army

Subject arrested January 1981, Hartford, CT., Sexual Assault 1st degree.

DISPOSITION REQUESTED

Edwin J. Moloney District Director Hartford, CT

Needs documents

91325b also resent 10/12/82 -TMP

A12 01[illegible]30

RECEIVED
DISTRICT DIREC
1982 OCT -1 AM
IMM. & NATZ. SV.
HARTFORD, CT. 06

RECEIVED
DISTRICT DIRECTOR
1982 SEP 31 AM 11:33
IMM. & NATZ. SVC.
HARTFORD, CT. 06105

September 27, 1982

U.S. Department of Justice
Immigration and Naturalization Service
900 Asylum Ave.
Hartford, Conn. 06105

Dear Sir or Madam;

Recently I applied for U.S. Citizenship and because of an arrest I was told to make another appointment when the case had reached a decision, At this time I would like to inform you that the case was nollied and would liked to make an appointment for aquiring my U.S. Citizenship.

Sincerely Yours,

[signature]

ARNALDO GIANMARCO
204 GEORGE ST.
HARTFORD CT. 06114
278-3843 - business

OCT 4 - 1982

Form Approved
OMB No. 43-R0265

UNITED STATES DEPARTMENT OF JUSTICE
IMMIGRATION AND NATURALIZATION SERVICE

# REQUEST FOR CERTIFICATION OF MILITARY OR NAVAL SERVICE

(SUBMIT IN TRIPLICATE)

ALIEN REGISTRATION NO. [illegible]

DATE OF REQUEST: Nov 21 81

For use in connection with my petition for naturalization, please complete the certification of military service on the reverse and furnish it to the office of the Immigration and Naturalization Service shown in the address block below. The information shown below is furnished to help locate and identify my military records. APPLICANT: FURNISH AS MUCH INFORMATION AS POSSIBLE. IF YOU WERE ISSUED A REPORT OF SEPARATION, DD FORM 214, ATTACH A COPY. FILL IN THE BLANKS ON THIS PAGE ONLY. PLEASE TYPE OR PRINT CLEARLY. PRESS FIRMLY—ALL COPIES MUST BE LEGIBLE. (DO NOT USE PENCIL)

| NAME USED DURING ACTIVE SERVICE (Last, first, middle) | SOCIAL SECURITY NO. | DATE OF BIRTH | PLACE OF BIRTH |
|---|---|---|---|
| GIAMMARCO, ARNALDO | 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 | 18 Jan 56 | Prezza, Italy |

*For an effective records search, it is important that ALL periods of service be shown below. (Use blank sheet if more space is needed.)*

ACTIVE SERVICE

| BRANCH OF SERVICE (Show also last organization if known.) | DATE ENTERED ON ACTIVE DUTY | DATE RELEASED FROM ACTIVE DUTY | CHECK WHICH: OFFICER | CHECK WHICH: ENLISTED | SERVICE NUMBER DURING THIS PERIOD |
|---|---|---|---|---|---|
| U. S. Army Btry B 2d Bn 6th FA USAREUR | 29 Jul 76 | 25 Jul 79 | | X | 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 |
| | | | | | |
| | | | | | |
| | | | | | |

RESERVE OR NATIONAL GUARD SERVICE → If none, check: [X] None

| BRANCH OF SERVICE | CHECK WHICH: RESERVE | CHECK WHICH: NAT. GUARD | DATE MEMBERSHIP BEGAN | DATE MEMBERSHIP ENDED | CHECK WHICH: OFFICER | CHECK WHICH: ENLISTED | SERVICE NUMBER DURING THIS PERIOD |
|---|---|---|---|---|---|---|---|
| U. S. Army | | XX | 27 Jan 80 | Present | | X | 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 |
| | | | | | | | |
| | | | | | | | |

ARE YOU A MILITARY RETIREE OR FLEET RESERVIST? [X] No [ ] Yes

| SIGNATURE (Present Name) | PRESENT ADDRESS (Number, Street, City, State and ZIP Code) |
|---|---|
| [signature] | 204 George Street, Hartford, CT 06114 |

INSTRUCTIONS TO CERTIFYING OFFICER

Persons who are serving or have served honorably under specified conditions in the armed forces of the United States, inclusive of the reserve components of the armed forces of the United States, are granted certain exemptions from the general requirements for naturalization. The law requires such service to be established by a duly authenticated copy of the records of the executive department having custody of the records of service, showing whether the serviceman served honorably in an active-duty status, a reserve-duty status, or both, and whether each separation from the service was under honorable conditions. For that purpose, the certified statement on the reverse of this form, executed under the seal of your department, is required and should cover not only the period(s) of service shown above, but any other periods of service (active, reserve, or both) rendered by the serviceman.

The reverse of this form should be completed, or the information called for furnished by separate letter, and the form and letter returned to the office of the Immigration and Naturalization Service at the address in the box immediately below.

Immigration and Naturalization Service

RETURN TO

Please type or print complete return address. Include ZIP code.

Form N-426 (Rev. 5-12-77)N

Form G-325B (Rev. 5-1-79)N

**BIOGRAPHIC INFORMATION**

UNITED STATES DEPARTMENT OF JUSTICE
Immigration and Naturalization Service

Form Approved OMB No. 43-R436

| (Family name) (First name) (Middle name) | MALE / FEMALE | BIRTHDATE (Mo.-Day-Yr.) | NATIONALITY | FILE NUMBER |
|---|---|---|---|---|
| GIAMMARCO, Arnaldo | [X] MALE [ ] FEMALE | 1-18-56 | Italy | A 12 013 630 |

| ALL OTHER NAMES USED (Including names by previous marriages) | CITY AND COUNTRY OF BIRTH | SOCIAL SECURITY NO. (If any) |
|---|---|---|
| None | Prezza Italy | 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 |

| | FAMILY NAME, FIRST NAME | DATE, CITY AND COUNTRY OF BIRTH (If known) | CITY AND COUNTRY OF RESIDENCE |
|---|---|---|---|
| FATHER | GIAMMARCO, Lino | Italy | Hartford, CT |
| MOTHER (Maiden name) | GIAMMARCO, Elena | Italy | |

| HUSBAND (If none, so state) OR WIFE — FAMILY NAME (For wife, give maiden name) | FIRST NAME | BIRTHDATE | CITY & COUNTRY OF BIRTH | DATE OF MARRIAGE | PLACE OF MARRIAGE |
|---|---|---|---|---|---|
| None | | | | | |

FORMER HUSBANDS OR WIVES (If none, so state)

| FAMILY NAME (For wife, give maiden name) | FIRST NAME | BIRTHDATE | DATE & PLACE OF MARRIAGE | DATE AND PLACE OF TERMINATION OF MARRIAGE |
|---|---|---|---|---|
| None | | | | |

APPLICANT'S RESIDENCE LAST FIVE YEARS. LIST PRESENT ADDRESS FIRST.

| STREET AND NUMBER | CITY | PROVINCE OR STATE | COUNTRY | FROM MONTH | FROM YEAR | TO MONTH | TO YEAR |
|---|---|---|---|---|---|---|---|
| 204 George St. | HTFD. | CT | USA | July | 79 | PRESENT TIME | |
| USArmy Eur. | | | | July | 76 | July | 79 |

APPLICANT'S LAST ADDRESS OUTSIDE THE UNITED STATES OF MORE THAN ONE YEAR

| STREET AND NUMBER | CITY | PROVINCE OR STATE | COUNTRY | FROM MONTH | FROM YEAR | TO MONTH | TO YEAR |
|---|---|---|---|---|---|---|---|
| USArmy Eur. | | | | | | | |

APPLICANT'S EMPLOYMENT LAST FIVE YEARS. (IF NONE, SO STATE.) LIST PRESENT EMPLOYMENT FIRST

| FULL NAME AND ADDRESS OF EMPLOYER | OCCUPATION (Specify) | FROM MONTH | FROM YEAR | TO MONTH | TO YEAR |
|---|---|---|---|---|---|
| Self Employed, Giammarco's Market, Hartford, CT | Meat Cutter | April | 82 | PRESENT TIME | |
| Standye Inc., Deerfield Rd., Windsor, CT | Machinist | Nov. | 79 | Feb. | 82 |
| USArmy | | July 76 | | July | 79 |

*Show below last occupation abroad if not shown above. (Include all information requested above.)*

THIS FORM IS SUBMITTED IN CONNECTION WITH APPLICATION FOR:
[X] NATURALIZATION [ ] OTHER (Specify):
[ ] STATUS AS PERMANENT RESIDENT

If serving or ever served in the Armed Forces of the United States, complete the following:

| Branch of Service | Rank | Service Number |
|---|---|---|
| USArmy | E-4 | 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 |

To Other Agency: Please furnish on the reverse of this form, or by attachment hereto, any derogatory information that may be contained in your records concerning the above person, for use in connection with consideration of above application and return to U. S. Immigration and Naturalization Service.

INS USE (Office of Origin)
Office Code: HAR/N400/2-7-83
Type of Case 900 Asylum Avenue
Date Hartford, CT 06105

(OTHER AGENCY)

(ALL DEFENSE CHECKS)

MIL PERS | AIR RESERVE | USAF PERS | ARMY PERS | SEE O.I. 328.1 FOR MAILING ADDRESS

[ ] OSI (USAF) | [ ] ONI (USN) | [X] MID G-2 | [ ] PROV. MAR.

MAIL TO:
DIRECTOR
UNITED STATES ARMY INVESTIGATIVE RECORDS REPOSITORY
ATTN: ICIRR-A
FORT MEADE, MARYLAND 20755
ATTENTION: LIAISON OFFICE,
IMMIGRATION AND NATURALIZATION SERVICE

STATE (F.P.) | STATE (S.Y.) | OTHER
SEE O.I. 105.4 FOR MAILING ADDRESS

FOR STATE DEPARTMENT USE
[X] SY
[X] RSC
[X] RMR
[X] Cit Visa
[X] R Visa
[X] ORM

Form G-325B

APPLICANT: DO NOT FILL OUT THIS PAGE

## CERTIFICATION OF MILITARY OR NAVAL SERVICE

- [X] Name correctly shown on front of form.
- [ ] Name as shown in records: ____________

### ACTIVE SERVICE

| 1. ENTERED SERVICE | 2. ON | 3. SERVED TO | 4. BRANCH OF SERVICE | 5. STATE WHETHER SERVING HONORABLY. IF SEPARATED, STATE WHETHER UNDER HONORABLE CONDITIONS. IF OTHER THAN HONORABLE, GIVE FULL DETAILS. ALWAYS COMPLETE ITEM 11. |
|---|---|---|---|---|
| New Haven, CT | 29 Jul 76 | 25 Jul 79 | U.S. Army | Seperated under honorable condiction |

### RESERVE OR NATIONAL GUARD SERVICE

| 6. BRANCH OF SERVICE | 7. CHECK WHICH: RESERVE | N. GUARD | 8. ENTERED | 9. SERVED TO | 10. STATE WHETHER SERVING HONORABLY. IF SEPARATED, STATE WHETHER UNDER HONORABLE CONDITIONS. IF OTHER THAN HONORABLE, GIVE FULL DETAILS. ALWAYS COMPLETE ITEM 11. |
|---|---|---|---|---|---|
| U.S. Army | | X | 27 Jan 80 | N/A | Currently serving honorably |

11. STATEMENT REGARDING ALIENAGE. *(Complete this item in ALL cases.)*

- [X] Record shows this person WAS NOT discharged on account of alienage.
- [ ] Record shows this person WAS discharged on account of alienage. Details:

12. REMARKS: Use for continuation of any of above items. You should also show in the space below any DEROGATORY INFORMATION in your records relating to the serviceman's character, loyalty to the United States, disciplinary actions, convictions or other matters touching on his fitness for citizenship.

None

Complete this block if subject is a "Lodge Act enlistee" - 64 Stat. 316 (Army). Subsequent to enlistment under the Lodge Act on ____________, subject entered ____________ (the United States, American Samoa, Swains Island or the Canal Zone) at the port of ____________ pursuant to Military orders on ____________.

