**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **PAOLINA MILARDO AND**<br>**ARNALDO GIAMMARCO**<br><br>                    **Petitioners,**<br><br>        **vs.**<br><br><br>**R.GIL KERLIKOWSKE, Commissioner,**<br>**U.S. Custom and Border Protection, et**<br>**al.,**<br>                    **Respondents.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)    **Case No. 3:16-mc-00099-VLB**<br>)<br>)<br>)<br>)<br>)<br>) |

_____

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**
**EMERGENCY PETITION FOR WRITS OF HABEAS CORPUS AD TESTIFICANDUM**

## TABLE OF CONTENTS

I.   INTRODUCTION…………………………………………………………………….1

II.  STATEMENT OF ISSUES TO BE RULED ON BY THE COURT…… .………………3

III. STATEMENT OF RELEVANT FACTS…………………………………...……………3

    A.  Petitioner Milardo………………………………………………….………………4

    B.  Petitioner Giammarco……………………..…………………….……………..5

    C.  Petitioner's Applications for Discretionary Parole,
        Tourist Visas and Waivers of  Inadmissibility…………………………...6

    D.  The State Legislative Subpoenas Ad Testificandum………………...…..7

IV. STANDARD OF REVIEW………………………………………...........……………8

    A.  Motion to Dismiss for Lack of Subject Matter Jurisdiction…………........8

    B.  Motion To Dismiss for Failure to State a Claim……………………..........9

V.   ARGUMENT……………………………………………………………………….10

    A.  The Court Lacks Habeas Jurisdiction Because Petitioners are not in
        the Custody or Control of Respondents…………………………………10

    B.  Petitioner's Requests Constitute Impermissible Collateral Challenges
        To Their Removal Orders…………………………………………………..16

    C.  This Court Lacks Jurisdiction to Order the Executive Branch to
        Issue a Visa, Admit or Parole Aliens into the United States………………19

    D.  Petitioners Cannot Rely on a State Legislative Subpeona
        To circumvent Federal Immigration Law…………………………………...22

    E.  Petitioners' Testimony is Not Necessary, a Predicate Required by
        28 U.S.C. § 2241 (c)(5)……………………………………………………24

CONCLUSION……………………………………………………….......................27

CERTIFICATE OF SERVICE

i

# TABLE OF AUTHORITIES

## Cases

*American Academy of Religion v. Napolitano*,
   573 F.3d 115 (2d Cir. 2009)......................................................................... 22

*Arizona* v. *United States*,
   132 S. Ct. 2492 (2012) .......................................................................... 20, 23

*Aurecchione v. Schoolman Transp. Sys., Inc.*,
   426 F.3d 635 (2d Cir. 2005)....................................................................... 8, 9

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................................... 9

*Bustamante v. Mukasey*,
   531 F.3d 1059 (9th Cir. 2008)........................................................................ 20

*Chamber of Commerce v. Whiting*,
   131 S. Ct. 1968 (2011) ................................................................................... 24

*Conley v. Gibson*,
   355 U.S. 41 (1957) ............................................................................................ 9

*Crosby v. Nat'l Foreign Trade Council*,
   530 US 363 (2000) .......................................................................................... 22

*DeCanas v. Bica*,
   424 U.S. 351 (1976) ...................................................................................... 24

*Delgado v. Quarantillo*,
   643 F.3d 52 (2d Cir. 2011)............................................................................. 18

*Exchange Nat. Bank of Chicago v. Touche Ross & Co.*,
   544 F.2d 1126 (2d Cir. 1976)…………………………………………………..8

*Fiallo* v. *Bell*,
   430 U.S. 787 (1977) .................................................................. ……….20

*Global Network Communication, Inc. v. City of New York*,
   458 F.3d 150 (2d Cir. 2006)………………………………………………….9

*Hensley v. Municipal Court*,
   411 U.S. 345 (1973) .................................................................................... 15

*Hillsborough County, Florida v. Automated Medical Labs.*, Inc.,
    471 U.S. 707 (1985) ................................................................. 23

*Hines v. Davidowitz*,
    312 U.S. 52 (1941) ................................................................... 23

*Jama v. ICE*,
    543 U.S. 335 (2005) ................................................................. 17

*Jones v. Cunningham*,
    371 U.S. 236 (1963) ................................................................. 15

*Jones v. Rash Packing Co.*,
    430 U.S. 519 (1977) ................................................................. 23

*Kerry v. Din*,
    135 S. Ct. 2128 (2015) ............................................................. 15

*Kiyemba v. United States*,
    555 F.3d 1022 .......................................................................... 21

*Kleindienst v. Mandel*,
    408 U.S. 753 (1953) ........................................................... 15, 21

*Kumarasamy v. Attorney General*,
    453 F.3d 169 (3d Cir. 2006)…………………………….....................11

*Land v. Dollar*,
    330 U.S. 731 (1947)……………………………………….......................8

*Lem Moon Sing v. United States*,
    158 U.S. 538 (1895)………………………………………………………...20

*Lok v. INS*,
    681 F. 2d 107 (2d Cir. 1982) .................................................... 13

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000) ...................................................... 8

*Matter of Lok*,
    18 I. & N. Dec. 101 (B.I.A. 1981) ............................................. 13

*Miranda v. Reno*,
    238 F.3d 1156 (9th Cir. 2001) ...................................... 10, 11, 12

*Noel v. Chapman,*
   508 F.2d 1023 ................................................................................. 15, 21

*Patel v. U.S. Attorney General,*
   334 F.3d 1259 (11th Cir. 2003).......................................................... 11

*Portillo v. Bharara,*
   527 F. App'x 48 (2d Cir. 2013) ......................................................... 14

*Rice v. Santa Fe Elevator Corp.,*
   331 U.S. 218 (1947) ........................................................................... 23

*Rivas-Melendrez v. Napolitano,*
   689 F.3d 732 (7th Cir. 2012).............................................................. 11

*Russo v. U.S. Immigration Comm'r,*
   342 F.2d 42 (1st Cir. 1965) ................................................................ 11

*Samirah v. Holder,*
   627 F.3d 652 (7th Cir.2010)............................................................... 28

*Samuels v. Air Transport Local 504,*
   992 F.2d 12 (2d Cir. 1993) ................................................................... 9

*Scheuer v. Rhodes,*
   416 U.S. 232 (1974) ............................................................................. 9

*Shaughnessy v. United States ex rel. Mezei,*
   345 U.S. 206 (1953) ........................................................................... 15

*Smith v. U.S. Customs and Border Protection,*
   741 F.3d 1016  (9th Cir. 2014)............................................................ 11

*Sutherland v. Holder,*
   769 F.3d 144 (2nd Cir. 2014).............................................................. 25

*Swarthout v. Cooke,*
   562 U.S. 216, 131 S.Ct. 859, 178 L.Ed.2d 732 (2011)............................ 15

*Thomas v. O'Brien,*
   2011 WL 5452012 (N.D.N.Y. Nov. 8, 2011) ....................................... 12

*Thomson v. Gaskill,*
   315 U.S. 442 (1942) ............................................................................. 8