I CERTIFY that the information here given concerning the service of the person named on the face of this form is correct according to the records of the Btry A 2d Bn 192d FA, CTARNG, Hartford, CT 06114
(Name of department or organization)

[SEAL] (Official signature) [signature]

Date 1 October, 19 81 By JOAO D. RAPHAEL, CPT FA CTARNG, Commanding

FORM G-325 (REV. 5-1-79)Y

BIOGRAPHIC INFORMATION

UNITED STATES DEPARTMENT OF JUSTICE
Immigration and Naturalization Service

MAR N400 2/3/82

Form Approved OMB No. 43-R436

| (Family name) | (First name) | (Middle name) | MALE / FEMALE | BIRTHDATE (Mo.-Day-Yr.) | NATIONALITY | FILE NUMBER |
|---|---|---|---|---|---|---|
| Giammarco | Aniello | NMI | ☒ MALE | 1 18 56 | ITALY | A-12 013 630 |

| ALL OTHER NAMES USED (Including names by previous marriages) | CITY AND COUNTRY OF BIRTH | SOCIAL SECURITY NO. (If any) |
|---|---|---|
| NONE | Prezza ITALY | 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 |

| | FAMILY NAME | FIRST NAME | DATE, CITY AND COUNTRY OF BIRTH (If known) | CITY AND COUNTRY OF RESIDENCE |
|---|---|---|---|---|
| FATHER | Lino Giammarco | | | |
| MOTHER (Maiden name) | Elena Giammarco | | Prezza ITALY | ITALY |

| HUSBAND (If none, so state) OR WIFE | FAMILY NAME (For wife, give maiden name) | FIRST NAME | BIRTHDATE | CITY & COUNTRY OF BIRTH | DATE OF MARRIAGE | PLACE OF MARRIAGE |
|---|---|---|---|---|---|---|
| | | | | Prezza | | |

FORMER HUSBANDS OR WIVES (If none, so state)

| FAMILY NAME (For wife, give maiden name) | FIRST NAME | BIRTHDATE | DATE AND PLACE OF MARRIAGE | DATE AND PLACE OF TERMINATION OF MARRIAGE |
|---|---|---|---|---|
| | | | | |

APPLICANT'S RESIDENCE LAST FIVE YEARS. LIST PRESENT ADDRESS FIRST.

| STREET AND NUMBER | CITY | PROVINCE OR STATE | COUNTRY | FROM MONTH | FROM YEAR | TO MONTH | TO YEAR |
|---|---|---|---|---|---|---|---|
| [illegible] 204 George St | HART | Conn | USA | [illegible] | 66 | PRESENT TIME | |
| U.S. Army Eur. | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

APPLICANT'S LAST ADDRESS OUTSIDE THE UNITED STATES OF MORE THAN ONE YEAR

| STREET AND NUMBER | CITY | PROVINCE OR STATE | COUNTRY | FROM MONTH | FROM YEAR | TO MONTH | TO YEAR |
|---|---|---|---|---|---|---|---|
| US ARMY | | | | | | | |

APPLICANT'S EMPLOYMENT LAST FIVE YEARS. (IF NONE, SO STATE.) LIST PRESENT EMPLOYMENT FIRST

| FULL NAME AND ADDRESS OF EMPLOYER | OCCUPATION (Specify) | FROM MONTH | FROM YEAR | TO MONTH | TO YEAR |
|---|---|---|---|---|---|
| Self Emp 695 MAPLE AVE HART. | Mechanic | Apr | 81 | PRESENT TIME | |
| STANdy Windsor | Tech opp | Nov. | 79 | April | 81 |
| US Army | | July | 76 | July | 79 |
| | | | | | |

*Show below last occupation abroad if not shown above. (Include all information requested above.)*

THIS FORM IS SUBMITTED IN CONNECTION WITH APPLICATION FOR:
☒ NATURALIZATION ☐ OTHER (SPECIFY)
☐ STATUS AS PERMANENT RESIDENT

SIGNATURE OF APPLICANT: [signature]

DATE: Nov/21/81

Are all copies legible? ☒ Yes

IF YOUR NATIVE ALPHABET IS IN OTHER THAN ROMAN LETTERS, WRITE YOUR NAME IN YOUR NATIVE ALPHABET IN THIS SPACE:

PENALTIES: SEVERE PENALTIES ARE PROVIDED BY LAW FOR KNOWINGLY AND WILLFULLY FALSIFYING OR CONCEALING A MATERIAL FACT.

Form G-325B (Rev. 5-1-79)N

**BIOGRAPHIC INFORMATION** 044-6

UNITED STATES DEPARTMENT OF JUSTICE
Immigration and Naturalization Service

Form Approved
OMB No. 43-R436

| (Family name) (First name) (Middle name) | MALE / FEMALE | BIRTHDATE (Mo.-Day-Yr.) | NATIONALITY | FILE NUMBER |
|---|---|---|---|---|
| GIAMMARCO, Arnaldo | [X] MALE | 1-18-56 | Italy | A 12 013 630 |

Feb 14 1983

| ALL OTHER NAMES USED (Including names by previous marriages) | CITY AND COUNTRY OF BIRTH | SOCIAL SECURITY NO. (If any) |
|---|---|---|
| None | Prezza Italy | 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 |

| | FAMILY NAME | FIRST NAME | DATE, CITY AND COUNTRY OF BIRTH (If known) | CITY AND COUNTRY OF RESIDENCE |
|---|---|---|---|---|
| FATHER | GIAMMARCO, | Lino | Italy | Hartford, CT |
| MOTHER (Maiden name) | GIAMMARCO, | Elena | Italy | |

| HUSBAND (If none, so state) OR WIFE — FAMILY NAME (For wife, give maiden name) | FIRST NAME | BIRTHDATE | CITY & COUNTRY OF BIRTH | DATE OF MARRIAGE | PLACE OF MARRIAGE |
|---|---|---|---|---|---|
| None | | | | | |

FORMER HUSBANDS OR WIVES (If none, so state)

| FAMILY NAME (For wife, give maiden name) | FIRST NAME | BIRTHDATE | DATE & PLACE OF MARRIAGE | DATE AND PLACE OF TERMINATION OF MARRIAGE |
|---|---|---|---|---|
| None | | | | |

APPLICANT'S RESIDENCE LAST FIVE YEARS. LIST PRESENT ADDRESS FIRST.

| STREET AND NUMBER | CITY | PROVINCE OR STATE | COUNTRY | FROM MONTH | FROM YEAR | TO MONTH | TO YEAR |
|---|---|---|---|---|---|---|---|
| 204 George St | HTFD. | CT | USA | July | 79 | PRESENT TIME | |
| USArmy Eur. | | | | July | 76 | July | 79 |

APPLICANT'S LAST ADDRESS OUTSIDE THE UNITED STATES OF MORE THAN ONE YEAR.

| STREET AND NUMBER | CITY | PROVINCE OR STATE | COUNTRY | FROM MONTH | FROM YEAR | TO MONTH | TO YEAR |
|---|---|---|---|---|---|---|---|
| USArmy Eur. | | | | | | | |

APPLICANT'S EMPLOYMENT LAST FIVE YEARS. (IF NONE, SO STATE.) LIST PRESENT EMPLOYMENT FIRST.

| FULL NAME AND ADDRESS OF EMPLOYER | OCCUPATION (Specify) | FROM MONTH | FROM YEAR | TO MONTH | TO YEAR |
|---|---|---|---|---|---|
| Self Employed, Giammarco's Market, Hartford, CT | Meatcutter | April | 82 | PRESENT TIME | |
| Standye Inc., Deerfield Rd., Windsor, CT | Machinist | Nov. | 79 | Feb. | 82 |
| USArmy | | July | 76 | July | 79 |

Show below last occupation abroad if not shown above. (Include all information requested above.)

THIS FORM IS SUBMITTED IN CONNECTION WITH APPLICATION FOR:
[ ] NATURALIZATION [ ] OTHER (SPECIFY)
[ ] STATUS AS PERMANENT RESIDENT

LOC=A
LOC=D
ARNALDO
LOC=ACRD
J1K2F
30118

If serving or ever served in the Armed Forces of the United States, complete the following:

| Branch of Service | Rank | Service Number |
|---|---|---|
| USArmy | E-4 | 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 |

INS USE (Office of Origin)
Office Code HAR/N400/2-7-83
Type of Case 900 Asylum Avenue
Date Hartford, CT 06105

To Other Agency: Please furnish on the reverse of this form, or by attachment hereto, any derogatory information that may be contained in your records concerning the above person for use in connection with consideration of above application and return to U. S. Immigration and Naturalization Service.

IMMIGRATION & NATZ SERVICE LIAISON OFFICE
FORT MEADE, MD. 20755
FEB 25 '83

(OTHER AGENCY)

| MIE PERS | AIR RESERVE |
|---|---|
| USAF PERS | ARMY PERS |

SEE O.I. 328.1 FOR MAILING ADDRESS

[ ] OSI (USAF) [ ] ONI (USN)
[ ] MID G-2 [ ] PROV. MAR.

(ALL DEFENSE CHECKS)

MAIL TO:
DIRECTOR,
UNITED STATES ARMY INVESTIGATIVE RECORDS REPOSITORY
ATTN: ICIRR-A
FORT MEADE, MARYLAND 20755
ATTENTION: LIAISON OFFICE
IMMIGRATION AND NATURALIZATION SERVICE

[ ] No Record
[ ] Pending ...
[X] Report Attached
[ ] ...

STATE (P.P.) | STATE (S.V.) | OTHER

SEE O.I. 105.4 FOR MAILING ADDRESS

FOR STATE DEPARTMENT USE
[ ] SY
[X] SC
[ ] RMR
[ ] C Visa
[ ] R Visa
[X] ORM

Form G-325B

Date __________________ 19___

| | |
|---|---|
| Date of entry into service | |
| Date of separation | |
| Service number | |

The records of this Department show the following with respect to the subject of your inquiry:

All organizations, clubs or societies in the United States, or in any other country, of which subject was a member at any time, and dates thereof. (If none, show "None".)

All arrests, convictions, disciplinary actions, court martial proceedings, and illegal or immoral conduct in which subject involved, including dates and results thereof. (If none, show "None".) major derog info (1) New Britain, CT (no date) charged with drunk in car (150) (2) 8/24/73 Hartford CT, charged with possession of controlled drugs, no disposition. (3) Hartford, CT 9/14/75 charged with breach of peace disposition nolled. (4) Hanau, Germany 1/30/77 wrongful possession of marijuana. (5) 5/21/79 Frankfurt Germany charged with being in an off limits area and wrongful possession of marijuana no disposition (6) 1/24/81 Hartford, CT. sex assault disposition not recorded/pending

Details of any oral or written statements, conduct, behavior or associations of the subject which may indicate belief in, advocacy of or preference or sympathy for Communism or any other foreign ideology inconsistent with loyalty to the United States or the form of government of the United States or attachment to the principles of the United States Constitution. (If none, show "None".)

(SEE attachments 6 pages)

Additional information or references.

I certify that the information here given concerning the person named is correct according to the records of the

(Name of Department or organization) Ft Meade Liaison DCNS.

Official signature P. Scott Hettchen 3/25/83

By __________________

GPO 877-682

Date ______ 19__

| Date of entry into service | |
|---|---|
| Date of separation | |
| Service number | |

RECEIVED
1982 NOV 15 PM 12 10
I&NS HARTFORD, CONN

The records of this Department show the following with respect to the subject of your inquiry:

All organizations, clubs or societies in the United States, or in any other country, of which subject was a member at any time, and dates thereof. (If none, show "None".)

All arrests, convictions, disciplinary actions, court martial proceedings, and illegal or immoral conduct in which subject involved, including dates and results thereof. (If none, show "None".)

Details of any oral or written statements, conduct, behavior or associations of the subject which may indicate belief in, advocacy of or preference or sympathy for Communism or any other foreign ideology inconsistent with loyalty to the United States or the form of government of the United States or attachment to the principles of the United States Constitution. (If none, show "None".)

Additional information or references:

The Dept of Defense is conducting an investigation on your subject and his dossier is Not available for review at this time. Please resubmit in 30 days.

I certify that the information here given concerning the person named is correct according to the records of the 5 3 82 INS/LN/Ft Meade, Md.
(Name of Department or organization)

Official signature Virginia M. Wedge

By ______

GPO 877-882

HAR 390

UNITED STATES DEPARTMENT OF JUSTICE
IMMIGRATION AND NATURALIZATION SERVICE

Form Approved
OMB NO. 43-R0079

FEE STAMP

# APPLICATION TO FILE PETITION FOR NATURALIZATION

RECEIVED

Mail or take to:
IMMIGRATION AND NATURALIZATION SERVICE

FEB 3 1982

(See INSTRUCTIONS. BE SURE YOU UNDERSTAND EACH QUESTION BEFORE YOU ANSWER IT. PLEASE PRINT OR TYPE.)

ALIEN REGISTRATION
(Show the exact spelling of your name as it appears on your alien registration receipt card, and the number of your card. If you did not register, so state.)
Name Arnaldo Giammarco
No. A12 073 630

Section of Law 329 (Leave Blank)

Date: Nov 21/81

(1) My full true and correct name is Arnaldo Giammarco (Full true name without abbreviations)

(2) I now live at 204 George St Hartford Conn. (Number and street.) (City, county, state, zip code)

(3) I was born on 1 18 56 (Month) (Day) (Year) in [illegible] Italy (City or town) (County, province, or state) (Country)

(4) I request that my name be changed to

(5) Other names I have used are: (Include maiden name) Sex: ☑ Male ☐ Female

(6) Was your father or mother ever a United States citizen? ☐ Yes ☒ No (If "Yes", explain fully)

(7) Can you read and write English? ☑ Yes ☐ No

(8) Can you speak English? ☑ Yes ☐ No

(9) Can you sign your name in English? ☒ Yes ☐ No

(10) My lawful admission for permanent residence was on 07 (Month) 13 (Day) 60 (Year) under the name of NYC Arnaldo Giammarco at NYC (City) NY (State)

(11) Since that date I have resided continuously in the United States and continuously in the State of Conn where I now live since July 13 1960 During the last five years I have been physically present in the United States for a total of 23 months.