***United States v. Larkin,***
    **978 F.2d 964 (7th Cir. 1992)** ............................................................................................ **12**

***United States v. Salim,***
    **855 F.2d 944 (2d Cir. 1988)** ............................................................................................ **25**

***United States. v. Cruz-Jiminez,***
    **977 F.2d 95 (3d Cir. 1992)** ............................................................................................ **12**

***Wan Shih Hsieh v. Kiley,***
    **569 F.3d 1179 (2d Cir. 1978)** ............................................................................................ **22**

***York v. Ass'n of Bar of City of New York,***
    **286 F.3d 122 (2d Cir. 2002)** ............................................................................................ **9**

## **Regulations**

**8 C.F.R. § 1.2** ........................................................................................... 2

**8 C.F.R. § 212.2(a)** ................................................................................. 6

**8 C.F.R. § 212.5(f)** .................................................................................. 6

**8 C.F.R. § 217.5(a)** ................................................................................. 6

**8 C.F.R. § 217.5(f)(2)** ............................................................................. 6

**8 C.F.R. § 217.5(f)(3)** ............................................................................. 6

## **Statutes**

**8 U.S.C. § 1101** ...................................................................................... 19

**8 U.S.C. § 1101(a)(13)(B)** .....................................................................19

**8 U.S.C. § 1182(a)(2)(A)** ....................................................................... 13

**8 U.S.C. § 1182(a)(9)(A)** ....................................................................... 13, 19

**8 U.S.C. § 1182(a)(9)(A)(ii)** ................................................................. 6, 17

**8 U.S.C. § 1182(a)(9)(A)(iii)** ............................................................... 19

**8 U.S.C. § 1182(a)(13)(A)** ..................................................................... 19

**8 U.S.C. § 1182(d)(3)** ............................................................................. 7, 19

**8 U.S.C. § 1182(d)(3)(A)** ....................................................................... 19

**8 U.S.C. § 1182(d)(3)(A)(ii)** ................................................................. 14

**8 U.S.C. § 1182(d)(5)** ............................................................................. 14, 19

**8 U.S.C. § 1182(d)(5)(A)** ....................................................................... 19

**8 U.S.C. § 1187(h)(3)(C)(iv)** ............................................................... 6

**8 U.S.C. § 1225(a)(1)** ............................................................................. 14

**8 U.S.C. § 1225(a)(4)** ............................................................................. 14

8 U.S.C. § 1252 ................................................................................. 10, 14

8 U.S.C. § 1252(a)(2)(B)(ii) ..................................................................... 19

8 U.S.C. § 1252(a)(2)(D) ......................................................................... 17

8 U.S.C. § 1252(a)(5) .............................................................................. 18

8 U.S.C. § 1252(b)(9) .............................................................................. 18

8 U.S.C. § 1252(g) .......................................................................... 2, 16, 17

8 U.S.C. § 1325 ....................................................................................... 13

28 U.S.C. § 1331 ..................................................................................... 10

28 U.S.C. § 2241 ........................................................................... 3, 16, 20

28 U.S.C. § 2241(c) .......................................................................... 10, 12

28 U.S.C. § 2241(c)(5) ................................................................. 10, 12, 24

## Rules

Fed. R. Civ. P. 12(b)(1) ................................................................ 1, passim

Fed. R. Civ. P. 12(b)(6) ................................................................ 1, passim

Fed. R. Civ. P. 12(h)(3) ............................................................................ 9

Fed. R. Civ. P. 8(f) ................................................................................... 8

## Connecticut General Statutes

Conn. Gen. Stat. § 53a-125 ..................................................................... 5

Conn. Gen. Stat. § 53a-125a ................................................................... 5

Conn. Gen. Stat. § 53a-125b ................................................................... 5

Conn. Gen. Stat. § 21a-279a ................................................................... 5

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **PAOLINA MILARDO AND**<br>**ARNALDO GIAMMARCO**<br><br>               **Petitioners,**<br><br>    **vs.**<br><br><br>**R.GIL KERLIKOWSKE, Commissioner,**<br>**U.S. Custom and Border Protection, et**<br>**al.,**<br>               **Respondents.** | }<br>}<br>}<br>}<br>}<br>}<br>}<br>}    **Case No. 3:16-mc-00099-VLB**<br>}<br>}<br>}<br>}<br>}<br>} |

_____

<u>**MEMORANDUM IN SUPPORT OF RESPONSE AND MOTION TO DISMISS**</u>
<u>**EMERGENCY PETITION FOR WRITS OF HABEAS CORPUS *AD TESTIFICANDUM***</u>

**I.    Introduction**

      Respondents respectfully request that this Court dismiss Paolina Milardo's

and Arnaldo Giammarco's (hereinafter "Petitioners") petition for writs of habeas

corpus *ad testificandum* for lack of subject matter jurisdiction and failure to state

a claim for which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(1), (6).  This

case is governed by  the Immigration and Nationality Act ("INA"), the

comprehensive Federal law framework establishing the means by which aliens

may lawfully enter the United States.  Petitioners are natives and citizens of Italy

who were removed from the United States after being convicted of larceny and,

with respect to Petitioner Giammarco, several other offenses, and who are barred

from returning to the United States because of their removal as individuals who

have committed aggravated felonies.  ECF No. 1 ¶¶ 40, 79.  Petitioners are no

longer lawful permanent residents of the United States, as that status terminated

1

by operation of law when final removal orders were  entered against them (Petitioner Milardo in 2011, and against Petitioner Giammarco in 2012).  ECF No. 1 ¶¶ 39, 79; 8 C.F.R. § 1.2 (status as a lawful permanent resident "terminates upon entry of a final administrative order of exclusion, deportation, or removal").

First, the Court lacks jurisdiction in this matter because Petitioner Milardo and Petitioner Giammarco were lawfully removed from the United States to Italy in 2011 and 2012, respectively, are not in custody in the United States and, as such, are not in federal custody or control – a necessary predicate to a writ of habeas corpus *ad testificandum.*  Additionally, the Court lacks jurisdiction over this matter pursuant to 8 U.S.C. § 1252 (2012), because Petitioners' challenges constitute nothing more than a collateral attack on the consequences arising from the government's decision to execute their unchallenged removal orders – removal orders which Petitioners necessarily concede were lawfully entered and executed, ECF No. 1-2 at 1.  The Supreme Court long has recognized the political branches' broad authority over the decision whether to exclude an alien from the United States.  Therefore, because this Court lacks authority to order the United States to parole unadmitted aliens who may at some future point seek admission into the United States, this Court cannot grant the relief sought by Petitioners.  Furthermore, preemption principles preclude the Connecticut General Assembly from interfering with the federal government's enforcement of federal immigration laws.