(12) Do you intend to reside permanently in the United States? ☒ Yes ☐ No If "No," explain:

(13) In what places in the United States have you lived during the last 5 years? List present address FIRST.

| | From | To | Street Address | City and State |
|---|---|---|---|---|
| (a) | 19 | Present Time | US Army Eur 76-79 | |
| (b) | 19 | 19 | 204 George St | Hart - other periods |
| (c) | 19 | 19 | | |
| (d) | 19 | 19 | | |

(14) (a) Have you been out of the United States since your lawful admission as a permanent resident? ☒ Yes ☐ No
If "Yes" fill in the following information for every absence of *less than* 6 *months*, no matter how short it was.

| Date Departed | Date Returned | Name of Ship, or of Airline, Railroad Company, Bus Company, or Other Means Used to Return to the United States | Place or Port of Entry Through Which You Returned to the United States |
|---|---|---|---|
| | 1977 | US Army Eur 1 month to Italy | no other |

(b) Since your lawful admission, have you been out of the United States for a period of 6 *months or longer*? ☒ Yes ☐ No
If "No", state "None"; If "Yes", fill in following information for every absence of more than 6 months.

| Date Departed | Date Returned | Name of Ship or of Airline, Railroad Company, Bus Company, or Other Means Used to Return to the United States | Place or Port of Entry Through Which You Returned to the United States |
|---|---|---|---|
| | 2 1/2 yrs to Germany with U.S. Army | | |

Form N-400 (Rev. 11-1-80)N (OVER)

EXHIBIT "A"

14

115

(2)

(15) The law provides that you may not be regarded as qualified for naturalization, if you knowingly committed certain offenses or crimes, even though you may not have been arrested. Have you ever, in or outside the United States:

(a) knowingly committed any crime for which you have not been arrested? ☐ Yes ☑ No

(b) been arrested, cited, charged, indicted, convicted, fined or imprisoned for breaking or violating any law or ordinance, including traffic regulations? ☒ Yes ☐ No

If you answer "Yes" to (a) or (b), give the following information as to each incident.

| | When | Where (City) (State) (Country) | Nature of Offense | Outcome of Case, If Any |
|---|---|---|---|---|
| (a) | Jan 1981 | Hartford, CT | Sexual Assault 1st degree | Still Pending |
| (b) | | NONE | | |
| (c) | | | | |
| (d) | | | | |
| (e) | | | | |

(16) List your present and past membership in or affiliation with every organization, association, fund, foundation, party, club, society or similar group in the United States or in any other country or place, and your foreign military service. (If none, write "None.")

| | | | |
|---|---|---|---|
| (a) | | 19...... | to 19...... |
| (b) | | 19...... | to 19...... |
| (c) | | 19...... | to 19...... |
| (d) | | 19...... | to 19...... |
| (e) | | 19...... | to 19...... |
| (f) | | 19...... | to 19...... |
| (g) | | 19...... | to 19...... |

(17) (a) Are you now, or have you ever, in the United States or in any other place, been a member of, or in any other way connected or associated with the Communist Party? (If "Yes", attach full explanation) ☐ Yes ☐ No

(b) Have you ever knowingly aided or supported the Communist Party directly, or indirectly through another organization, group or person? (If "Yes", attach full explanation) ☐ Yes ☑ No

(c) Do you now or have you ever advocated, taught, believed in, or knowingly supported or furthered the interests of Communism? (If "Yes", attach full explanation) ☐ Yes ☑ No

(18) During the period March 23, 1933 to May 8, 1945, did you serve in, or were you in any way affiliated with, either directly or indirectly, any military unit, paramilitary unit, police unit, self-defense unit, vigilante unit, citizen unit, unit of the Nazi Party or SS, government agency or office, extermination camp, concentration camp, prisoner of war camp, prison, labor camp, detention camp or transit camp, under the control of or affiliated with:

(a) the Nazi Government of Germany ☐ Yes ☑ No

(b) any Government in any area occupied by, allied with, or established with the assistance or cooperation of, the Nazi Government of Germany? ☐ Yes ☑ No

(19) During the period March 23, 1933 to May 8, 1945, did you ever order, incite, assist, or otherwise participate in the persecution of any person because of race, religion, national origin, or political opinion? ☐ Yes ☑ No

(20) Have you borne any hereditary title or have you been of any order of nobility in any foreign state? ☐ Yes ☑ No

(21) Have you ever been declared legally incompetent or have you ever been confined as a patient in a mental institution? ☐ Yes ☑ No

(22) Are deportation proceedings pending against you, or have you ever been deported or ordered deported, or have you ever applied for suspension of deportation? ☐ Yes ☑ No

(23) (a) My last Federal income tax return was filed.................. (year) Do you owe any Federal taxes? ☐ Yes ☑ No

(b) Since becoming a permanent resident of the United States, have you:

—filed an income tax return as a nonresident? ☐ Yes ☑ No

—failed to file an income tax return because you regarded yourself as a nonresident? ☐ Yes ☑ No

(If you answer "Yes" to (a) or (b) explain fully.)

(24) Have you ever claimed in writing, or in any other way, to be a United States citizen? ☐ Yes ☑ No

(25) (a) Have you ever deserted from the military, air, or naval forces of the United States? ☐ Yes ☑ No

(b) If male, have you ever left the United States to avoid being drafted into the Armed Forces of the United States? ☐ Yes ☑ No

(26) The law provides that you may not be regarded as qualified for naturalization if, at *any* time during the period for which you are required to prove good moral character, you have been a habitual drunkard; committed adultery; advocated or practiced polygamy; have been a prostitute or procured anyone for prostitution; have knowingly and for gain helped any alien to enter the United States illegally; have been an illicit trafficker in narcotic drugs or marijuana; have received your income mostly from illegal gambling, or have given false testimony for the purpose of obtaining any benefits under this Act. Have you ever, *anywhere*, been such a person or committed any of these acts? (If you answer yes to any of these, attach full explanation.) ☑ Yes ☐ No

(27) Do you believe in the Constitution and form of government of the United States? ☑ Yes ☐ No

(28) Are you willing to take the full oath of allegiance to the United States? (See Instructions) ☑ Yes ☐ No

(29) If the law requires it, are you willing:

(a) to bear arms on behalf of the United States? (If "No", attach full explanation) ☑ Yes ☐ No

(b) to perform noncombatant services in the Armed Forces of the United States? (If "No", attach full explanation) ☑ Yes ☐ No

(c) to perform work of national importance under civilian direction? (If "No", attach full explanation) ☑ Yes ☐ No

(30) (a) If male, did you ever register under United States Selective Service laws or draft laws? ☑ Yes ☐ No

If "Yes" give date 5/1/80; Selective Service No. 06-0522-269 Local Board No..................; Present classification..................

(b) Did you ever apply for exemption from military service because of alienage, conscientious objections, or other reasons? ☐ Yes ☐ No

If "Yes," explain fully..................

(3)

(31) If serving or ever served in the Armed Forces of the United States, give branch: USARMY
from July, 1976 to July, 1979, and from ........, 19...... to ........, 19......
☐ inducted or ☐ enlisted at HARTFORD; Service No. 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
type of discharge (Honorable) (Dishonorable, etc.); rank at discharge E4
reason for discharge ETS (alienage, conscientious objector, other)
☐ Reserve or ☑ National Guard from 80 JAN, 19 80 to JAN 82
(32) My occupation is MEAT CUTTER

List the names, addresses, and occupations (or types of business) of your employers during the last 5 years? (If none, write "None.") List present employment FIRST.

| From | To | Employer's Name | Address | Occupation or Type of Business |
|---|---|---|---|---|
| (a) July, 1976 | July Present Time 79 | US Army | | |
| (b) Dec, 1979 | April, 1981 | Standy | Windsor | MECH OP |
| (c) Self Emp, 1981 | present, 19 | | | |
| (d) ........, 19 | ........, 19 | | | |

(33) Complete this block if you are or have been married.

I am NONE (Single, married, divorced, widowed). The first name of my husband or wife is (was) ........

We were married on ........ at ........ He or she was born at ........ on ........; He or she entered the United States at (place) ........ on (date) ........ for permanent residence and now resides ☐ with me ☐ apart from me at ........ (Show full address if not living with you.)

He or she was naturalized on ........ at ........; Certificate No. ........, or became a citizen by ........ His or her Alien Registration No. is ........

(34) How many times have you been married? ........ How many times has your husband or wife been married? ........ If either of you has been married more than once, fill in the following information for each previous marriage.

| Date Married | Date Marriage Ended | Name of Person to Whom Married | Sex | (Check One) Person Married Was Citizen ☐ | Alien ☐ | How Marriage Ended |
|---|---|---|---|---|---|---|
| (a) | | | | ☐ | ☐ | |
| (b) | | | | ☐ | ☐ | |
| (c) | | | | ☐ | ☐ | |
| (d) | | | | ☐ | ☐ | |

(35) I have ........ (Number) children: (Complete columns (a) to (h) as to each child. If child lives with you, state "with me" in column (h), otherwise give city and State of child's residence.)

| (a) Given Names | (b) Sex | (c) Place Born (Country) | (d) Date Born | (e) Date of Entry | (f) Port of Entry | (g) Alien Registration No. | (h) Now Living at |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

(36) READ INSTRUCTION NO. 6 BEFORE ANSWERING QUESTION (36).

I ........ (Do) (Do Not) want certificates of citizenship for those of my children who are in the U.S. and are under age 18 years that are named below.

(Enclose $15 for each child for whom you want certificates, otherwise, send no money with this application.)

........ (Write names of children under age 18 years and who are in the U.S. for whom you want certificates)

If present spouse is not the parent of the children named above, give parent's name, date and place of naturalization, and number of marriages

UNITED STATES DEPARTMENT OF JUSTICE
Immigration and Naturalization Service

BIOGRAPHIC INFORMATION

APPLICANT'S RESIDENCE LAST FIVE YEARS. LIST PRESENT ADDRESS FIRST.

APPLICANT'S LAST ADDRESS OUTSIDE THE UNITED STATES OF MORE THAN ONE YEAR

APPLICANT'S EMPLOYMENT LAST FIVE YEARS. (IF NONE, SO STATE) LIST PRESENT EMPLOYMENT FIRST

Show below last occupation abroad if not shown above. (Include all information requested above.)

THIS FORM IS SUBMITTED IN CONNECTION WITH APPLICATION FOR: NATURALIZATION / OTHER (SPECIFY) / STATUS AS PERMANENT RESIDENT

Are all copies legible? Yes

PENALTIES: SEVERE PENALTIES ARE PROVIDED BY LAW FOR KNOWINGLY AND WILLFULLY FALSIFYING OR CONCEALING A MATERIAL FACT.

**APPLICANT:** BE SURE TO PUT YOUR NAME AND ALIEN REGISTRATION NUMBER IN THE BOX OUTLINED BY HEAVY BORDER BELOW.

(OTHER AGENCY USE)

INS USE (Office of Origin)
OFFICE CODE:
TYPE OF CASE:
DATE:

Form Approved: OMB No. 43-R0265

UNITED STATES DEPARTMENT OF JUSTICE
IMMIGRATION AND NATURALIZATION SERVICE

# REQUEST FOR CERTIFICATION OF MILITARY OR NAVAL SERVICE

(SUBMIT IN TRIPLICATE) HAR N400 3/12/82

ALIEN REGISTRATION NO. A12 013 630

DATE OF REQUEST 2/25/82

For use in connection with my petition for naturalization, please complete the certification of military service on the reverse and return it to the office of the Immigration and Naturalization Service shown in the address block below. The information shown below is furnished to help locate and identify my military records. APPLICANT - FURNISH AS MUCH INFORMATION AS POSSIBLE. IF YOU WERE ISSUED A REPORT OF SEPARATION, DD FORM 214, ATTACH A COPY. FILL IN THE BLANKS ON THIS PAGE ONLY. PLEASE TYPE OR PRINT CLEARLY. PRESS FIRMLY - ALL COPIES MUST BE LEGIBLE. (DO NOT USE PENCIL)

| NAME USED DURING ACTIVE SERVICE (Last, first, middle) | SOCIAL SECURITY NO. | DATE OF BIRTH | PLACE OF BIRTH |
|---|---|---|---|
| GIAMMARCO, Arnaldo | 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 | 1/18/56 | Italy |

*For an effective records search, it is important that ALL periods of service be shown below. (Use blank sheet if more space is needed.)*

ACTIVE SERVICE

| BRANCH OF SERVICE (Show also last organization, if known) | DATE ENTERED ON ACTIVE DUTY | DATE RELEASED FROM ACTIVE DUTY | CHECK WHICH: OFFICER | CHECK WHICH: ENLISTED | SERVICE NUMBER DURING THIS PERIOD |
|---|---|---|---|---|---|
| U.S. Army | 7/76 | 7/79 | | X | 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 |
| | | | | | |
| | | | | | |
| | | | | | |

RECEIVED MAR 1 1982

RESERVE OR NATIONAL GUARD SERVICE → If none, check ☐ None

| BRANCH OF SERVICE | CHECK WHICH: RESERVE | CHECK WHICH: N. GUARD | DATE MEMBERSHIP BEGAN | DATE MEMBERSHIP ENDED | CHECK WHICH: OFFICER | CHECK WHICH: ENLISTED | SERVICE NUMBER DURING THIS PERIOD |
|---|---|---|---|---|---|---|---|
| U.S. Army Nat'l Gd. | | X | Jan. 80 | Jan 82 | | X | 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 |
| | | | | | | | |

ARE YOU A MILITARY RETIREE OR FLEET RESERVIST? ☐ No ☐ Yes

| SIGNATURE (Present Name) | PRESENT ADDRESS (Number, Street, City, State, and ZIP Code) |
|---|---|
| /S/ Arnaldo Giammarco | 204 George St., Hartford, Ct. |

## INSTRUCTIONS TO CERTIFYING OFFICER

Persons who are serving or have served honorably under specified conditions in the armed forces of the United States, inclusive of the reserve components of the armed forces of the United States, are granted certain exemptions from the general requirements for naturalization. The law requires such service to be established by a duly authenticated copy of the records of the executive department having custody of the record of service, showing whether the serviceman served honorably in an active-duty status, a reserve-duty status, or both, and whether each separation from the service was under honorable conditions. For that purpose, the certified statement on the reverse of this form, executed under the seal of your department, is required and should cover not only the period(s) of service shown above, but any other periods of service (active, reserve, or both) rendered by the serviceman.