Accordingly, Respondents move this Court for an order dismissing this action under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

II.    **STATEMENT OF ISSUES TO BE RULED ON BY THE COURT**

1.    **Whether this Court lacks jurisdiction under 28 U.S.C. § 2241, where Petitioners are not in the custody or control of Respondents, and Petitioners lack any constraints on their movements not shared by similarly-situated individuals who have not been granted visas to seek admission into the United States.**

2.    **Where Petitioners raise claims arising from the execution of their removal orders, whether the Petition constitutes an impermissible collateral attack on those removal orders specifically barred by the INA?**

3.    **Whether this Court lacks jurisdiction to order the relief sought by Petitioners:  ordering the United States to admit or parole aliens into the United States?**

4.    **Whether the comprehensive federal immigration laws enacted by Congress pre-empt efforts by a state legislature to compel the entry into the United States of aliens residing abroad and lacking any valid U.S. immigration status through the issuance of state legislative subpoenas to them?**

III.    **STATEMENT OF RELEVANT FACTS**

**Paolina Milardo and Arnaldo Giammarco (hereinafter "Petitioners") are natives and citizens of Italy who were removed from the United States in October 2011 and November 2012, respectively, as aggravated felons.  ECF No. 1 ¶¶ 40, 81.**

A.    **Petitioner Milardo**

On January 26, 2010, Petitioner Milardo pled guilty to first-degree larceny for a criminal scheme where she frightened, manipulated and defrauded an elderly ninety-two (92) year old grandmother out of approximately $33,900 that the victim had saved for her grandchildren.  *See* Exh. 1, *State of Conn. v. Paolina Milardo*, No. MMXCR090188622T, Sentencing Transcript, at 1, 2 5, 6.  Her scheme involved disguising her voice and calling the victim – who had suffered the loss of her own daughter and regarded Petitioner Milardo as a pseudo-daughter – seeking collection of fictitiously-owed medical debts.  Exh. 1 at 5.  Only when police traced her calls and caught her in the act did Petitioner Milardo admit her guilt.  Exh. 1 at 9.  Although Petitioner Milardo subsequently made restitution to her victim in the amount of $25,000, the emotional betrayal, loss of trust, and everlasting impact on the victim, in her final golden years, and on the relationships among the victim's family members, was devastating.  Exh. 1 at 11.  As a result of her guilty plea, Petitioner Milardo was sentenced to ten years of incarceration, with nine years and two months suspended, followed by five years of probation.  Exh. 1 at 28.  She was released from prison on October 18, 2010, and removed from the United States to Italy on October 19, 2011, where she has since resided.

Petitioner Milardo seeks entry into the United States for two purposes:  to testify in person before the Connecticut General Assembly concerning "the impact of Connecticut criminal convictions . . . on immigrant households affected by deportation or the threat of deportation," and to attend her state habeas trial,

set for April 18 and 20, 2016, in an attempt to challenge her criminal conviction.
ECF No. 1-2 at 5; *See Milardo v. State of Connecticut*, Dkt. No. TSR-cv-15 400 72
17.  Petitioner Milardo claims her in-person testimony is necessary because
"[i]nternet problems make it difficult for her to communicate over
videoconferencing."  ECF No. 1 ¶ 49.  She currently resides in Italy.  ECF No. 1 ¶ 2.

### B.    Petitioner Giammarco

Petitioner Giammarco has a criminal record spanning ten years, including
several convictions for larceny.   Exh.2, ICE Parole Denial Letter, at 3.  On January
21, 1997, Giammarco was convicted of Larceny in the 5th degree, in violation of
Conn. Gen. Stat. § 53a-125a.  On March 3, 1997, Giammarco was convicted of
Larceny in the 6th degree, in violation of Conn. Gen. Stat. § 53a-125b, Connecticut
Superior Court (Meriden).  On November 5, 2004, Giammarco was convicted of
Possession of Narcotics (Cocaine), in violation of Conn. Gen. Stat. § 21a-
279a.  On January 23, 2007, Giammarco was convicted of Larceny in the 4th
degree in violation of Conn. Gen. Stat. § 53a-125, for which he was sentenced to
one year's imprisonment, execution suspended after 30 days.  Exh. 2 at 2.
Altogether, Petitioner Giammarco has been convicted five times for failing to
appear, and four times for violating probation.  Exh. 2 at 3.  On May 14, 2011, ICE
agents arrested and detained Petitioner Giammarco based on his criminal record
and placed him in removal proceedings.  ECF No. 1 ¶ 76.  On May 15, 2012, an
Immigration Judge denied his request for cancellation of removal and ordered
Petitioner Giammarco removed from the United States.  ECF No. 1 ¶ 79.  After the
Board of Immigration Appeals affirmed his removal order, Petitioner Giammarco

was removed to Italy in November 2012.  ECF No. 1 ¶ 81.  Petitioner Giammarco

claims his in-person testimony is necessary because he "cannot express himself

fully over videoconferencing systems" and "the internet coverage in Campo di

Fano, where he resides, is not reliable."  ECF No. 1 ¶ 84.

      C.    <u>Petitioners' Applications for Discretionary Parole, Tourist Visas and
Waivers of Inadmissibility</u>

Petitioners were removed from the United States as aggravated felons.  As

such, Petitioners are subject to statutory bars on reentry to the United States, and

can only seek to re-enter the United States after twenty years—in 2031 for

Petitioner Milardo and in 2032 for Petitioner Giammarco.  *See* 8 U.S.C.

§ 1182(a)(9)(A)(ii); 8 C.F.R. § 212.2(a).  Despite this bar on reentry, on February 29,

2016, Petitioners applied to U.S. Immigration and Customs Enforcement ("ICE"),

seeking a discretionary advance parole document, based on claimed

humanitarian and public benefit grounds, which ICE denied on March 9, 2016.

ECF No. 1 ¶ 14, 8 C.F.R. § 212.5(f).  On March 6, 2016, Petitioners applied to the

U.S. Customs and Border Protection's ("CBP") Electronic System for Travel

Authorization ("ESTA"), seeking authorization to travel into the United States,

which CBP denied the same day.[1]  Thereafter, on March 11, 2016, following the

discretionary denial of Petitioners' parole applications, Petitioners applied for B

nonimmigrant tourist visas and were refused by the consular officer at the U.S.

---

[1] ESTA is a system that permits certain nonimmigrant aliens intending to travel to
the United States under the Visa Waiver Program (VWP) to seek travel
authorization electronically.  *See* 8 C.F.R. § 217.5(a).  A determination under ESTA
that an alien is not eligible to travel to the United States under the VWP does not
prevent the alien from seeking a visa to travel to the United States.  *Id.*
§ 217.5(f)(2).  ESTA determinations are not subject to judicial review.
8 U.S.C. § 1187(h)(3)(C)(iv); 8 C.F.R. § 217.5(f)(3).

consulate in Naples.  ECF No. 1 ¶ 16.  As part of their visa application process, on March 17, 2016, Petitioner Milardo applied for a waiver of inadmissibility.  The consular officer recommended granting the waiver to CBP and that waiver request remains pending with that agency.  ECF No. 1 ¶ 16; *see* 8 U.S.C. § 1182(d)(3).