The reverse of this form should be completed, or the information called for furnished by separate letter and the form and letter returned to the office of the Immigration and Naturalization Service at the address in the box immediately below.

Immigration and Naturalization Service
900 Asylum Avenue
Hartford, Connecticut 06105

RETURN TO

Please type or print complete name, address, include ZIP code.

Form N-426 (Rev.5-12-77)N

[UNITE]D STATES DEPARTMENT OF JUS[TICE]
[Im]migration a[nd Natur]alization Service
900 [Asylum] Avenu[e] [Hartford], CT 06105

RECEIVED
DISTRICT DIRECTOR
1982 MAR 11 PM 3 32
IMM. & NATZ. S.
HARTFORD, CT. 06103

File No. Arnaldo Giammarco
A12 013 630 Citz.

Date February 4, 1982

Arnaldo Giammarco
204 George Street
Hartford, CT

RECEIVED
MAR 11 1982
CITIZENSHIP—HAR.

Examination of the (enclosed) application to file petition for naturalization shows that certain additional information, documents, or forms are needed before your application can be acted upon. To help you in that connection, we have checked [✓], in red in this letter the items which need your attention. Please read those items, and when you are able to comply with them RETURN THIS LETTER with the requested information, documents, and forms. We will then complete processing of your application.

☐ Unless you furnish the requested information or document(s) checked [✓], it will be necessary to recommend to the court that your petition for naturalization be denied for lack of prosecution.

✓ Enclosed please find new Forms N-426 and G-325b. The forms you have submitted are unacceptable as the reverse of the forms were completed. Please complete front side of these forms only.

☐ The application form you have submitted is obsolete. Complete and return the enclosed new application.

☐ Send money order or check for $____ made payable to the "Immigration and Naturalization Service Department of Justice". Do not send cash or postage stamps.

☐ Submit birth or baptismal certificate of ____

☐ Submit marriage certificate of ____

☐ Submit adoption decree for ____

☐ Submit proof of termination of marriage of ____

☐ Submit death certificate of ____

☐ Submit marriage certificate, divorce decree or other court order showing change of name.

☐ You must reside in your State for 6 months before you can apply for naturalization. Resubmit your application after ____

☐ Before you can apply for naturalization, you must reside in the United States for ____ years after the date you entered for permanent residence. Resubmit your application after ____.

Form N-14
Rev.3-1-80)N

(Over)

☐ Your application shows you do not have the required knowledge of English. Have someone read the attached Form N-132 to you. Resubmit your application when you have learned to read and write and speak English and are ready to be examined.

☐ Submit ____ identical, unglazed photographs taken within the last thirty days, 2 by 2 inches, on thin paper, light background showing front view without hat, distance from top of head to point of chin approximately 1½ inches. They may be in natural color or in black and white, but black and white photographs which have been tinted or otherwise colored are not acceptable. Machine-made photographs are not acceptable.

☐ Sign full name in ink on front of all photographs in the margin and not across the face or clothing.

☐ Submit naturalization or citizenship certificate of ____________________

☐ Give your Alien Registration number ____________________

☐ Submit a list of all your absences from the United States, the ports where you reentered, and the ship, plane, or other vehicle on which you traveled. Include absences to contiguous territories.

☐ Submit evidence to show you resided in and were physically present in the United States for 10 years before the birth of your child(ren) at least 5 years of which were after your ______ birthday.
(SEE FOOTNOTES BELOW)

☐ Submit an English translation of the attached ____________________
(SEE FOOTNOTES BELOW)

☐ Complete and return the enclosed Forms No. ____________________

☐ The depositions of your witness(es) ____________________

____________________ to cover your residence in ____________________

____________________ are not acceptable because ____________________

☐ Please have new witness(es) complete and return the enclosed Form N-462 to this office.

FOOTNOTES

EVIDENCE. Evidence may consist of birth certificates, baptismal certificates, marriage certificates, bankbooks, school records, insurance policies, receipts, licenses, letters, postal cards, employment records, listing in city directories, membership in organizations, police records, census records, leases, deeds, and any other records showing your presence in the United States during the required period.

DOCUMENTS. Any document in a foreign language must be accompanied by a summary translation in English. A summary translation is a condensation or abstract of the document's text. The translator must certify that he/she is competent to translate and that the translation is accurate. If you want any original document returned to you, and if the law does not prohibit the making of copies, a photostatic copy of the document must accompany the original document.

GPO 875-826

900 Asylum Avenue, Hartford, CT 06105

Arnaldo Giammarco
A12 013 630 Citz.
February 4, 1982

Arnaldo Giammarco
204 George Street
Hartford, CT

-------- to file petition for naturalization

Enclosed please find new Forms N-426 and G-325b. The forms you have submitted are unacceptable as the reverse of the forms were completed. Please complete front side of these forms only.

Form Approved OMB No. 43-R0265

UNITED STATES DEPARTMENT OF JUSTICE
IMMIGRATION AND NATURALIZATION SERVICE

# REQUEST FOR CERTIFICATION OF MILITARY OR NAVAL SERVICE

| ALIEN REGISTRATION NO. | DATE OF REQUEST |
|---|---|
| A12 013 630 | FEB 25 82 |

HAR 110900 3-12-82

For use in connection with my petition for naturalization, please complete the certification of military service on the reverse and furnish it to the office of the Immigration and Naturalization Service shown in the address block below. The information shown below is furnished to help locate and identify my military records. APPLICANT: FURNISH AS MUCH INFORMATION AS POSSIBLE. IF YOU WERE ISSUED A REPORT OF SEPARATION, DD FORM 214, ATTACH A COPY. FILL IN THE BLANKS ON THIS PAGE ONLY. PLEASE TYPE OR PRINT CLEARLY. PRESS FIRMLY–ALL COPIES MUST BE LEGIBLE. (DO NOT USE PENCIL)

| NAME USED DURING ACTIVE SERVICE (Last, first, middle) | SOCIAL SECURITY NO. | DATE OF BIRTH | PLACE OF BIRTH |
|---|---|---|---|
| Giammarco Aldo [illegible] | 040/52/5269 | 1/18/56 | ITALY |

*For an effective records search, it is important that ALL periods of service be shown below. (Use blank sheet if more space is needed.)*

ACTIVE SERVICE

| BRANCH OF SERVICE (Show also last organization, if known) | DATE ENTERED ON ACTIVE DUTY | DATE RELEASED FROM ACTIVE DUTY | CHECK WHICH: OFFICER | CHECK WHICH: ENLISTED | SERVICE NUMBER DURING THIS PERIOD |
|---|---|---|---|---|---|
| US ARMY | July 76 | July 79 | | ✓ | 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 |
| ARNG | JAN 80 | JAN 82 | | ✓ | Same as above |
| | DB, REC'D | | | | |
| | 23 MAR 82 O/VO | | | | |

RESERVE OR NATIONAL GUARD SERVICE: If none, check ☐ None

| BRANCH OF SERVICE | CHECK WHICH: RESERVE | CHECK WHICH: N. GUARD | DATE MEMBERSHIP BEGAN | DATE MEMBERSHIP ENDED | CHECK WHICH: OFFICER | CHECK WHICH: ENLISTED | SERVICE NUMBER DURING THIS PERIOD |
|---|---|---|---|---|---|---|---|
| ARNG | | ✓ | JAN 80 | JAN 82 | | ✓ | 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 |
| | | | | | | | |
| | | | | | | | |

RECEIVED AUG 27 1982 CITIZENSHIP — HAR

ARE YOU A MILITARY RETIREE OR FLEET RESERVIST? ☑ No ☐ Yes

| SIGNATURE (Present Name) | PRESENT ADDRESS (Number, Street, City, State and ZIP Code) |
|---|---|
| Aldo Giammarco | 204 Deny St Hartford Conn 06114 |

## INSTRUCTIONS TO CERTIFYING OFFICER

Persons who are serving or have served honorably under specified conditions in the armed forces of the United States, inclusive of the reserve components of the armed forces of the United States, are granted certain exemptions from the general requirements for naturalization. The law requires such service to be established by a duly authenticated copy of the records of the executive department having custody of the record of service, showing whether the serviceman served honorably in an active-duty status, a reserve-duty status, or both, and whether each separation from the service was under honorable conditions. For that purpose, the certified statement on the reverse of this form, executed under the seal of your department, is required and should cover not only the period(s) of service shown above, but any other periods of service (active, reserve, or both) rendered by the serviceman.

The reverse of this form should be completed, or the information called for furnished by separate letter, and the form and letter returned to the office of the Immigration and Naturalization Service at the address in the box immediately below.

Immigration and Naturalization Service
900 ASYLUM AVE
HARTFORD, CT 06105

RETURN TO: (Please type or print complete return address, include ZIP code)

File Copy

Form N-426 (Rev. 5-12-77)N

Memo to file

ARNALDO GIAMMARCO — 4-8-82

A 17 017 638

applicant arrested in January, 1981 for sexual assault in the first degree. Case is still pending because he requested a jury trial. He stated he picked up a girl with his car and she accused him of sexually assaulting her. Defer filing until disposition of case. applicant is a 329a case.

Kenneth W. DeConti
General Attorney

Date ____________ 19___

| |
|---|
| Date of entry into service |
| Date of separation |
| Service number |

The records of this Department show the following with respect to the subject of your inquiry:

All organizations, clubs or societies in the United States, or in any other country, of which subject was a member at any time, and dates thereof. (If none, show "None".)

All arrests, convictions, disciplinary actions, court martial proceedings, and illegal or immoral conduct in which subject involved, (including dates and results thereof.) (If none, show "None".)

Details of any oral or written statements, conduct, behavior or associations of the subject which may indicate belief in, advocacy of or preference or sympathy for Communism or any other foreign ideology inconsistent with loyalty to the United States or the form of government of the United States or attachment to the principles of the United States Constitution. (If none, show "None".)

Additional information or references.

I certify that the information here given concerning the person named is correct according to the records of the

(Name of Department or organization)

Official signature

By

GPO 877-882

075-6 HAR N400 3/12/82

Form G-325B (Rev. 5-1-79)N UNITED STATES DEPARTMENT OF JUSTICE Form Approved OMB No. 43-R436
Immigration and Naturalization Service

**BIOGRAPHIC INFORMATION** GIAMMARCO IT

| (Family name) | (First name) | (Middle name) | MALE / FEMALE | BIRTHDATE (Mo.-Day-Yr.) | NATIONALITY | FILE NUMBER |
|---|---|---|---|---|---|---|
| Giammarco | Arnaldo | — | [X] MALE | 1/18/56 | ITALY | A12 013 630 |

| ALL OTHER NAMES USED (Including names by previous marriages) | CITY AND COUNTRY OF BIRTH | SOCIAL SECURITY NO. (If any) |
|---|---|---|
| NONE | Pessa ITALY | 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 |

| | FAMILY NAME | FIRST NAME | DATE, CITY AND COUNTRY OF BIRTH (If known) | CITY AND COUNTRY OF RESIDENCE |
|---|---|---|---|---|
| FATHER | Giammarco | Lino | ITALY | |
| MOTHER (Maiden name) | Giammarco | Elena | ITALY | USA Hartford Conn |

| HUSBAND (If none, so state) OR WIFE | FAMILY NAME (For wife, give maiden name) | FIRST NAME | BIRTHDATE | CITY & COUNTRY OF BIRTH | DATE OF MARRIAGE | PLACE OF MARRIAGE |
|---|---|---|---|---|---|---|
| | NONE | | | | | |

FORMER HUSBANDS OR WIVES (If none, so state)

| FAMILY NAME (For wife, give maiden name) | FIRST NAME | BIRTHDATE | DATE & PLACE OF MARRIAGE | DATE AND PLACE OF TERMINATION OF MARRIAGE |
|---|---|---|---|---|
| 2 CIDS | ACRD | 79 | 557300454 | > attached |
| 1 DIS | ACRD | 77 | 249356?IV | > attached |

APPLICANT'S RESIDENCE LAST FIVE YEARS. LIST PRESENT ADDRESS FIRST.

| STREET AND NUMBER | CITY | PROVINCE OR STATE | COUNTRY | FROM MONTH | FROM YEAR | TO MONTH | TO YEAR |
|---|---|---|---|---|---|---|---|
| 207 George St | HART. | Conn | USA | July | 79 | PRESENT TIME | |
| USARMY Eur | | | | July | 76 | July | 79 |
| DDIS-82-069DU53748 IK2F (attached) | | | | | | | |

APPLICANT'S LAST ADDRESS OUTSIDE THE UNITED STATES OF MORE THAN ONE YEAR.

| STREET AND NUMBER | CITY | PROVINCE OR STATE | COUNTRY | FROM MONTH | FROM YEAR | TO MONTH | TO YEAR |
|---|---|---|---|---|---|---|---|
| US ARMY-Eur | | | | | | | |

APPLICANT'S EMPLOYMENT LAST FIVE YEARS. (IF NONE, SO STATE.) LIST PRESENT EMPLOYMENT FIRST.

| FULL NAME AND ADDRESS OF EMPLOYER | OCCUPATION (Specify) | FROM MONTH | FROM YEAR | TO MONTH | TO YEAR |
|---|---|---|---|---|---|
| Self Employed Giammarco's Market Maple Ave HART | Operator | April | 82 | PRESENT TIME | |
| Standye Inc Deerfield Rd Windsor Conn | MACH | Nov | 79 | Feb | 82 |
| US Army | | July | 76 | July | 79 |

RECEIVED RECEIVED

Show below last occupation abroad if not shown above. (Include all information requested above.)