      D.      <u>The State Legislative Subpoenas *Ad Testificandum*</u>

On February 25, 2016, Representative William Tong and Senator Eric Coleman, Co-Chairs of the Judiciary Committee of the Connecticut General Assembly, issued state legislative subpoenas *ad testificandum* commanding Petitioners' appearance in Room 2C of the Legislative Office Building in Hartford, Connecticut, at 1:00 p.m. on April 4, 2016.  ECF No. 1 ECF No. 1 ¶¶ 10, 11.  The subpoenas, issued pursuant to 2-46 of the Connecticut General Statutes, seek Petitioners' in-person testimony concerning "the impact of Connecticut criminal convictions . . . on immigrant households affected by deportation or the threat of deportation."   ECF No. 1 ¶¶ 12; ECF No. 1, Ex. A.  The subpoenas were served on Petitioners' counsel on February 26, 2016,[2] requesting Petitioners to appear personally "so that members of the Judiciary Committee could ask them questions and assess their credibility and remorse for their convictions."  ECF No. 1 ¶ 13.

---

[2] Petitioners' Emergency Petition was not filed with this Court until March 16, 2016.

## IV.    STANDARD OF REVIEW

### A.    Motion to Dismiss for Lack of Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) permits a party to challenge, through motion, whether a court has subject matter jurisdiction.  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *accord Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). Once subject matter jurisdiction is challenged, the burden rests on the party asserting jurisdiction.    *Thomson v. Gaskill*, 315 U.S. 442 (1942).    Unlike a motion to dismiss under Fed. R. Civ. P. 12(b)(6), however, dismissals for lack of subject matter jurisdiction are not predicated on the merits of the claim. *Exchange Nat. Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1130-31 (2d Cir. 1976), *cert. denied*, 469 U.S. 884 (1984).

In a motion to dismiss for lack of subject matter jurisdiction, the court construes the  complaint broadly and liberally in conformity with the principle set out in Fed. R. Civ. P. 8(f),  "but argumentative (as opposed to reasonable) inferences favorable to the pleader will not be drawn."  5A C. Wright & A. Miller, *Federal Practice and Procedure*, § 1350, at 218-219.  The  mover and the pleader may use affidavits and other materials beyond the pleadings themselves in support of or in opposition to a challenge to subject matter jurisdiction.    *Land v. Dollar*, 330 U.S. 731 (1947); *Makarova*, 201 F.3d at 113. "The plaintiff bears the burden of proving subject matter jurisdiction by a

preponderance of the evidence." *Aurecchione*, 426 F.3d at 638 (citation omitted). Absent jurisdiction conferred by statute or the Constitution, courts lack the power to adjudicate claims and must dismiss the action. *See also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

### B.    Motion to Dismiss for Failure to State a Claim

When considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. *See Global Network Communication, Inc. v. City of New York*, 458 F.3d 150, 154 (2d Cir. 2006). The court considers whether the plaintiff has stated a claim upon which relief may be granted. "'[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *York v. Ass'n of Bar of City of New York*, 286 F.3d 122, 125 (2d Cir. 2002), *cert. denied*, 537 U.S. 1089 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The Court will dismiss a claim if a plaintiff's complaint fails to plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (clarifying the standard from *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). In its review of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transport Local 504*, 992 F.2d 12, 15 (2d Cir. 1993).

V.    **ARGUMENT**

Petitioners allege jurisdiction over this action under 28 U.S.C. §§ 1331, 2241(c)(5), and common law.  ECF No. 1 ¶¶ 2, 86.  However, jurisdiction does not exist under any of these provisions.  First, the Court lacks subject-matter jurisdiction over the Petition because none of the Petitioners are in federal custody or control.  *See* 28 U.S.C. § 2241(c).  Second, 8 U.S.C. § 1252 bars what is, at base, Petitioners' challenge to the consequences arising from the government's decision to execute their removal orders.

Even assuming, without conceding, the Court's subject-matter jurisdiction in this case, the Court cannot grant the relief Petitioners seek, as courts lack the authority to order the political branches to parole aliens who may at some future point seek admission into the United States.  Moreover, Petitioners' claims regarding the interests of the State of Connecticut are preempted by federal law.  Accordingly, the Petition should be dismissed for failure to state a claim upon which relief may be granted.

A.    **The Court Lacks Habeas Jurisdiction Because Petitioners are not in the Custody or Control of Respondents.**

This Court lacks jurisdiction under section 2241, because neither Petitioner is in the custody of DHS, or the Department of Justice ("DOJ").  To the contrary, Petitioners were lawfully removed pursuant to a valid removal order, and are now residing in their native Italy.  ECF No. 1 ¶¶ 17, 40, 44, 50, 81, 83.  An alien who has been lawfully removed from the United States and is currently inadmissible is not "in custody" for habeas purposes.  *Miranda v. Reno*, 238 F.3d 1156 (9th Cir. 2001) ("Immigrants who have already been removed . . . do not satisfy the 'in custody'

10

requirement of habeas corpus jurisdiction."); *Russo v. U.S. Immigration Comm'r*, 342 F.2d 42 (1st Cir. 1965) ("[W]e must note that the district court lacked subject-matter jurisdiction altogether of the present proceeding.  The petition could not be reconstructed as one for habeas corpus ... because petitioner has been deported and is not in custody."); *Kumarasamy v. Attorney General*, 453 F.3d 169, 173 (3d Cir. 2006) ("A petitioner who has been removed from the country is not subject to restraints not shared by the public generally that significantly confine and restrain his freedom.  He is subject to no greater restraint than any other non-citizen living outside American borders." (internal quotations and citation omitted); *Patel v. U.S. Attorney General*, 334 F.3d 1259, 1263 (11th Cir. 2003) ("While [the alien's] removal from the United States may limit his opportunities to re-enter this country, this does not constitute a severe restraint on his individual liberty . . . [as] the United States is in no position to restrain his liberty."); *Rivas-Melendrez v. Napolitano*, 689 F.3d 732, 739 (7th Cir. 2012) ("[W]hile [the alien's] family connections and many years of lawful residence make his removal a particularly harsh remedy, they have no bearing on the degree of control the United States now exercises over him (none), which is the relevant question for the 'in custody' requirement." (emphasis in original)); *Smith v. U.S. Customs and Border Protection*, 741 F.3d 1016, 1019  (9th Cir. 2014) ("[A] non-citizen who has already been removed prior to filing a habeas petition does not satisfy the 'in custody' requirement of habeas corpus jurisdiction." (internal quotations and citation omitted)).