MAY 7 1982

THIS FORM IS SUBMITTED IN CONNECTION WITH APPLICATION FOR:
[X] NATURALIZATION [ ] OTHER (Specify) NOV 1 1982
[ ] STATUS AS PERMANENT RESIDENT

CITIZENSHIP—HAR CITIZENSHIP—HAR

If serving or ever served in Armed Forces of the United States, complete the following:
Branch of Service: US Army Rank: E-4 Service Number: 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

INS USE (Office of Origin)
Office Code: HAR/N400/3/12/82
Type of Case: 400 Asylum Ave Hartford Ct 06105

To Other Agency: Please furnish remaining reverse of this form, or by attachment, information as to any derogatory information that may be contained in your records concerning the above person, for use in connection with consideration of above application and return to U.S. Immigration and Naturalization Service.

Date of Request: FORT MEADE, MD. 20755
[ ] REPD. TO WAS
FOR FILE REVIEW

(OTHER AGENCY) 4/5/1982
[ ] No Record
[ ] Nothing Derogatory
[X] Report Attached
[ ] Remarks

MAY 3 1982

(ALL DEFENSE CHECKS) [ ] No Record [ ] Nothing Derogatory [X] Report Attached 2 Pages [X] Remarks on Reverse

| MIL PERS. | RESERVE | ROSI (USAF) | ROSI (USN) |
|---|---|---|---|
| USAF PERS. | ARMY PERS. | | |
| SEE OI 328.1 FOR MAILING ADDRESS | | MID G-2 | PROV. MAR. |

MAIL TO:
DIRECTOR
UNITED STATES ARMY INVESTIGATIVE RECORDS REPOSITORY
ATTN: ICIRR-A
FORT MEADE, MARYLAND 20755
ATTENTION: LIAISON OFFICE
IMMIGRATION AND NATURALIZATION SERVICE

STATE (P.P.) | STATE (S.Y.) | OTHER
SEE OI 105.4 FOR MAILING ADDRESS

FOR STATE DEPARTMENT USE: [ ] SY [ ] RSC [ ] NAR [ ] C-Visa [ ] R-Visa [ ] ORM

FORM G-325B

| FIRST | M.I. | SURNAME | ALIAS |
|---|---|---|---|
| ARNOLD | | GIAMMARCO | |

| ADDRESS | reg | file | D-O-B |
|---|---|---|---|
| 204 George St: | sex M | race Wht. | 1-18-56 |

| DATE | OFFENSE | CASE | DISPOSITION |
|---|---|---|---|
| 1-23-81 | Sexual Assault 1st. | 81-3724 | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

HPD Form 8 rev. 11/80

APPLICANT: DO NOT FILL OUT THIS PAGE

# CERTIFICATION OF MILITARY OR NAVAL SERVICE

[XX] Name correctly shown on front of form.
[ ] Name as shown in records:

## ACTIVE SERVICE

| 1. ENTERED SERVICE | 2. ON | 3. SERVED TO | 4. BRANCH OF SERVICE | 5. STATE WHETHER SERVING HONORABLY. IF SEPARATED, STATE WHETHER UNDER HONORABLE CONDITIONS. IF OTHER THAN HONORABLE, GIVE FULL DETAILS. ALWAYS COMPLETE ITEM 11. |
|---|---|---|---|---|
| Hartford, CT | 29 Jul 76 | 25 Jul 79 | RA | Honorable |

## RESERVE OR NATIONAL GUARD SERVICE

| 6. BRANCH OF SERVICE | 7. CHECK WHICH: RESERVE | N. GUARD | BEGAN | ENDED | STATE WHETHER SERVING HONORABLY. IF SEPARATED, STATE WHETHER UNDER HONORABLE CONDITIONS. IF OTHER THAN HONORABLE, GIVE FULL DETAILS. ALWAYS COMPLETE ITEM 11. |
|---|---|---|---|---|---|
| USAR Delayed | XXXXXX | | 26 Jun 76 | 28 Jul 76 | Honorable |
| USAR | XXXXXXX | | 26 Jul 79 | still serving | Honorable |

11. **STATEMENT REGARDING ALIENAGE.** *(Complete this item on ALL cases.)*
[XX] Record shows this person WAS NOT discharged on account of alienage.
[ ] Record shows this person WAS discharged on account of alienage. Details:

12. **REMARKS.** Use for continuation of any of above items. You should also show in the space below any **DEROGATORY INFORMATION** in your records relating to the serviceman's character, loyalty to the United States, disciplinary actions, convictions or other matters touching on his fitness for citizenship.

See attached. Contact service member's current unit of assignment for additional information.

Complete this block if subject is a "Lodge Act enlistee" - 64 Stat. 316 (Army). Subsequent to enlistment under the Lodge Act on ________ subject entered ________ (the United States, American Samoa, Swains Island, or the Canal Zone) at the port of ________ pursuant to Military orders on ________

I CERTIFY that the information here given concerning the service of the person named on the face of this form is correct according to the records of the DA-AGUZ-PSE-VO/GHG
(Name of department or organization)

[SEAL] *(Official signature)*

Date AUG 1982 19

By IRWIN R. BERNDT
MAJ, CS
Deputy Director of Personnel Services Directorate



GIAMMARCO, Arnaldo A12 013 630

N400 ~~2-3-82~~
Reopen 10/4/82

390 SERVICEMAN

# Exhibit 16

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In the Matter of the Application of<br><br>COMMITTEE ON FINANCE<br>WASHINGTON, D.C. 20510-6225,<br><br>For a Writ of Habeas Corpus<br>Ad Testificandum | Misc. No. 07-134 (TFH) |

OPPOSITION OF SENATE COMMITTEE ON FINANCE TO EMERGENCY MOTION TO QUASH WRIT OF HABEAS CORPUS AD TESTIFICANDUM

## INTRODUCTION

On the eve of a hearing of the Senate Committee on Finance scheduled for Thursday, April 12, 2007, the Federal Bureau of Prisons has filed an emergency motion to quash a writ of habeas corpus ad testificandum issued by this Court on April 4, 2007, to bring a necessary witness to testify at the Committee's hearing. While discussions preceding the filing of the motion to quash suggest that the Bureau of Prisons is unhappy with the Committee's precise arrangements for the testimonial appearance of the witness at the hearing, in its motion the Bureau challenges more broadly the legality of the Court's issuance of writs of habeas corpus to facilitate testimony of prisoners before congressional committees. This Court has issued such writs dozens of times over the past half-century. Such use of the habeas writ is well-established in the law and in historical practice and has never before, to our knowledge, been the subject of question or challenge by the Department of Justice. The Court should reject this last-minute and ill-considered effort to disrupt the Finance Committee's hearing.

## BACKGROUND

The United States Senate Committee on Finance ("the Committee") applied to this Court on April 3, 2007, for a writ of habeas corpus ad testificandum to produce Evangelos Dimitrios Soukas, a federal prisoner incarcerated in the Victorville Medium II Federal Correc-

APR 1 0 2007
NANCY MAYER ... CLERK
U.S. DISTRICT COURT

Case 1:07-mc-00134-TFH Document 3 Filed 04/10/07 Page 2 of 11

tional Institution in Victorville, California, for questioning by Committee staff on April 11, 2007, and for testimony before the Committee at a hearing on April 12, 2007.

Mr. Soukas has information relevant to the Committee's income tax filing season hearing, which will focus on deficiencies in the quality and accountability of tax preparers and the need for improvement in order to increase tax compliance and reduce the tax gap. The hearing will explore the need for new legislation to enhance preparer regulation, to protect taxpayer rights, and to improve tax administration. To demonstrate how identity theft undermines the integrity of our tax system, Mr. Soukas, who is serving an eight-year prison sentence for crimes, including identity fraud and submitting fraudulent claims to the IRS, is being called to describe how he used stolen identities to file fraudulent tax returns electronically and obtain false refunds.

The Court issued the writ for Mr. Soukas' appearance before the Committee on April 4, 2007, and the United States Marshals Service commenced arrangements for securely transporting Mr. Soukas for his appearance in Washington, D.C., apparently moving him to the Federal Transfer Center in Oklahoma City, in preparation for transporting him to the Washington, D.C. area.[1] On Friday, April 6, 2007, the Federal Bureau of Prisons ("the Bureau")

---

[1] Tracking the Committee's application and proposed writ, the writ issued by the Court is directed to the Director of the Marshals Service and the Marshal for the Central District of California. Although it has been done both ways historically, it would have been preferable for the Committee to have asked the Court to direct the writ also to the Warden at the Bureau facility then holding Mr. Soukas, the Victorville Medium II Federal Correctional Institution in California. The application also should have, more accurately, described Mr. Soukas as in the custody of the Bureau of Prisons, not the Marshals Service.

That technical variance hardly makes the writ "ineffective as a matter of law." Emergency Motion to Quash at 4. We do not believe that the Court was misled; certainly neither the Bureau of Prisons nor the Marshals Service was. In reliance on the writ, both agencies cooperated in transferring Mr. Soukas to an Oklahoma City facility in preparation for transporting him to Washington. Once Mr. Soukas left Victorville FCI, directing the writ to the Warden there is obviously of no import. The logical position of the Bureau is that, to be effective, the Court must direct the writ to the Warden at each Bureau facility at which the prisoner will be held while en route to Washington. That makes no sense and, to our knowledge, has never (continued...)

notified the Committee staff for the first time of its objections to the issuance of the writ for Mr. Soukas' testimony. These last-minute objections followed two weeks of cooperative work between the Bureau and the Committee regarding Mr. Soukas' appearance, including the Bureau's making him voluntarily available for two telephone interviews by Committee staff, during which the Bureau raised no objections, based on security, decorum, or otherwise. The Bureau explained on Friday afternoon and on the morning of Monday, April 9, as it has advised the Court, that it did not believe it was sound penological practice to permit a prisoner to testify in open session, subject to media coverage, on the same panel as government officials.

In response, the Committee explained that it has sole responsibility under the Constitution to organize its oversight hearings, and that, under the Standing Rules of the Senate, committee hearings are public and open to press coverage, except in narrow, specified circumstances.[2] On the afternoon of April 9, without further consultation, the Office of the United

---

[1](...continued)
been done before. If the Bureau would prefer that the writ be amended to add the Warden at the Federal Transfer Center in Oklahoma City and the Director of the Bureau of Prisons, the Committee would endorse such an amendment and has attached a new proposed writ with that addition. Quashing the writ, in contrast, would serve no legitimate purpose.

[2] The Committee is not insensitive to the difficult demands placed on the Bureau of Prisons and the Marshals Service in their responsibility to maintain the security of federal prisoners and those in proximity to them. Had the Bureau raised its concerns to the Committee earlier, it is possible that the Committee could have found a way to ameliorate at least some of those concerns. (Indeed, weeks ago the Justice Department advised the Committee of its objection to testimony by another prisoner at this hearing, because of the continued pendency of criminal investigations. The Committee deferred to the Department's request and substituted Mr. Soukas as its witness.)

By withholding its objections to Mr. Soukas' testimony until the final hour, and then insisting on a video-conferenced, remote appearance in lieu of live testimony, the Bureau made an accommodation with the Committee impossible. Security of prisoners is important, as the Committee well recognizes, but prisoners are transported around the country for a variety of reasons every day, including for needed testimony. Ultimately, the question whether the benefit of hearing a prisoner testify live outweighs the security and other costs of bringing the witness to Washington is a policy question for the Committee, not a question of law for the Court. This Court has issued writs for testimony at congressional hearings by prisoners, such as organized crime figures, posing far greater security challenges, it would appear, than Mr.
(continued...)