Although Petitioners rely on 8 U.S.C. § 2241(c)(5) as the basis for the Court to assume jurisdiction and compel their own testimony before the Connecticut General Assembly, their argument is unavailing.  First, the necessary predicate under 28 U.S.C. 2241(c) is that the petitioner be "a prisoner."  "Under 28 U.S.C. § 2241(c)(5), a court is empowered to secure the presence of a prisoner through the issuance of a writ of habeas corpus *ad testificandum* when '[i]t is necessary to bring him [or her] into court to testify or for trial.'"  *Thomas v. O'Brien*, Case No: 5:08–cv–0318–DEP, 2011 WL 5452012, at *3 (N.D.N.Y. Nov. 8, 2011).  "Such a writ must be directed to 'the person having control of the person detained[,]' and may be served nationwide, regardless of whether the prisoner is housed in a federal facility or instead is in the custody of a state or local agency."  *Id.*  A prisoner may also apply for a subpoena *ad testificandum* under 28 U.S.C. § 2241(c)(5) to secure the appearance of another state or federal prisoner to testify on his behalf in a federal court.  *See Miranda,* 238 F.3d at 1158 (holding that "Miranda cannot avail himself of habeas corpus jurisdiction because he has already been removed and therefore is no longer 'in custody'") (quoting 28 U.S.C. s. 2241); *United States. v. Cruz-Jiminez*, 977 F.2d 95, 99 (3d Cir. 1992); *Thomas v. O'Brien*, 2011 WL 5452012 (N.D. NY 2011) at *3; *United States v. Larkin*, 978 F.2d 964, 968 (7th Cir. 1992).

Although Petitioners cite cases describing "the practice of issuing habeas corpus *ad testificandum* writs to call prisoners to testify before legislatures," ECF No. 1-2 at 10, these cases are inapposite, as there are no prisoners or detainees here.  Petitioners are Italian citizens residing in their native country.  Contrary to

12

Petitioners' claims, Respondents do not hold Petitioners in custody, and are not restraining Petitioners from testifying before the Connecticut General Assembly. ECF No. 1-2 at 14.  They may do so by whatever technological means will permit Petitioners to provide testimony from their current location.

Petitioners were never U.S. citizens.  Instead, they were accorded the privilege and status of lawful permanent residence and that status has been terminated by operation of law through the removal process.  *See Matter of Lok*, 18 I. & N. Dec. 101 (B.I.A. 1981) (lawful permanent resident status of an alien terminates with the entry of final administrative order), *aff'd, Lok v. INS*, 681 F. 2d 107 (2d Cir. 1982).  After they violated the law, and after the appropriate process determined Petitioners were removable, they were deported - just like many others who commit crimes and victimize U.S. citizens and residents. Respondents have enforced a valid removal order, and their removal as individuals who have committed aggravated felonies bars Petitioner Milardo and Petitioner Giammarco from seeking admission to the United States until 2031 and 2032, respectively.  ECF No. 1-2 at 45; *see* 8 U.S.C. §§ 1182(a)(2)(A); (a)(9)(A).

Petitioners claim that they are in custody because the removal order "hangs a reasonable probability of re-incarceration without a hearing over the petitioner's head;" denies Petitioners entry into the United States; "imposes severe restraints on a petitioner's liberty;" and "imposes restraints that implicate federalism principles."  ECF No. 1-2 at 15.  But Petitioners ignore the fact that they are subject to criminal prosecution and incarceration only if they break the law by re-entering the United States illegally.  *See* 8 U.S.C. § 1325.  Currently,

Petitioners have not actually sought admission to this country but are still in the process of attempting to obtain appropriate travel documents. Thus, an immigration officer has not yet inspected Petitioners to determine, for instance, if they are inadmissible, should be provided a waiver, provided parole at the time that they seek admission or be permitted to withdraw their application for admission. *See* 8 U.S.C. 1225(a)(1)(defining application for admission); 1225(a)(4) (an immigration officer may permit an alien to withdraw); 1182(d)(3)(A)(ii) (outlining the waiver process for an applicant for admission); 1182(d)(5) (parole decisions are made on a case by case basis at the time an alien applies for admission). But, even if Petitioners were determined to be inadmissible and subject to removal proceedings, review of that determination (and any detention) is circumscribed. 8 U.S.C. 1252 (limiting habeas and district court review).

Moreover, Petitioners cannot be taken into custody by the United States at any time unless they first commit the crime of illegal re-entry or attempted illegal re-entry. *Cf. Portillo v. Bharara*, 527 F. App'x 48, 50-51 (2d Cir. 2013) (affirming district court's dismissal of habeas petition filed on behalf of Guatemalan citizen detained in Guatemala by Guatemalan authorities upon an extradition request by the United States where petitioner "did not present clear evidence of substantial United States control over his detention").

That Petitioners may not be permitted to legally enter the United States does not implicate a constitutionally-protected liberty interest, because whatever liberty constraints Petitioners have with respect to their movements are also shared by other aliens who have not been granted visas to seek admission in to

14

the United States.  ECF No. 1-2 at 13-14; *see Jones v. Cunningham*, 371 U.S. 236,

240 (1963); *see also Hensley v. Municipal Court*, 411 U.S. 345, 351 (1973) (finding

habeas to be an "extraordinary remedy" and that "its use has been limited to

cases of special urgency, leaving more conventional remedies for cases in which

the restraints on liberty are neither severe nor immediate."); *see also*

*Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) (recognizing

that an alien on the threshold of entry into the United States "stands on a

different footing" than one sought to be expelled from the United States).

      Although a limitation on international travel may create an imposition, this

limitation does not support a claim for habeas jurisdiction.  "[T]he doctrine of

judicial self-restraint requires [the Courts] to exercise the utmost care . . . .

Accordingly, before conferring constitutional status upon a previously

unrecognized 'liberty,' [the Courts] have required 'a careful description of the

asserted fundamental liberty interest,' as well as a demonstration that the interest

is 'objectively, deeply rooted in this Nation's history and tradition, and implicit in

the concept of ordered liberty, such that neither liberty nor justice would exist if

[it was] sacrificed.'"  *Kerry v. Din*, 135 S. Ct. 2128, 2134 (2015) (internal quotation

marks and citation omitted).  "[N]o process is due if one is not deprived of 'life,

liberty, or property.'"  *Id.* at 2132, citing *Swarthout v. Cooke*, 562 U.S. 216, 219, 131

S.Ct. 859, 178 L.Ed.2d 732 (2011) (per curiam).  Indeed, Courts long have held that

unadmitted nonresident aliens have no constitutional right of admission to the

United States as a nonimmigrant or otherwise.  *See Kleindienst v. Mandel*, 408

U.S. 753, 762 (1953) (holding that "[i]t is clear that Mandel personally, as an

unadmitted and nonresident alien, had no constitutional right of entry to this country as a nonimmigrant or otherwise"); *Noel v. Chapman*, 508 F.2d 1023, 1027 (2d Cir.), *cert. denied,* 423 U.S. 824 (1975).

By adopting Petitioners' contrary interpretation of "in custody," the millions of people who apply for entry into the United States every year, but do not even have a visa to seek such admission, would be considered to be in the custody or control of the United States.  Indeed, if Petitioner's interpretation were followed to its logical conclusion, the numerous potential applicants for admission or parole to the United States would inundate federal courts with habeas petitions in efforts to compel the government to admit or parole them into the United States – a manner of entry into the United States which would permit aliens to circumvent the immigration laws prescribed by Congress.  Accordingly, because 28 U.S.C. § 2241 does not provide jurisdiction over Petitioners' putative restraint on liberty claims and they are not in custody, these claims should be dismissed for lack of subject matter jurisdiction.