States Attorney advised undersigned counsel of its determination to move, within the hour, to quash the writ of habeas corpus ad testificandum issued by the Court.[3]

ARGUMENT

This memorandum submitted in opposition to the Bureau's Emergency Motion to Quash (an "emergency" entirely of the Bureau's making) describes the historical practice of this and other courts in assisting congressional committees, including this Committee, in obtaining needed testimony from incarcerated witnesses. This history manifests a well-established and time-honored practice, which is fully authorized by the habeas corpus statute and is in furtherance of the coordinate branches' proper role of cooperating with the constitutional oversight function of their sister Legislative Branch.

[2](...continued)
Soukas. Ultimately, the Bureau's security concerns about "elevating" the status of a prisoner could apply to every prisoner whom a congressional committee or court might need to hear from.

Nor, in our system of separated powers, does the Executive Branch, or the Court, have a role in deciding whether a committee of Congress should meet in open or closed session, with or without news media present, or what the order or arrangement of witnesses at the committee's hearing should be. It should be noted that the Committee has moved its hearing from its regular hearing room to facilitate the Marshal's safe transport of Mr. Soukas to and from the hearing. The Committee also will be seating Mr. Soukas at a table separate from the other witnesses.

[3] Committee counsel also learned from the Marshals Service that the Marshals had been instructed by the Bureau of Prisons on Monday, April 9, not to have further contact with the Committee and to cease making arrangements to effectuate the writ, notwithstanding that the writ remains in effect pending further order of the Court. This unilateral action, effectively staying the writ on its own action, runs a risk of interfering with the Committee's scheduled proceedings, *cf. Eastland v. United States Servicemen's Fund, Inc.*, 421 U.S. 491, 511 (1975) (noting "harm that judicial interference may cause" through effort to enjoin issuance of committee subpoena, thereby "frustrat[ing]" committee's inquiry for substantial period of time), and an order of this Court.

ISSUANCE OF WRITS OF HABEAS CORPUS AD TESTIFICANDUM TO PRODUCE PRISONERS TO TESTIFY AT CONGRESSIONAL HEARINGS IS WELL-GROUNDED IN LAW AND HISTORICAL PRACTICE

This Court has issued writs to produce prisoners to testify before a succession of congressional investigating committees over at least the past five decades. It has issued such writs on the application of the McClellan Labor Racketeering Committee in the 1950's, the Senate Watergate Committee, the House Special Subcommittee on Intelligence, and the House Assassinations Committee in the 1970's. More recently, the Court has issued writs on application of this Committee, as well as on behalf of many of the other standing committees of the Senate.[4] One writ, issued by District Judge George Hart upon application of the Senate's Permanent Subcommittee on Investigations, was followed by a civil contempt case when the witness refused to testify, and the civil contempt sentence was upheld by this Circuit.[5]

The habeas corpus statute provides in general terms, "Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). The law expressly provides that "[t]he writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody under or by color of the authority of the United States. . . ." 28 U.S.C. § 2241(c)(1). Mr. Soukas, the subject of this writ, is "in custody under . . . the authority of the United States," as the Bureau of Prisons makes clear.

The Bureau cites a succeeding paragraph of 28 U.S.C. § 2241, section 2241(c)(5), which provides that a writ of habeas corpus shall not extend to a prisoner unless "[i]t is necessary to bring him into court to testify or for trial." Emergency Motion to Quash ("Motion") at

---

4 Accompanying this memorandum is an appendix that lists, and reproduces, many of these writs. The list is illustrative, not complete, because, for one reason, it omits writs issued under seal.

5 *See In the Matter of the Application of the United States Senate Permanent Subcommittee on Investigations*, 655 F.2d 1232, 1233-34 (D.C. Cir.), *cert. denied*, 454 U.S. 1084 (1981). The writ was issued by this Court in Misc. No. 80-0102 (D.D.C. Apr. 11, 1980) (Hart, J.). The court of appeals' decision refers to the defendant's status as a federal prisoner at the time he was called to testify before a Senate subcommittee. *See* 655 F.2d at 1233.

4. A fact not quoted, or noted, in the Bureau's motion, however, is that the five paragraphs of section 2241(c) are each separated by the word "or." Thus, any of the five paragraphs provides a permissible predicate for issuance of a writ of habeas corpus. *See In Re Alphonso Michael (Mike) Espy*, 80 F.3d 501, 505 (D.C. Cir. Div. for Purp. of App. Ind. Coun. 1996) (per curiam) (rejecting suggestion by Department of Justice to read "or" in statute as "and," noting that "a statute written in the disjunctive is generally construed as setting out separate and distinct alternatives") (omitting internal citation). Reading the paragraphs in the conjunctive, rather than the disjunctive, would, in addition to violating one of the most basic canons of statutory construction, *see id.*, render the statute close to meaningless, as, if it were necessary to satisfy all five conditions, for example, only citizens of foreign states could be the subject of habeas writs. *See* 28 U.S.C. § 2241(c)(4).

Because, read properly in the disjunctive, the habeas statute does not define expressly the kinds of "writs of habeas corpus" that can be issued, the Supreme Court has indicated that the courts must look to the historic usage of such writs to define their authority to issue such writs. *See Carbo v. United States*, 364 U.S. 611, 617-20 (1961) (tracing common law and subsequent history of issuance of writ of habeas corpus ad prosequendum). Reference to historic usage is, here, incontrovertible. At common law, the historical record reflects that the English courts issued writs of habeas corpus ad testificandum, when necessary, to produce prisoners to testify before Parliament.[6] Further, as shown in the appendix to this memorandum,

---

[6] *See In the Matter of Sir Edward Price, A Prisoner*, IV East 587 (K.B. 1804). In that case the Speaker of the House of Commons applied for a writ of habeas corpus ad testificandum to obtain a prisoner in Ilchester "gaol", who was stated to be a material witness in one of Parliament's election disputes. The English court was at first somewhat surprised at the request, but granted the writ after issuing a rule to show cause why the prisoner should not be produced:

> *The Court* at first entertained doubts of the propriety of such an application, of which they did not recollect any precedent. But after some hesitation they gave a rule to shew [sic] cause; and desired that it might be served on the Attorney-General, and the gaoler, and also on all persons at whose suit the witness might

(continued...)

this Court has issued numerous such writs over the past half-century. This past practice is important in construing the general habeas corpus statute. *See Carbo*, 364 U.S. at 620.

Moreover, one decision of this Court in a contempt of Congress case upheld the validity of the issuance of such a writ. In 1973, the House Select Subcommittee on Intelligence investigated certain aspects of Watergate and applied to Chief Judge John Sirica for a writ to produce G. Gordon Liddy as a witness. Chief Judge Sirica issued the writ, Liddy appeared and refused to testify, and this Court (Pratt, J.) convicted Liddy of contempt of Congress.

The Court issued an unreported statement of findings of fact and conclusions of law. The Court's sixth and seventh findings of fact describe the issuance of the writ, and its sixth conclusion of law upheld the validity of the writ:

FINDINGS OF FACT

***

6. On July 16, 1973, after determining that defendant was then incarcerated in the District of Columbia jail and could not be produced by subpoena, the Subcommittee, by its Chairman, petitioned Chief Judge Sirica of this Court for a writ of habeas corpus *ad testificandum*.

7. On July 16, 1973, Chief Judge Sirica granted the writ of habeas corpus *ad testificandum* requested by the Subcommittee.

8. On July 20, 1973, defendant, in the custody of the United States Marshal, appeared with counsel before an executive session of the Subcommittee being held in the District of Columbia.

* * *

CONCLUSIONS OF LAW

***

6. Defendant was validly summoned by authority of the Subcommittee pursuant to a writ of habeas corpus *ad testificandum* granted by Chief Judge

[6](...continued)

be detained in custody on civil process at the time.

*Id. at 588.*

Sirica of this Court on July 16, 1973. *Barber v. Page*, 390 U.S. 719, 724 (1968); VIII Wigmore, *Evidence* § 2199 (McNaughton rev. 1961).[7]

This Court's citation in *United States v. Liddy* to *Barber v. Page*, 390 U.S. 719 (1968), reflects the Supreme Court's holding that federal courts may issue such writs, both to produce prisoners as witnesses in the Court's own cases, and also to produce witnesses for proceedings elsewhere. In *Barber v. Page*, 390 U.S. at 724, the Court held that federal courts may issue such writs upon application of state prosecutorial authorities:

> For example, in the case of a prospective witness currently in federal custody, 28 U.S.C. § 2241(c)(5) gives federal courts the power to issue writs of habeas corpus *ad testificandum* at the request of state prosecutorial authorities. *See Gilmore v. United States*, 129 F.2d 199, 202 (C.A. 10th Cir. 1942); *United States v. McGaha*, 205 F. Supp. 949 (D.C.E.D. Tenn. 1962).

The state prosecutors referred to by the Supreme Court had no case pending before the federal court and asked the federal court to issue a writ in aid of their state proceedings. In recognizing the authority to issue writs in such instances, the Supreme Court concluded that the federal courts can grant such writs in aid of proceedings elsewhere. Writs for state proceedings as prescribed in *Barber v. Page*, or for congressional proceedings, are, in this regard, similar to the subpoenas or other process issued by this Court in aid of proceedings in other districts.

In all of the instances in which congressional committees have filed applications for habeas writs over the past fifty years, we know of no case in which a court has ever concluded that it lacked authority to grant the writ, or in which the Department of Justice even intimated such a view.[8] For this Court to issue such writs, as it has done consistently in the past, pro-

---

[7] *United States v. Liddy*, Cr. No. 74-117 (D.D.C. May 10, 1974). The full text of the Court's opinion is included in the appendix to this memorandum at page 4.

[8] In one case, the district court issued the writ and denied a motion to quash it, and the prisoner appealed. After the prisoner appeared at the hearing, his appeal was dismissed as moot. *In the Matter of Hearings by the Committee on Banking and Currency of the United States Senate*, 245 F.2d 667 (7th Cir. 1957). In another reported case, a state court issued such a writ to produce an inmate in a state prison at a Senate committee hearing. *In the Matter of Erickson*, 277 App. Div. 696 (N.Y. 1951).

Case 1:07-mc-00134-TFH Document 3 Filed 04/10/07 Page 9 of 11

vides an orderly mechanism for obtaining the production of prisoners needed as congressional witnesses. Such a mechanism is frequently necessary for effective congressional investigations, such as the Committee's forthcoming hearing.

At no time has Congress amended the habeas corpus statute or acted otherwise to overrule the consistent view of this Court that it is authorized to issue such writs. Indeed, when Congress added to the jurisdiction of this Court the power to grant civil enforcement of Senate subpoenas, section 705(f)(1) of the Ethics in Government Act of 1978, *codified at* 28 U.S.C. § 1365, noted by the Bureau (Motion at 5 n.1), the sponsors of the statute demonstrated the awareness by the Congress, and its approval, of this Court's exercise of jurisdiction to issue writs of habeas corpus ad testificandum for legislative inquiries. As Senator Abourezk told the Senate:

> The purpose of such a writ [of habeas corpus ad testificandum] is to make a person incarcerated in a State or Federal prison available to a committee as a witness. Petitions for such writs are routine for subcommittees like the Permanent Investigations Subcommittee of the Governmental Affairs Committee, which often investigates criminal conduct.

123 Cong. Rec. 20960 (1977).

The Bureau's argument that the Court lacks power to issue a writ of habeas corpus to facilitate needed testimony before Congress, rather than a court, fails to credit the constitutional foundation of the Congress's power of investigation and oversight. As the Supreme Court has stated, "the power of inquiry – with process to enforce it – is an essential and appropriate auxiliary to the legislative function." *McGrain v. Daugherty*, 273 U.S. 135, 174 (1927). "A legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change; and where the legislative body does not itself possess the requisite information – which not infrequently is true – recourse must be had to others who do possess it." *Id.* at 175. Because Mr. Soukas is incarcerated, he cannot produce himself to testify at a Senate hearing. Accordingly, the Com-

mittee must seek the assistance of the Court, the Federal Bureau of Prisons, and the U.S. Marshals Service to obtain the information it needs. The Committee appreciates that assistance, which has been forthcoming from the other Branches for more than fifty years.

CONCLUSION

Accordingly, this Court should deny the Emergency Motion to Quash the writ of habeas corpus ad testificandum in order that Evangelos Dimitrios Soukas may be produced for questioning by Committee staff as early as possible in the afternoon or evening on April 11, 2007, and for testimony at a Committee hearing on April 12, 2007.

Respectfully submitted,

Morgan J. Frankel, Bar #342022
Senate Legal Counsel

Patricia Mack Bryan, Bar #335463
Deputy Senate Legal Counsel

Grant R. Vinik, Bar #459848
Assistant Senate Legal Counsel

Thomas E. Caballero
Assistant Senate Legal Counsel

Office of Senate Legal Counsel
642 Hart Senate Office Building
Washington, D.C. 20510-7250
Tel: (202) 224-4435
Fax: (202) 224-3391

Counsel for Senate Committee on Finance

April 10, 2007

Case 1:07-mc-00134-TFH Document 3 Filed 04/10/07 Page 11 of 11

CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2007, a true copy of the foregoing Opposition of Senate Committee on Finance to Emergency Motion to Quash Writ of Habeas Corpus Ad Testificandum, with proposed writ, were served by electronic mail on Assistant United States Attorney John F. Henault at John.Henault@usdoj.gov, and that the Opposition, with appendix and proposed writ, were faxed to Mr. Henault at 202-514-8780.