> **B.    Petitioners' Requests Constitute Impermissible Collateral Challenges to Their Removal Orders.**

Here, the Court lacks subject-matter jurisdiction to review Petitioners' claims because the INA prohibits judicial review of decisions concerning final orders of removal, like the removal orders challenged here.  *See* 8 U.S.C. § 1252(g).  As section 1252(g) makes clear, a decision to "execute" a final order of removal is not subject to judicial review.  *Id.*  Section 1252(g) provides,

> no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien *arising from the*

> ***decision or action*** by the Attorney General[3] to
> commence proceedings, adjudicate cases,
> or execute removal orders against any alien under [the
> INA].

*Id.* § 1252(g) (emphasis added).[4]  Petitioners claim that their habeas petition does not challenge the validity or execution of their removal orders – a claim that would be subject to the jurisdictional limitations of 8 U.S.C. § 1252(g).  ECF No. 1-2 at 21.  It is clear, however, that the true restraints identified in their petition arise from their final orders of removal.  ECF No. 1-2 at 1.  By seeking this Court's intervention to issue writs of habeas corpus *ad testificandum* to compel the United States to bring them to the United States, they are, in fact, raising claims that arise from the decision or action to execute their removal orders.  Through the writs of habeas corpus *ad testificandum*, Petitioners are seeking to circumvent the express statutory bar that prevents Petitioner Milardo from seeking admission until 2031, and prevents Petitioner Giammarco from seeking admission until 2032 without first seeking the appropriate permission to reapply.  ECF No. 1-2 at 45; *see* 8 U.S.C. §§ 1182(a)(9)(A)(ii), (a)(9)(A)(iii).  In other words, Petitioners are seeking to challenge the consequences arising from the execution

---

[3] As of March 1, 2003, the Immigration and Naturalization Service ceased to exist as an independent agency within the U.S. Department of Justice and its functions were transferred to the Department of Homeland Security.  *See* Homeland Security Act of 2002, Pub. L. No. 107-296, §§ 441, 451 & 471, 116 Stat. 2135 (2002).  *See also Jama v. ICE*, 543 U.S. 335, 338 n.1 (2005) (noting transfer).   As such, this statute, as with a number of others throughout the INA, properly should be read as referencing the Secretary of Homeland Security.

[4] The INA does provide for "review of constitutional claims or questions of law raised upon *a petition for review filed with an appropriate court of appeals in accordance with this section.*" 8 U.S.C. § 1252(a)(2)(D) (emphasis added).

of their removal from the United States – *i.e.,* the twenty (20) year bar on their potential admission to the United States.

Petitioners acknowledge that the removal orders are precluded from judicial review but insist that the habeas provisions set forth at 28 U.S.C. § 2241(c)(5), give this Court jurisdiction to consider their collateral attacks on the impact of those removal orders.  ECF No. 1-2 at 1.  Petitioners are wrong.  Rather, their claims arise from consequences of the decision to execute their final removal orders.  *See* 8 U.S.C. §§ 1252(a)(5), (b)(9), (g).

For example, where a petitioner sought to compel adjudication of an I-212 Application for Permission to Reapply for Admission, the Second Circuit determined that section 1252(a)(5)'s jurisdictional bar applied.  *See Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011) (holding "that section 1252(a)(5)'s jurisdictional bar applies equally to preclude . . . an indirect challenge" to a final order of removal, where petitioner sought  to compel USCIS to adjudicate an I-212 application for permission to reapply for admission).  The same analysis applies equally here, where Petitioners appear to seek to have this Court order a grant of parole, admission, waiver of inadmissibility, permission to reapply for admission, or a non-immigrant visa.  Accordingly, because Petitioners' habeas claims for relief are precluded by the clear language of 8 U.S.C. § 1252, the Court lacks jurisdiction to grant their Petition.

**C.    This Court Lacks Jurisdiction to Order the Executive Branch to Issue a Visa, Admit, or Parole Aliens into the United States.**

To the extent that the Petition is construed as seeking review of a decision by the Secretary of Homeland Security to deny a travel document known as "advanced parole" which would permit Petitioners to arrive in the United States and seek parole into the United States, such a decision is wholly within the discretion of the Secretary of Homeland Security.  *See* 8 U.S.C. § 1182(d)(5). Moreover, any decision on a request for a waiver of inadmissibility under section 1182(d)(3) or for permission to reapply for admission under section 1182(a)(9)(a)(iii) are discretionary determinations reserved to the Secretary of Homeland Security.[5]  As such, 8 U.S.C. § 1252(a)(2)(B)(ii) deprives this court of jurisdiction to review "any . . . decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the grant of relief under section 1158(a) [relating to asylum]."  The statute specifically states that the jurisdictional bar applies

---

[5] **Under 8 U.S.C. § 1182(d)(3)(A), the Secretary of State may, after approval by the Secretary of the Homeland Security, issue a document reflecting a grant of temporary parole to an alien who is applying for a nonimmigrant visa, but is known to be ineligible for such a visa.  The Secretary of Homeland Security, thereafter, may, in his discretion, parole the alien into the country temporarily, notwithstanding the alien's inadmissibility to the United States, on a case-by-case basis for humanitarian reasons or because of what he deems is a significant public benefit.  *See* 8 U.S.C. § 1182(d)(5)(A).  Such parole is distinct from admission, for which both Petitioners in this case are barred for the twenty-year period following the execution of their removal orders without separate permission to reapply.  *See* 8 U.S.C. § 1182(a)(9)(A); *see also* 8 U.S.C. § 1101(a)(13)(B) (providing that "[a]n alien who is paroled under [8 U.S.C. §] 1182(d)(5) . . . shall not be considered to have been admitted" for purposes of 8 U.S.C. § 1182(a)(13)(A)).**

"[n]otwithstanding . . . section 2241 of title 28, or any other habeas corpus

provision."

As clearly expressed by the Supreme Court over 100 years ago, the U.S.

government's power to admit and exclude aliens "without judicial intervention" is

well-settled:

> The power of Congress to exclude aliens altogether
> from the United States, or to prescribe the terms and
> conditions upon which they may come into this country,
> and to have its declared policy in that regard enforced
> exclusively through executive officers, *without judicial
> intervention*, is settled by our previous adjudication.

*Lem Moon Sing v. United States,* 158 U.S. 538, 547 (1895) (emphasis added).  This

guiding principle still holds true today with respect to a consular officer's

decision to issue or refuse a visa.  *See Bustamante v. Mukasey,* 531 F.3d 1059,

1060 (9th Cir. 2008) ("It has been consistently held that the consular official's

decision to issue or withhold a visa is not subject to either administrative or

judicial review.") (internal quotations and citations omitted); *Fiallo* v. *Bell*, 430

U.S. 787, 792 (1977) (the Supreme Court has "long recognized [that] the power to

expel or exclude aliens [is] a fundamental sovereign attribute exercised by the

Government's political departments largely immune from judicial control")

(quoting *Mezei*, 345 U.S. at 210); see *Arizona* v. *United States*, 132 S. Ct. 2492,

2498 (2012).