Morgan J. Frankel

# Exhibit 17

PINGTEST.NET

settings about contact

Packet Loss:
Ping:
228 ms
Jitter:
49 ms

YOUR GRADE: D*

LINE QUALITY
D*
PING
228 ms
JITTER
49 ms
SERVER
New York, NY
ISP
Telecom Italia Mobile
FORUM LINK
DIRECT LINK

# Exhibit 18

[Volume 8 / Number 1]

# akamai's [state of the internet]

## Q1 2015 report



# [SECTION]6 GEOGRAPHY *EUROPE, MIDDLE EAST, AND AFRICA (EMEA)*

The metrics presented here for the EMEA region are based on a subset of data used for Section 2 and are subject to the same thresholds and filters discussed within that section. The subset used for this section includes connections identified as coming from networks in the EMEA region, based on classification by Akamai's EdgeScape geolocation tool.

**6.1 EMEA Average Connection Speeds /** With an unusually large 37% quarterly increase, Ireland moved into the top spot for average connection speeds among the surveyed EMEA countries in the first quarter. As seen in Figure 28, Ireland's 17.4 Mbps beat out Sweden, the fourth quarter leader, by 1.6 Mbps. Of the surveyed countries, 14 in total had average connection speeds above the 10 Mbps threshold, with Austria and Germany joining this group in the first quarter after seeing 5.9% and 15% increases, respectively. In addition, all of the surveyed countries except South Africa again saw average connection speeds above the 4 Mbps broadband threshold. While quarterly changes were mixed across the countries in the previous quarter, all of the countries

Case 3:16-mc-00099-VLB Document 5-1 Filed 03/16/16 Page 107 of 126

posted gains in average connection speeds in the first quarter. Increases ranged from 2.9% in Switzerland to 37% in Ireland, with 10 surveyed countries seeing double-digit percentage quarterly gains. In the previous quarter, only one country gained more than 10%.

Year-over-year changes in average connection speeds were again consistently positive for EMEA and stronger overall than in the fourth quarter. Austria and Russia saw the smallest increases at 10% each, while the United Arab Emirates and Ireland posted the largest gains, at 47% and 63%, respectively. Fifteen surveyed countries saw gains of at least 25% compared with the previous year. Across the EMEA region, these highly positive long-term growth trends have continued to point to ongoing improvements in Internet connectivity within the surveyed countries.

**6.2 EMEA Average Peak Connection Speeds /** As shown in Figure 29, the first quarter saw stronger growth in average peak connection speeds across the EMEA countries as compared with the fourth quarter of 2014. The United Arab Emirates had the only decline, losing 18% — after a significant 54% gain in the previous quarter. Increases among the remaining countries ranged from Belgium's 3.6% to Norway's 22%. Twelve of the surveyed EMEA countries had average peak connection speeds above 50 Mbps, a sizeable increase from eight in the fourth quarter. Due to its 18% decline, the United Arab Emirates dropped out of the 50 Mbps group in the first quarter, but Russia, Finland, Norway, the United Kingdom, and Hungary all joined the ranks. Several other countries were not far behind and could easily join this group in upcoming quarters. Romania held its spot as the regional leader, with an average peak connection speed of 71.6 Mbps, while South Africa continued to trail the pack at 16.8 Mbps, just over half the speed of the next-lowest country, Italy.

Once again, year-over-year changes for the surveyed countries in the EMEA region were consistently positive. Israel, with a 17% increase, saw the smallest yearly growth in the first quarter, while South Africa, with a 68% gain, once again saw the largest. The remaining countries posted increases between 20% and 57%, indicating strongly positive trends for peak Internet connection speeds in the region.

| Global Rank | Country/Region | Q1 2015 Avg. Mbps | QoQ Change | YoY Change |
|---|---|---|---|---|
| 2 | Ireland | 17.4 | 37% | 63% |
| 4 | Sweden | 15.8 | 8.1% | 36% |
| 5 | Netherlands | 15.3 | 8.1% | 24% |
| 7 | Switzerland | 14.9 | 2.9% | 17% |
| 8 | Norway | 14.1 | 24% | 39% |
| 10 | Finland | 13.7 | 13% | 27% |
| 11 | Czech Republic | 13.6 | 10% | 22% |
| 14 | Denmark | 12.8 | 7.8% | 21% |
| 15 | Romania | 12.8 | 10% | 38% |
| 17 | Israel | 12.1 | 13% | 35% |
| 18 | Belgium | 11.9 | 9.5% | 19% |
| 21 | United Kingdom | 11.6 | 6.7% | 17% |
| 25 | Austria | 10.4 | 5.9% | 10% |
| 26 | Germany | 10.2 | 15% | 25% |
| 27 | Poland | 9.8 | 12% | 32% |
| 31 | Russia | 9.4 | 5.2% | 10% |
| 32 | Slovakia | 9.4 | 15% | 29% |
| 33 | Hungary | 9.4 | 7.8% | 26% |
| 34 | Portugal | 9.2 | 14% | 43% |
| 38 | Spain | 8.9 | 9.3% | 25% |
| 44 | France | 7.5 | 6.5% | 14% |
| 53 | United Arab Emirates | 6.3 | 9.3% | 47% |
| 54 | Turkey | 6.3 | 8.7% | 26% |
| 56 | Italy | 6.1 | 9.6% | 17% |
| 90 | South Africa | 3.4 | 3.7% | 29% |

Figure 28: Average Connection Speed by EMEA Country

| Global Rank | Country/Region | Q1 2015 Peak Mbps | QoQ Change | YoY Change |
|---|---|---|---|---|
| 5 | Romania | 71.6 | 6.8% | 32% |
| 10 | Israel | 67.3 | 11% | 17% |
| 11 | Sweden | 62.8 | 9.7% | 47% |
| 13 | Netherlands | 61.5 | 9.0% | 36% |
| 15 | Ireland | 60.7 | 16% | 57% |
| 17 | Switzerland | 59.7 | 4.8% | 33% |
| 21 | Belgium | 53.5 | 3.6% | 20% |
| 23 | Russia | 53.1 | 7.0% | 29% |
| 24 | Finland | 53.0 | 12% | 45% |
| 26 | Norway | 51.9 | 22% | 45% |
| 27 | United Kingdom | 51.6 | 5.6% | 22% |
| 30 | Hungary | 50.4 | 11% | 34% |
| 32 | Czech Republic | 49.5 | 8.3% | 28% |
| 34 | Denmark | 47.8 | 8.5% | 35% |
| 35 | Portugal | 46.8 | 5.7% | 27% |
| 36 | Germany | 46.5 | 13% | 31% |
| 39 | Spain | 44.5 | 12% | 38% |
| 40 | Poland | 44.2 | 8.6% | 35% |
| 41 | Slovakia | 44.1 | 10% | 37% |
| 42 | Austria | 44.0 | 6.9% | 22% |
| 44 | United Arab Emirates | 41.8 | -18% | 29% |
| 51 | Turkey | 37.4 | 11% | 41% |
| 55 | France | 35.1 | 11% | 36% |
| 68 | Italy | 30.3 | 12% | 41% |
| 112 | South Africa | 16.8 | 11% | 68% |

Figure 29: Average Peak Connection Speed by EMEA Country

**Editor**
David Belson

**Design**
Shawn Doughty, Creative Direction
Brendan O'Hara, Art Direction/Design

**Contact**
stateoftheinternet@akamai.com
Twitter: @akamai_soti / @akamai
www.stateoftheinternet.com

**Contributors**
Jon Thompson
Jennifer Sun
Richard Möller (Ericsson)
Mathias Sintorn (Ericsson)
Geoff Huston (APNIC)

As the global leader in Content Delivery Network (CDN) services, Akamai makes the Internet fast, reliable and secure for its customers. The company's advanced web performance, mobile performance, cloud security and media delivery solutions are revolutionizing how businesses optimize consumer, enterprise and entertainment experiences for any device, anywhere. To learn how Akamai solutions and its team of Internet experts are helping businesses move *faster forward*, please visit *www.akamai.com* or *blogs.akamai.com*, and follow *@Akamai* on Twitter.

Akamai is headquartered in Cambridge, Massachusetts in the United States with operations in more than 57 offices around the world. Our services and renowned customer care are designed to enable businesses to provide an unparalleled Internet experience for their customers worldwide. Addresses, phone numbers and contact information for all locations are listed on *www.akamai.com/locations*.

©2015 Akamai Technologies, Inc. All Rights Reserved. Reproduction in whole or in part in any form or medium without express written permission is prohibited. Akamai and the Akamai wave logo are registered trademarks. Other trademarks contained herein are the property of their respective owners. Akamai believes that the information in this publication is accurate as of its publication date; such information is subject to change without notice. Published 06/15.

Akamai FASTER FORWARD

# Exhibit 19

# Arnoldo Giammarco

Boyle, Leonard [Leonard.Boyle@ct.gov]
**Sent:** Thursday, March 20, 2014 5:45 PM
**To:** Wishnie, Michael; Thypin-Bermeo, Sam; Jin, Sung

Mike/Sam/Sung:

The relevant State's Attorneys all have weighed in and have agreed that the Division of Criminal Justice does not oppose Mr. Giammarco's pardon application. You may feel free to represent this position to the BOPP.

Best of luck, Len

***Leonard C. Boyle***
Deputy Chief State's Attorney
Office of the Chief State's Attorney
300 Corporate Place
Rocky Hill, CT 06067
Phone: (860) 258-3320
Fax: (860) 258-5801

**CONFIDENTIAL INFORMATION:** The information contained in this e-mail is confidential and protected from general disclosure. If the recipient or the reader of this e-mail is not the intended recipient, or person responsible to receive this e-mail, you are requested to delete this e-mail immediately and do not disseminate or distribute or copy. If you have received this e-mail by mistake, please notify us immediately by replying to the message so that we can take appropriate action immediately and see to it that this mistake is rectified.

# Exhibit B

# DECLARATION OF PAOLINA MILARDO

Pursuant to 28 U.S.C. § 1746, I, Paolina Milardo, declare as follows:

1. My true and correct name is Paolina "Paula" Milardo née Emanuele.

2. I was born in Melilli, Italy on March 9, 1950. I am now 66 years old.

3. My current address is Via Mameli #1, Melilli PR SR 96010, Italia.

4. I am making this declaration in support of my petition for habeas corpus *ad testificandum.*

**Immigration History and Family Life**

5. My family and I legally immigrated to the United States from Melilli, Sicily in 1961, when I was 11 years old. We settled in Middletown, Connecticut.

6. I grew up and went to school in Middletown. After school, I started my career there as a hairdresser.

7. In 1969, I met Anthony "Tony" Milardo, a U.S. Army veteran who served in the Vietnam War. Tony had also moved from Melilli to Middletown with his family when he was a child.

8. Tony had been honorably discharged earlier that year and had obtained his U.S. citizenship after returning from the war. After he gained his citizenship, he took a job with the United States Postal Service, where he stayed until his retirement in 2006.

9. On April 11, 1970, Tony and I married and I changed my last name from Emanuele to Milardo.

10. Six months into our marriage, Tony began to exhibit symptoms of what we now know as Post-Traumatic Stress Disorder (PTSD). He suffered from nightmares, flashbacks, and severe mood swings, all caused by what he had witnessed during his service in Vietnam.

11.     In 1972, our first child, Angela, was born. We had two more children over the next few years, Salvatore and Lucinda. Tony and I chose to raise them in Middletown, where we had grown up.

12.     While we raised our children, my husband continued to suffer from his undiagnosed PTSD.  I took on the primary responsibility of caring for our children, even while I dealt with my own medical issues, including a hysterectomy after the birth of my youngest child in 1976 and being diagnosed with phlebitis, an inflammatory disease. I also contracted Hepatitis B from a blood transfusion I received during my hysterectomy.

13.     Tony's PTSD grew so severe that, between 1987 and 1991, we separated and I moved to Italy with my children and stayed with my sister there. I returned to Middletown in 1991 after my husband promised he would seek treatment for his PTSD.

14.     Tony and I now have six grandchildren: Vincent, Antonio, Ava, Jenna, Mikayla, and Daniel. Tony, my children, and my grandchildren, are all U.S. citizens and all live in the United States.

**Arrest and Conviction**

15.     In 2006, Tony was diagnosed with stage III colon cancer. He underwent surgery and had seventeen centimeters of his colon removed. He also went through six months of chemotherapy. He retired from his job with the U.S. Postal Service, and we lost our family's income.

16.     Tony sought treatment from a private doctor in 2006, but transferred his care to the U.S. Department of Veterans Affairs (VA) in 2007. While receiving treatment at the VA, Tony was finally diagnosed with PTSD. He had previously sought treatment at the VA for the

psychological consequences of his service in Vietnam, but he had been denied. We were relieved that he was finally receiving the care he needed.

17. Tony's cancer, along with its resultant financial strain, left us both anxious and stressed. Tony began gambling at casinos, and I accompanied him as a way of getting my mind off our troubles. I thought I was in control, but before I knew it, I started losing badly. I thought I could win our money back, but I was wrong.

18. To pay off our debts, I began to trick a friend of mine into giving me money. I called her on the phone and pretended to be a debt collector. I knew it was wrong, but I was desperate.