The Supreme Court has repeatedly recognized that "the power to exclude

aliens is inherent in sovereignty, necessary for maintaining normal international

relations and defending the country against foreign encroachments and dangers

– a power to be exercised exclusively by the political branches of government."

20

*Kleindienst,*[6] 408 U.S. at 765; *Bustamante,* 531 F.3d at 1060) (internal quotations and citations omitted).

   No court has recognized the constitutional right of previously removed, nonresident aliens currently seeking nonimmigrant tourist visas to be issued visas by a consular officer and/or be admitted to the United States by CBP.[7]   To the contrary, it is well-settled that non-resident unadmitted alien visa applicants have "no constitutional right to entry as a nonimmigrant or otherwise." *Kleindienst*, 408 U.S. at 762; *Noel*, 508 F.3d at 1027.  To that end, Courts have held that the judicial branch does not have jurisdiction to order the Executive Branch of the United States to release foreign nationals detained by the United States into the territorial United States.  *See, e.g., Kiyemba v. United States*, 555 F.3d

---

[6] In *Kleindienst* the plaintiffs sought review over the Attorney General's denial of a waiver of inadmissibility, rather than the consular officer's denial of the visa. *Kleindienst*, 408 U.S. at 760.  The constitutional interest at stake in *Kleindienst* was a First Amendment claim – scholars and students claimed that the refusal of a visa to an academic invited to the United States adversely affected their First Amendment right to hear and meet Mandel in person.  *Id.* at 760.  The *Kleindienst* Court was satisfied that the reason given for the denial of the waiver of the ineligibility ground was "facially legitimate and bona fide," and the Court's inquiry ended there: "the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against the First Amendment interests of those who seek personal communication with the applicant."  *Id.* at 770.  Petitioners in this action have raised no First Amendment claims.

[7]  In *Samirah v. Holder*, 627 F.3d 652 (7th Cir.2010), an alien pursuing an adjustment of status application challenged the revocation of his advance parole. The Seventh Circuit remanded the case to the district court for the purpose of issuing an order "commanding the Attorney General to take whatever steps are necessary to enable the plaintiff to reenter the United States for the limited purpose of reacquiring the status." *Id.* at 665.  The Samirah case is distinguishable from the Petitioners' case, however, as the alien in *Samirah* was not an aggravated felon with a final removal order barring his return to the United States.

1022, 1026 (D.C. Cir.), *vacated,* 130 S. Ct. 1235, *reinstated in amended form*, 605 F.3d 1046 (D.C. Cir. 2010).

To the extent that the Petition in this case is construed as seeking review of the denial of visas by the consular officer abroad, that action is barred by the doctrine of consular non-reviewability.  *See Wan Shih Hsieh v. Kiley*, 569 F.3d 1179, 1181 (2d Cir. 1978).  No court can compel a consular officer to issue a visa to an unadmitted nonresident alien that is ineligible for such visa.  *See American Academy of Religion v. Napolitano*, 573 F.3d 115 (2d Cir. 2009) (holding that consular officers may deny visas for any facially legitimate and bona fide reason, even if an individual with standing in the United States claims that the visa denial infringes on his or her First Amendment rights); *see also Wan Shih Hsieh*, 569 F.2d at 1181  ("It is settled that the judiciary will not interfere in the visa-issuing process.").  Accordingly, this court lacks jurisdiction to review Petitioners' requests for inadmissibility waivers, parole, permission to apply for readmission, or admission into the United States.

D.    Petitioners Cannot Rely on a State Legislative Subpoena to Circumvent Federal Immigration Law.

Petitioners seek to take advantage of a state-issued subpoena in order to circumvent federal immigration laws.  The federal government, however, has exclusive authority over immigration.  "A fundamental principle of the Constitution is that Congress has the power to preempt state law."  *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000).  When Congress acts within the scope of its constitutional authority, any state enactment that conflicts with federal law is preempted.  *Hines v. Davidowitz*, 312 U.S. 52, 66-67 (1941).  Express

22

preemption occurs when Congress passes a statute that contains express preemptive language*. Jones v. Rash Packing Co.*, 430 U.S. 519, 525 (1977).  "In the absence of express pre-emptive language, Congress' intent to pre-empt all state law in a particular area may be inferred where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress 'left no room' for supplementary state regulations."  *Hillsborough County, Florida v. Automated Medical Labs.*, Inc., 471 U.S. 707, 713 (1985) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).

Moreover, "[u]nder the Supremacy Clause, pre-emptive effect is to be given to congressionally enacted laws, not to judicially divined legislative purposes." *Arizona v. United States*, _ U.S. _, 132 S.Ct. 2492, 2524 (2012).  By empowering Congress to preempt state law, "[t]he Supremacy Clause provides a clear rule that federal law 'shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.'" *Id.* at 2500. (Citing Art. VI, cl. 2.) As a result, not only are states "precluded from regulating conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance," but States' laws are also "preempted when they conflict with federal law."  *Id.*  This is especially important with respect to immigration law.  "The Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens." *Arizona*, 132 S. Ct. at 2498.  Pursuant to that power, Congress enacted the INA, Pub. L. No. 82-414, 66 Stat. 163 (1952), as amended, 8 U.S.C. §§ 1101 *et seq.*, and other federal

immigration laws, which together constitute "a 'comprehensive federal statutory scheme for regulation of immigration and naturalization' and set 'the terms and conditions of admission to the country and the subsequent treatment of aliens lawfully in the country.'" *Chamber of Commerce v. Whiting*, 131 S. Ct. 1968, 1973 (2011) (quoting *DeCanas v. Bica*, 424 U.S. 351, 353, 359 (1976)).  Because the federal government has occupied the field, "even complementary state regulation is impermissible." *Id.* Thus, the Supremacy Clause prohibits the Petitioners' proposed end-run around the comprehensive immigration scheme laid out by Congress.

> E.      Petitioners' In-Person Testimony is Not Necessary, a Predicate Required by 28 U.S.C. § 2241(c)(5).

Both Petitioners claim their presence is necessary before the Judiciary Committee, which seeks in-person testimony "about the impact of Connecticut criminal convictions on immigrant households, including the Milardo and Giammarco families, affected by deportation or the threat of deportation."  ECF No. 1¶ 12.  The Judiciary Committee may easily obtain testimony concerning the impact of deportations on families from the Petitioners' families themselves, who all reside in Connecticut and are in the best position to describe the impact of their family member's deportation on the rest of the family.  Arguably, if the Judiciary Committee is focused on the impact of deportation on families, the testimony of Petitioners' grandchildren, children and spouses would be much more relevant and compelling than Petitioners' own live testimony.

Moreover, if internet connections are lacking or unreliable in their own homes, Petitioners could seek more reliable videoconference options within Italy.

Or, Petitioners can submit videotaped deposition testimony in answer to designated questions, as depositions are routinely conducted by videoconference and even telephonically, and are sometimes videotaped in order to permit the assessment of the deponent's credibility.  In sum, a multitude of reasonable alternative methods exist to substitute for Petitioners' live testimony.