19. The police eventually confronted me. I did not ask for a lawyer, but confessed my guilt and apologized.

20. On September 1, 2009, the police arrested and charged me with larceny in the first degree for tricking my friend into giving me money to pay off our debts. This was the first and only time I had ever been arrested for or charged with a crime.

21. I hired John D. Maxwell, Esq. to represent me. He told me to plead guilty to larceny in the first degree. He never explained that I would suffer any serious immigration consequences as a result of my plea. On his advice, I pled guilty.

22. After my arrest, I enrolled in counseling with the Connecticut Department of Mental Health and Addiction Services ("Addiction Services"). My counselors determined that I met the diagnostic criteria for Pathological Gambling. I attended therapy sessions twice a week for twelve weeks. I was committed to getting better. At the end of the treatment, Addiction Services concluded that my chances of not gambling again were "quite good."

23. Today, after working with my Addiction Services counselors, as well as my religious counselors in Connecticut and Melilli, I no longer feel any urge to gamble.

24. After my arrest, and soon after I pled guilty, I paid back the money I had tricked my friend into giving me.

25. The court sentenced me to 10 years in jail, execution suspended after 10 months, and 5 years of probation.

26. I began my sentence on May 18, 2010 and served it in accordance with Connecticut law.

**Deportation**

27. In the summer of 2010, while I was serving my sentence at the York Correctional Institution, Immigration and Customs Enforcement (ICE) visited me. It was only then—after I had pled guilty and was already serving my sentence—that I learned that I had pled guilty to an "aggravated felony," which meant that I would almost certainly be deported.

28. I couldn't believe it. My attorney, Mr. Maxwell, had not warned me that my guilty plea would have immigration consequences. He never told me that I would be almost certainly guaranteeing my permanent exile from my home, family, and community.

29. On May 25, 2011, after I was released from prison, ICE arrived at my home and arrested me. I was detained in the Bristol County Jail in Massachusetts until my deportation from the United States on October 19, 2011.

**Life in Italy After Deportation**

30. I have resided in Melilli, Italy since my deportation from the United States.

31. In Italy, I am struggling without my family. I miss my children, my grandchildren, and my husband. I have only been able to see two of my three children (each

once) since my deportation, and I must spend over half the year away from my husband, alone in Italy.

32. I suffer from chronic hepatitis B, phlebitis (an inflammatory disease), a pain disorder, and I have recently discovered lumps in my breast. I am afraid that something will happen to me, so far away from my family.

33. My husband also suffers from many health issues in addition to his remitted colon cancer, including hypertension, Type II diabetes, and neuropathy. The VA has rated him as disabled.

34. I am heartbroken that I am unable to care for and be with my family. Months after I was deported, my daughter Lucinda was diagnosed with breast cancer. I fear that another member of my family will face a health crisis while we are forcibly separated.

35. I do not want to live my last years an ocean away from my home, my family, and my community. Connecticut is my home, and I hope to reunite with my family there, even if only for a short time.

**State Habeas Proceedings**

36. On May 21, 2015, I filed a state petition for writ of habeas corpus challenging the constitutional validity of my plea to larceny in the first degree based on the Supreme Court case *Padilla v. Kentucky*, 559 U.S. 356 (2010).

37. In my petition, I allege that I was denied my Sixth Amendment right to effective assistance of counsel because my criminal defense attorney did not warn me of the obvious immigration consequences of my guilty plea.

38. The trial is scheduled for April 18 and 20, 2016.

**Subpoena to Testify from the Connecticut Legislature**

39. On February 26, 2016, I received a Subpoena ad Testificandum from the Connecticut legislature that commanded my presence and testimony at a legislative hearing.

40. I understand that the Judiciary Committee of the Connecticut General Assembly is holding a hearing on April 4, 2016 to investigate the immigration consequences of Connecticut criminal convictions on Connecticut residents and to evaluate the appropriateness of granting legislative pardons. I understand that the Committee wants to ask me about my life, my experience with deportation, and the remorse I feel for the crime I committed.

**Difficulties with Internet Coverage**

41. Internet coverage in Melilli, where I currently reside, is not reliable. The town often experiences outages that can last for several hours, days, or even several weeks. I have not had broadband Internet access for nearly one month.

42. My nephew, Sebastiano, taught me to set up a hotspot with my phone so I can still use the Internet when there is an outage in the town. However, coverage is very poor even with the hotspot. I ran a reliability test to evaluate my Internet connection when I am using the hotspot with my phone. The test is from pingtest.net and it gave my connection a grade of "D" which is defined as: "Concerning. Most online applications will not perform well but should function in some capacity. Test other servers to confirm."

43. My Internet problems have made it difficult for me to communicate with my family, my attorneys, and others.

44. For example, on March 2, 2016, my attorneys scheduled an interview for me with a reporter from the Associated Press. However, half an hour before our interview was to take place over Skype, my Internet unexpectedly stopped working. It took me an hour to set up a working Internet hotspot with my phone. While I was able to interview with the reporter an hour

late, this experience has left me nervous that I will experience technological difficulties during the April 4 hearing, thereby preventing me from testifying before the Judiciary Committee.

**Humanitarian Parole Applications**

45. On February 29, 2016, I applied for humanitarian parole, requesting that the Department of Homeland Security allow me back into the country for a brief period of time in order to comply with the subpoena and testify before the Connecticut Judiciary Committee.

46. That application was denied on March 9, 2016.

47. I had already applied for humanitarian parole once before, on October 22, 2013, citing my husband's and my own health problems as reasons that I should be granted parole. That application was denied on November 20, 2013.

48. On March 6, 2016, I applied for travel authorization with U.S. Customs and Border Protection's Electronic System for Travel Authorization so that I would be ready to travel to the United States if either my humanitarian parole application or my petition for habeas corpus *ad testificandum* was granted. My travel authorization was denied.

**Application for Waiver of Inadmissibility and Non-immigrant B-visa**

49. On March 10, 2016, I began an application for a non-immigrant waiver of inadmissibility pursuant to INA § 212(d)(3) as well as permission to re-enter the U.S. after removal under INA § 212(a)(9)(A)(ii).

50. I electronically submitted Form DS-160 to the Department of State website on March 10, 2016. My DS-160 number is AA005RX28U.

51. I scheduled a consular appointment for March 17, 2016 at the Naples consulate and I plan to bring a package of documents relating to my application for a non-immigrant B-visa to this appointment.

52. If I am granted parole, a non-immigrant B-visa, or some other form of relief that would allow me to testify in person before the Judiciary Committee and at my state habeas trial, I would consent to electronic monitoring and any other conditions of supervision that the Department of Homeland Security deems necessary.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

3-12-2016
Date

Paolina Milardo
Signature

# Exhibit C

**DECLARATION OF ARNOLD GIAMMARCO**

Pursuant to 28 U.S.C. § 1746, I, Arnold Giammarco, declare as follows:

1. My true and correct name is Arnaldo "Arnold" Giammarco. I am over the age of eighteen and I understand the meaning of an oath.

2. My current address is Via Sulmona 20, 67030 Campo Di Fano AQ, Italy.

3. I am making this declaration in support of my petition for habeas corpus *ad testificandum.*

**Personal History**

4. My family and I legally immigrated to the United States from Italy in 1960, when I was 4 years old. We settled in Hartford, Connecticut.

5. I grew up and went to school in the South End neighborhood of Hartford, Connecticut. We lived at 204 George Street in a single-family home. I attended Bulkeley High School and participated in numerous activities like football and wrestling.

6. Inspired by the stories my grandfather Pietro Giammarco told me about his service in the U.S. Army during World War 1, I joined the U.S. Army in 1976. I was trained in field artillery in Oklahoma and was subsequently stationed overseas. I became a guard for the North Atlantic Treaty Organization (NATO).

7. I was honorably discharged from the U.S. Army and joined the National Guard in Hartford in 1980. I served in the National Guard from 1980 until 1983, earning the rank of sergeant (E-5).

8. While serving in the National Guard, I decided to apply to become a naturalized U.S. citizen. In November of 1981, with the help of my commanding officer and my first

sergeant, I filled out three different INS forms to apply for naturalization. My application remains pending.

9. During that time, my sisters and I ran a small grocery store around the corner from our house called Giammarco's Market. I worked at the butcher's counter and they worked at the cash register.

10. I married my first wife in 1988, and we divorced in 1993. Ending my first marriage was very difficult for me. I became depressed and began to use drugs to make myself feel better.

11. At times, I shoplifted to support my drug habit. I received 31 convictions: five for failure to appear, three for possession of narcotics, one for writing a bad check, thirteen for sixth degree larceny, two for fifth degree larceny, one for fourth degree larceny, four for probation violation, and two for possessing drug paraphernalia.

12. Over these ten years, I spent twenty months in prison: four months in 1997, two months in 1999, one month in 2000, 10 days in 2004 and 2005, four months in 2007, and eight months in 2008.

13. In 2007, after my last arrest, I decided to turn my life around. I enrolled in a rehabilitation program and married my longtime girlfriend, Sharon, on the fourth of July 2010. I worked and she went to school. I started a job at a McDonald's in Groton and was promoted to nighttime manager. Together, we cared for our daughter, born November 12, 2008.

14. On May 14, 2011, armed Immigration and Enforcement Officers arrived at my house and ordered me to lie down on the ground. They arrested me and placed me in deportation proceedings. I was detained at Bristol County Jail, where I regularly attended bible study and parenting classes and volunteered as a unit worker.

15. The Chief of Immigration Services described me as a model detainee.

16. I could not afford to appeal the Board of Immigration Appeals' decision without depleting my daughter's college savings or asking my elderly mother to contribute more than the tens of thousands of dollars that she had already withdrawn from her retirement and Social Security accounts to pay my legal fees.

17. I was deported to Italy in 2012. Since then, I have lived in a small, economically depressed town outside of Rome. I speak only rudimentary Italian and feel ostracized from the community. Even though I have lived in Italy for about three and a half years, many people—including some of my relatives—refuse to even talk to me because they think that, because I was deported, I must be a violent criminal. I remain separated from my wife, daughter, and elderly parents, all of whom continue to reside in the United States.

18. On May 26, 2015, I unsuccessfully applied for humanitarian parole in anticipation of a Connecticut Board of Pardons and Paroles Pardon Application that I had submitted.

19. In the spring of 2015, Connecticut Rep. Hennessy introduced House Joint Resolution No. 46, "Resolution Pardoning Former Sergeant Arnaldo Giammarco," in the Connecticut General Assembly's Committee on Veterans' Affairs. The Resolution did not leave the Committee.

20. Rep. Hennessy, Co-Chair of the Connecticut General Assembly's Committee on Veterans' Affairs, issued a letter invitation and asked me to attend a potential hearing on the resolution.

21. On February 5, 2015, I applied for humanitarian parole in response to the letter invitation and it was denied.

22. On January 27, 2016, I submitted a humanitarian parole application to attend my father's funeral in Connecticut. This application was denied as well.

**Connecticut Legislature Demanded my Presence.**

23. On February 25, 2016, Rep. Tong and Sen. Coleman, Co-Chairs of the Connecticut General Assembly's Judiciary Committee, issued a Subpoena ad Testificandum commanding my presence and testimony at a legislative hearing on April 4, 2016.

24. I understand that the Judiciary Committee of the Connecticut General Assembly is holding a hearing on April 4, 2016 to investigate the immigration consequences of Connecticut criminal convictions on Connecticut residents and to evaluate the appropriateness of granting legislative pardons. I understand that the Committee wants to ask me about my life, my experience with deportation, and the remorse I feel for the crime I committed.

25. I cannot express myself fully over a video-conferencing system.

26. Internet coverage in Campo Di Fano, where I currently reside, is not reliable.

27. My Internet connection cannot properly support video conferencing. Calls unexpectedly end and I must restart my Internet to reconnect the call.

28. This happened on March 10, 2016 when I was speaking with Sam Thypin-Bermeo. It also happens often when I speak with my wife and daughter.

29. My picture is granular and it often freezes. I worry that I would be unable to meaningfully testify by videoconference at the legislative hearing.

**Humanitarian Parole Application**

30. On February 29, 2016, I applied for humanitarian parole, requesting that the Department of Homeland Security allow me back into the country for a brief period of time in order to comply with the subpoena and testify before the Connecticut Judiciary Committee.

32. On March 6, 2016, I applied for travel authorization with U.S. Customs and Border Protection's Electronic System for Travel Authorization so that I would be ready to travel to the United States if my humanitarian parole application is granted. My travel authorization was denied.

**Application for Waiver of Inadmissibility and Non-immigrant B-visa**

33. I electronically submitted Form DS-160 to the Department of State website on March 11, 2016. My DS-160 number is AA005S49XM.

34. I scheduled a consular appointment for March 17, 2016 at the Naples consulate and I plan to bring a package of documents relating to my application for a non-immigrant B-visa to this appointment.

35. If I am granted parole, a non-immigrant B-visa, or some other form of relief that would allow me to testify in person before the Judiciary Committee, I would consent to electronic monitoring and any other conditions of supervision that the Department of Homeland Security deems necessary.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

03/13/2016 Date Executed

Arnaldo Giammarco

Pizza ITALY Location