It also bears noting that the granting of the writ of habeas *ad testificandum* requested by Petitioner Milardo is not necessary in order for her testify in her state habeas petition, in which she seeks to appear in person to assert a claim under *Padilla v. Kentucky*, 559 U.S. 356 (2010).[8]  Indeed, Petitioner Milardo could request that the state court overseeing her habeas matter issue letters rogatory to an Italian Court having personal jurisdiction over Petitioner Milardo in order to compel her testimony.  *See, e.g., United States v. Salim*, 855 F.2d 944, 948-49 (2d Cir. 1988).  Both Italy and the United States are parties to the Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters, *opened for signature* Mar. 18, 1970, 23 U.S.T. 2555, 847 U.N.T.S. ("Hague Evidence Convention").  The Judiciary Committee is ultimately responsible for following proper procedures to compel evidence from witnesses outside the United States under the Convention,[9] but there is nothing precluding the Petitioners, who seem

---

[8] The *Padilla* decision was decided on March 31, 2010.  Petitioner Milardo, however, pleaded guilty on January 26, 2010, before the Supreme Court's decision in *Padilla*.  *See Sutherland v. Holder*, 769 F.3d 144, 146-47 (2nd Cir. 2014) (Citing *Chaidez v. United States*, 568 U.S. _, 133 S. Ct. 1103, 1113 (Feb. 20, 2013) ("defendants whose convictions became final prior to Padilla therefore cannot benefit from its holding").

[9] The procedure for requesting the compulsion of evidence under the Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, done at the Hague, March 18, 1970 (the "Hague Evidence Convention"), is completely under

eager to testify, from providing the Committee with publicly available information about the Convention's operation.[10]  Alternatively, if internet connections are lacking or unreliable in their own homes, Petitioners could request that the Judiciary Committee withdraw the subpoenas and could proceed to testify as voluntary witnesses in accordance with Article 16 or 17 of the Hague Evidence Convention[11].  Or, Petitioners can submit videotaped deposition testimony in answer to designated questions, as depositions are routinely conducted by videoconference and even telephonically, and are sometimes videotaped in order to permit the assessment of the deponent's credibility.  In sum, a multitude of

the control of the Italian judiciary.  Requests for Compulsion are transmitted directly from the requesting court to the Italian Central Authority for the Hague Evidence.  Requests must be in duplicate and written or translated into Italian, and should include any specific procedures desired by the requestor, such as verbatim transcripts. Legislators wishing  to attend the hearing, either in person or virtually, would need to include a statement to this effect in the Letter of Request specifying that they be notified of the hearing date, time, and place. The Italian court is under no obligation to allow the legislators' active participation in the hearing. If such permission is granted, the questions would normally be asked through the magistrate.

[10] Hague Conference on Private International Law, Italy - Central Authority (Art. 2) and practical information, *at* https://www.hcch.net/en/states/authorities/details3/?aid=503 (last visited Mar. 25, 2016); U.S.  Dep't. of State, Italy, *at* https://travel.state.gov/content/travel/en/legal-considerations/judicial/country/italy.html (last visited Mar. 25, 2016).

[11] The Italian Government designated the Court of Appeal within whose jurisdiction the evidence is being taken as the competent authority to authorize foreign judicial personnel to be present at the execution of a Letter of Request, pursuant to Article 8, and authorize foreign diplomatic officers, consular agents or commissioners to take evidence under Article 16 or 17 of the Hague Evidence Convention.  Hague Conference on Private International Law, Italy - competent authority (Art. 8, 16, 17, 18), *at* https://www.hcch.net/en/states/authorities/details3/?aid+504 (last visited Mar. 25, 2016); U.S.  Dep't. of State, Italy, *at* https://travel.state.gov/content/travel/en/legal-considerations/judicial/country/italy.html (last visited Mar. 25, 2016).

reasonable alternative methods exist to substitute for Petitioners' live testimony.[12]  Accordingly, the Court should dismiss the petition for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(1).

## CONCLUSION

Respondents respectfully request that this Court dismiss Petitioners' for writs of habeas corpus ad testificandum for lack of subject-matter jurisdiction and failure to state a claim for which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(1), (6).  Petitioner Milardo and Giammarco concede they are each subject to a final order of removal barring them from seeking admission to the United States until 2031 and 2032, respectively.  Petitioners therefore cannot use a writ of habeas to create jurisdiction where there is none, and litigate an issue that is preempted by the INA, as their removal orders bar them from raising their claims

---

[12] If the subpoenas are withdrawn, voluntary testimony, including voluntary deposition testimony is an option under Article 16 or 17 the "Hague Evidence Convention.  Article 16 pertains to the voluntary testimony of an Italian or third country national.  Either a Consular Officer or a commissioner (for example, a private American attorney) appointed by a U.S. Federal District Court may take the testimony of a witness of any nationality without compulsion.  In the case of non - U.S. citizens, the U.S. consular officer abroad or commissioner (through local counsel) is required to  secure the permission of the Italian Court of Appeals with jurisdiction over the deponent and arrange for someone authorized under Italian law to administer oaths to do so.  Article 17 permits a commissioner (for example, a private American attorney) appointed by a U.S. Federal District Court to take the testimony of a witness of any nationality without compulsion.  For voluntary depositions of non-U.S. citizens, the commissioner must first secure permission through local counsel for the Court of Appeals in Italy with jurisdiction over the deponent, and arrange for someone authorized under Italian law to administer oaths, to do so.  If the deposition is to be conducted before a U.S. consular officer, American attorneys should make all necessary arrangements with the Embassy in Rome or the appropriate U.S. consulate.  If counsel intends to utilize videotape equipment for the purpose of recording the deposition, special customs clearances must be obtained from appropriate Italian customs authorities before such equipment can be taken into Italy.  Without such clearances, the equipment may be confiscated.

in district court.  For these reasons, the Court should dismiss the petition for lack

of subject matter jurisdiction and failure to state a claim.

DATED: March 25, 2016
New Haven, Connecticut

                    Respectfully submitted,

                    BENJAMIN C. MIZER
                    Principal Deputy Assistant Attorney General
                    Civil Division

                    WILLIAM C. PEACHEY
                    Director

                    COLIN A. KISOR
                    Deputy Director

                    ELIZABETH J. STEVENS
                    Assistant Director

                    JOSEPH D. HARDY
                    Trial Attorney

                    /s/ Sherease Pratt
                    SHEREASE PRATT
                    Trial Attorney – NY2620912
                    United States Department of Justice
                    Civil Division
                    Office of Immigration Litigation
                    P.O. Box 868, Ben Franklin Station
                    Washington, DC 20044
                    Telephone: (202) 616-0063
                    Facsimile: (202) 616-8962
                    Email: sherease.pratt@usdoj.gov

                    COUNSEL FOR RESPONDENTS

## CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2016, a copy of the foregoing Memorandum was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Respectfully submitted,

/s/ Sherease Pratt
SHEREASE PRATT
Trial Attorney
U.S. Department of Justice

29