UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PAOLINA MILARDO, <br> ARNALDO GIAMMARCO, <br>     Plaintiffs, <br> <br> v. <br> <br> <br> R. GIL KERILIKOWSKE, <br> JEH JOHNSON, SARAH SALDANA, <br> AND LORETTA LYNCH, <br>     Defendants. | CIVIL ACTION NO. <br> 3:16-MC-00099 (VLB) <br> <br> April 1, 2016 |

**MEMORANDUM OF DECISION GRANTING DEFENDANTS' MOTION TO DISMISS EMERGENCY PETITION FOR WRITS OF HABEAS CORPUS *AD TESTIFICANDUM*** 
**[Dkt. #23]**

Petitioners Paolina Milardo ("Milardo") and Arnaldo Giammarco ("Giammarco") seek writs of habeas corpus *ad testificandum* to enable them to return to the United States to testify in person before the Judiciary Committee of the Connecticut General Assembly (the "Judiciary Committee") and for Milardo to testify in person in support of her state habeas petition.  For the reasons that follow, the Court determines that it lacks jurisdiction to grant Petitioners the relief they seek.  Accordingly, the Defendants' motion is GRANTED.

I.      **Factual Background**

On March 16, 2016, Petitioners filed an emergency petition for writs of habeas corpus *ad testificandum*.  [Dkt. #1 at 1].  Petitioners are each former U.S. residents who lived in the country for 50 years and who have been deported to Italy.  [Dkt. #1-2, Pet'rs' Mem. at 34].  On February 25, 2016, Connecticut Representative William Tong and Senator Eric Coleman, co-chairs of the Judiciary Committee, issued legislative subpoenas to both Petitioners.  *See* [Dkt. #5-1, Ex. 1 to Wishnie Decl. at 7-8].  The subpoenas compel their attendance at

1

"an informational hearing" on April 4, 2016, for the purpose of giving "testimony on what [they] know regarding the . . . impact of Connecticut criminal convictions on immigrant households, including [the Petitioners'] famil[ies], affected by deportation or threat of deportation." [*Id.*].  The Committee determined that their "presence is necessary for committee members to evaluate [their] credibility, as well as [their] acceptance of responsibility and remorse for the specific events that occurred in [Connecticut] which resulted in [their] deportation." [*Id.*].

Relatedly, Representatives Rick Lopes, Jack Hennessy, and Roland Lemar introduced two proposed joint resolutions at the January 2015 session of the General Assembly, Resolution Nos. 46 and 47, seeking the pardon of Petitioner Giammarco.  *See* H.J. 46 (2015); H.J. 47 (2015).  The proposed resolutions seek the "unconditional pardon" of Giammarco for convictions of nonviolent offenses he committed prior to 2008, along with the restoration of "all rights forfeited" by Giammarco "by reason of conviction of crime." *Id*.  On January 26, 2015, the resolutions were referred to the Committee on Veteran's Affairs, and on February 3, 2015, Resolution No. 46 was reserved for a subject matter public hearing.  However, this resolution "did not leave the Committee." [Dkt. #5-1, Ex. 19C. to Wishnie Decl. at 124, ¶ 19].  The status of Resolution No. 47 is unclear from the documents submitted by the Petitioners.

As deportees seeking to comply with the legislative subpoenas, on February 29, 2016, Petitioners contacted the U.S. Immigration and Customs Enforcement ("ICE") to request a temporary parole of their deportation for significant public benefit and humanitarian reasons.  Under 8 C.F.R. § 212.5, aliens who "will be witnesses in proceedings being, or to be, conducted by

2

judicial, administrative, or legislative bodies in the United States" are eligible for parole "on a case-by-case basis for 'urgent humanitarian reasons' or 'significant public benefit,' provided the aliens present neither a security risk nor a risk of absconding."  8 C.F.R. § 212.5(b)(4).

On March 8, 2016, with knowledge of the subpoenas, in which the Connecticut legislators conveyed the need for in-person testimony to assess the Petitioners' credibility, acceptance of responsibility, and remorse, ICE denied Petitioners' requests.  See [Dkt. #5-1, Ex. 2 to Wishnie Decl. at 10, 12].  In its denial notices, ICE explained that it, "has prosecutorial discretion and may exercise it in the ordinary course of enforcement."  [*Id*.].  As for humanitarian parole, the letter explained that this is "used sparingly to bring someone who is otherwise inadmissible into the United States . . . due to a compelling emergency" and that a subpoena calling for testimony before the Judiciary Committee did not constitute a "compelling emergent reason to justify humanitarian parole."  [*Id*. at 10-11, 12-13].  Significant public benefit parole "is a temporary measure generally used to provide a legal mechanism for informants, witnesses, criminals, and defendants" to "assist with ongoing investigations, prosecutions or testify as witnesses in proceedings."  [*Id*. at 10, 12].  ICE determined that Petitioners were not eligible for this parole upon concluding that their "physical presence in the United States [wa]s not necessary to provide testimony before the Judiciary Committee."  [*Id*. at 11, 13].  ICE based its conclusion on the availability of videoconferencing technology, which was "widely utilized across the country" and was authorized by the Federal Rules of Civil Procedure.  [*Id*.].  In addition, the letters informed Petitioners that ICE "may

3

be able to provide [them] access to ICE video teleconference resources" in one of its Italy offices. [*Id.*]. In order to pursue this possibility, ICE invited both Petitioners to "reach out to [its] Harford office" and thereafter, ICE "will begin making arrangements." [*Id.*]. For the same reason, ICE found that Petitioner Milardo's desire to testify in person at her state habeas trial did not justify significant public benefit parole. [*Id.* at 11].[1] The record does not indicate that Petitioners have ever contacted ICE and requested access to its videoconferencing resources.[2] In addition, there is no indication that Petitioners sought from ICE reconsideration or further review of this decision, nor did they present to ICE, as they do to this Court, information regarding the technological difficulties they have encountered while living in Italy, which they believe may imperil their ability to testify remotely at the hearing before the Judiciary Committee. *See* [Dkt. #5-1, Ex. 19B to Wishnie Decl., at 118-19, ¶¶ 41-44, Ex. 19C to Wishnie Decl. at 125, ¶¶ 26-29].[3]

---

[1] In 2010, Petitioner Milardo pled guilty to first-degree larceny, in a manner constituting an aggravated felony, and after serving her sentence, ICE arrested, detained, and deported her. [Dkt. #5-1, Ex. 19B to Wishnie Decl. at 116, ¶¶ 25-26, 29]. On May 21, 2015, she filed a state habeas petition based on ineffective assistance of counsel, as she claimed the attorney who represented her in the state criminal case failed to advise her that pleading guilty to the charged offense could bring about her deportation. [*Id.* at 115, [Dkt. #5-1, Ex. 19B to Wishnie Decl. at 21, 116, ¶ 28, 117, ¶¶ 36-37].

[2] After a hearing on this motion, Respondents filed a report describing the procedure by which these resources could be obtained, but stated that they could not "guarantee any particular timeframe for execution of a request," in part, because the request is predicated on action by Italian judicial authorities. [Dkt. #22, Resps.' Report, dated Mar. 30, 2016, at 2].

[3] The co-chairs of the Judiciary Committee have submitted two joint declarations in this case in which they explain why the Committee believes live testimony is necessary. The first declaration offered solely conclusory assertions that "[o]nly in-person testimony" would permit the Committee "to consider

4

In addition to their requests for temporary parole, Petitioners have pursued other procedural mechanisms available for nonimmigrant aliens to travel to the United States.  On March 10 and 11, 2016, they submitted applications for B-2 visitor visas, which are still pending, and they have made appointments with the U.S. Consulate General of the United States in Naples, Italy, to apply for a discretionary waiver of admissibility under § 212(d)(3) of the Immigration and Nationality Act ("INA").  [Dkt. #5-1, Exs. 5-8 to to Wishnie Decl.].  The Petitioners' appointments occurred on March 17, 2016, but it is still unknown whether either will receive a waiver.  [Dkt. #5-1, Exs. 19B and 19C to Wishnie Decl. at 119, ¶ 51, 126, ¶ 34].[4]

---

[Petitioners'] personal remorse and acceptance of responsibility for past crimes" and that testimony by "phone or videoconference would hinder the goals of [the] hearing and weaken [the Committee's] ability to communicate with and assess the remorse of [Petitioners]."  [Dkt. #15-1, Joint Decl. at ¶¶ 11, 13].

However, in a second declaration, prepared after the Court's March 28, 2016 hearing on the emergency petition, and in response to the Court's inquiry, the co-chairs explained that "important communicative tools are lost when video-conferencing is used to replace in-person testimony" including a diminished capacity to gauge "eye contact . . . body language, and  . . . vocal inflections."  [Dkt. #20, Supp. Joint Decl. at ¶ 6].  In addition, they raised "practical considerations," including whether the legislature's technology system could accommodate video-conferencing testimony, a potential inability to record video testimony, and that video-conferencing is not conducive to panel-style questioning.  [Id. at ¶ 8].  Finally, they cited Rule 6(c) of the Rules and Precedents of the General Assembly of Connecticut, which governs the conduct of hearings and is silent as to whether remote testimony is permissible.  [Id. at ¶ 9].  Petitioners did not convey any of these additional facts to ICE prior to its denials.

[4] Petitioners also sought and were denied a travel authorization with the U.S. Customs and Border Protection's Electronic System for Travel Authorization (the "ESTA"), but this travel request was predicated on a successful resolution of their parole applications.  [Dkt. #5-1, Exs. 19B and 19C to Wishnie Decl. at 119, ¶ 48, 126, ¶ 32].

Following these travel denials, Petitioners filed the instant Emergency Petition for Writs of Habeas Corpus *Ad Testificandum*. *See* [Dkt. #1]. Petitioners contend that the Court has authority to issue writs of habeas corpus *ad testificandum*, they may be issued to facilitate legislative testimony, Petitioners are in "custody" for habeas purposes, and the circumstances militate in favor of granting the writ.

## II.  Legal Standards

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction (12(b)(1))

"Federal courts are courts of limited jurisdiction."  *Gunn v. Minton*, __U.S.__, 133 S. Ct. 1059, 1064 (2013).  Subject matter jurisdiction is not waivable, and a lack of subject matter jurisdiction may be raised at any time, by a party or the court *sua sponte*.  *See Gonzalez v. Thaler*, __U.S.__, 132 S. Ct. 641, 648 (2012); *see also Sebelius v. Auburn Reg'l Med. Ctr.*, __U.S.__, 133 S. Ct. 817, 824 (2013) ("Objections to a tribunal's jurisdiction can be raised at any time, even by a party that once conceded the tribunal's subject-matter jurisdiction over the controversy.").  If a court lacks subject matter jurisdiction, it must dismiss the action.  *See* Fed. R. Civ. P. 12(h)(3).

A "district court must take all uncontroverted facts in the complaint as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).  However, "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings[.]"  *Id*.  "In that case, the party asserting subject matter

6

jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.*

III. <u>Analysis</u>

   A. <u>Petitioners' Writ Requests Indirectly Challenge the Denials of Their Parole Requests Which This Court May Not Review</u>

While Petitioners claim that they do not "seek federal review of the[] . . . recent denials by Respondents of administrative applications for permission to return" to the United States, at oral argument, they acknowledged that the practical effect of granting their request for writs of habeas corpus *ad testificandum* would be to override the parole decisions reached by ICE officials. [Dkt. #1-2, Pet'rs' Memo. at 11].

On May 11, 2005, Congress enacted the REAL ID Act as part of the "Emergency Supplemental Appropriation Act for Defense, the Global War on Terror, and Tsunami Relief, 2005." Pub. L. No. 109-13, 119 Stat. 231 (2005). Section 106 of the Act amends 8 U.S.C. § 1252 of the INA so as to preclude judicial review of certain discretionary decisions made by immigration officials. "Congress enacted § 106 in an effort to address and ameliorate the effect of a number of court decisions" in order to "restore uniformity and order to the law." *Saavedra De Barreto v. INS*, 427 F. Supp. 2d 51, 57 (D. Conn. 2006). As amended by § 106 of the REAL ID Act, 8 U.S.C. § 1252(a)(2)(B)(ii) provides:

> Notwithstanding any other provision of law . . . including section 2241 of Title 28, or any other habeas corpus provision . . . no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority of which is specified under this subchapter[5] to be in the

---

[5] "The phrase 'this subchapter' refers to subchapter II of Chapter 12 of Title 8 of the United States Code, which includes §§ 1151-1381," and thus, § 1182(d)(5)(A),

7

>  discretion of the Attorney General or the Secretary of Homeland
>  Security, other than the granting of [asylum].

*Id.*

In light of this intent, courts in this Circuit recognize that the decision to grant an alien parole is normally not reviewable by district courts. *See Young v. Aviles*, 99 F. Supp. 3d 443, 456 n. 8 (S.D.N.Y. 2015) (stating district court "lacks jurisdiction to consider a challenge to discretionary decisions denying parole to aliens," including parole "'on the basis of 'urgent humanitarian reasons' or significant public benefit'"); *Viknesrajah v. Koson*, No. 09-CV-6442 CJS, 2011 WL 147901, at *2 (W.D.N.Y. Jan. 18, 2011) ("District courts do not have jurisdiction to consider challenges to discretionary decisions denying parole to aliens seeking asylum."); *Salim v. Tryon*, No. 13-cv-6659-JTC, 2014 WL 1664413, at *2 (W.D.N.Y. Apr. 25, 2014) ("[F]ederal courts lack jurisdiction to review discretionary decisions concerning parole under section 1182 (d)(5)."); *see also* 8 C.F.R. § 212.5(a)-(b)(4).[6]

---

applicable here. *Alkeylani v. Dep't of Homeland Sec.*, 514 F. Supp. 2d 258, 262 (D. Conn. 2007) (citing *Sanusi v. Gonzalez*, 445 F.3d 193, 198 (2d Cir. 2006)).

[6] 8 C.F.R. § 212.5(a) states: "The authority of the Secretary to . . . grant parole . . . shall be exercised by the Assistant Commissioner, Office of Field Operations; Director, Detention and Removal; directors of field operations; port directors; special agents in charge; deputy special agents in charge; associate special agents in charge; assistant special agents in charge; resident agents in charge; field office directors; deputy field office directors; chief patrol agents; district directors for services; and those other officials as may be designated in writing, subject to the parole and detention authority of the Secretary or his designees. *The Secretary or his designees may invoke, in the exercise of discretion, the authority under section 212(d)(5)(A) of the Act.*" *Id.* (emphasis added).

8 C.F.R. § 212.5(b)(4) states: "The parole of aliens within the following groups who have been or are detained in accordance with § 235.3(b) or (c) of this chapter would generally be justified only *on a case-by-case basis* for 'urgent humanitarian reasons' or 'significant public benefit,' provided the aliens present

**Clearly aware of this precedent, Petitioners seek to avoid its application by petitioning this Court under a separate legal doctrine, habeas corpus *ad testificandum*, for an order that will effectively reverse ICE's prior decisions denying their parole requests. Petitioners' argument fails for at least two reasons.**

**First, in *Delgado v. Quarantillo*, 643 F.3d 52 (2d Cir. 2011), the Second Circuit expressly rejected a plaintiff's attempt to challenge indirectly an order of removal issued against her by bringing a mandamus action under the APA, the Due Process Clause, and the Equal Protection Clause compelling the USCIS to make a determination on the merits of her Form I-212 application. In considering her request, the court found that review of this application was "inextricably linked" to the removal order because it was "a necessary prerequisite to her ultimate goal of adjustment of status" which "would render the [removal] order 'invalid.'" *Id*. at 55. Thus, the Circuit found that the plaintiff was "indirectly challenging her reinstated order of removal," which she was otherwise jurisdictionally barred from contesting by 8 U.S.C. § 1252(a)(5), a different portion of the same section of the INA applicable here. In determining whether or not a court has jurisdiction over a suit brought against immigration authorities, the Circuit instructed that the answer to the question "will turn on the substance of the relief that a plaintiff is seeking." *Id*.**

**Petitioners contend that *Delgado* is inapplicable because their writ request is not "'inextricably linked' to their removal orders." [Dkt. #18, Pet'rs' Resp. at 9].**

---

neither a security risk nor a risk of absconding . . . Aliens who will be witnesses in proceedings being, or to be, conducted by judicial, administrative, or legislative bodies in the United States." *Id*. (emphasis added).

However, Petitioners construe *Delgado* too narrowly, as multiple courts have applied it to indirect challenges of discretionary determinations unconnected to a removal order. See *Kolenovic v. U.S. Citizenship & Immigration Serv.*, 9 F. Supp. 3d 322, 325-27 (S.D.N.Y. 2014) (noting that plaintiff "is not subject to an order of deportation," applying *Delgado* to her mandamus petition, and construing her claim that she was not challenging an earlier denial of her adjustment-of-status application, but was instead seeking adjudication of a timely-filed application, as simply an attempt to circumvent 8 U.S.C. § 1255a(f), which precludes review of untimely-filed adjustment-of-status applications); *Daniel v. Castro*, No. 15-21828-CIV, 2015 WL 5727990, at *4 (S.D. Fla. Sept. 30, 2015) (citing *Delgado* and rejecting petitioner's "attempt to classify the claims in the Complaint as a challenge to the alleged USCIS procedural error in adjudicating his Motion to Reconsider" when it was clear that petitioner was "asking th[e] Court to exercise jurisdiction to indirectly review the USCIS's discretionary decision to deny his Adjustment Application and his Motion to Reconsider"). Here, the sequence of events, the grounds Petitioners raise in support of their writ requests, and the effect of granting these requests make clear that they are ultimately aimed at judicial review of ICE's discretionary denials of parole.

The timing of the requests for parole, the denials, and the writ requests compel the conclusion that the writ requests came in direct response to these denials. Petitioners filed their habeas petitions over two weeks *after* they filed their requests for parole, and over a week *after* those requests were denied.[7] In

---

[7] The sequence of events here contrasts sharply with that presented in *Giammarco v. Beers*, No. 13-cv-1670 (VLB) (D. Conn. Mar. 17, 2016), where this Court distinguished *Delgado*, and found that Petitioner Giammarco's APA claim

**10**

addition, Petitioners' justification for the writs directly challenges the judgment reached by ICE in denying their applications for temporary parole, namely, that live testimony would substantially further the objectives of the Connecticut Judiciary Committee and Petitioner Milardo's habeas case, and that no reasonable alternatives to live testimony exist.  *Compare* [Dkt. #1-2, Pet'rs' Memo. at 42-52] *with* [Dkt. #5-1, Ex. 2 to Wishnie Decl. at 9-13].  Finally, the remedy Petitioners seek from the writs would directly reverse ICE's determination that temporary travel to the United States for the purpose of giving live testimony was not necessary, and as the Second Circuit instructs, it is "the substance of the relief that a plaintiff is seeking" that determines whether they are indirectly challenging an otherwise unreviewable order.  *Delgado*, 643 F.3d at 55.  This Court quite simply does not have that authority.

Second, while Congress did create an exception to the jurisdictional bar on judicial review of agency discretionary decisions, it is not applicable.  In providing limited review of immigration decisions, 8 U.S.C. § 1252(a)(2)(D) states:

> Nothing in [8 U.S.C. § 1252(a)(2)(B)] or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

---

seeking an order that USCIS adjudicate the petitioner's naturalization application which had been pending for decades did not constitute an indirect challenge to his removal notice.  In granting the petitioner's motion for reconsideration, the Court stated that Giammarco's "naturalization application long predated both the removal proceedings and the conduct underlying them" and that it was unclear that "any action taken with respect to Plaintiff's naturalization application will render the removal order 'invalid,' such that the application [wa]s inextricably linked to the removal order."  *Id*. at Dkt. #42.  Neither of these conditions exists in this case.

11

**Alone dispositive is that this limited exception to the jurisdictional bar squarely divests district courts of jurisdiction to entertain such petitions for review, vesting exclusive jurisdiction to do so in the courts of appeals. In addition, Petitioners do not raise any arguments that fall within its scope.**

The Second Circuit has examined this jurisdictional exception on several occasions and found that it does not include "petition[s] for review essentially disput[ing] the correctness of an IJ's fact-finding or the wisdom of his exercise of discretion." *Liu v. INS*, 508 F.3d 716, 721 (2d Cir. 2007). It is instead limited to constitutional claims or questions of law raised by a petition. "[T]he term 'constitutional claims' clearly relates to claims brought pursuant to provisions of the Constitution of the United States." *Maiwand v. Gonzalez*, 501 F.3d 101, 104 (2d Cir. 2007) (citation and quotation omitted). "The phrase 'questions of law,' encompasses the same types of issues [over which] courts traditionally exercised [jurisdiction] in habeas review over Executive detentions . . . which . . . is broader than habeas review over other types of detentions resulting from judicial determinations." *Id.* (quoting *INS v. St. Cyr*, 533 U.S. 289, 301 (2001)).

In determining whether jurisdiction exists, courts must "study the arguments asserted . . . [and] determine, regardless of the rhetoric employed in the petition, whether it merely quarrels over the correctness of the factual findings or justification for the discretionary choices." *Id.* (quotation and citation omitted). "While the argument that a discretionary decision was based on a legally erroneous standard raises a question of law," jurisdiction is lacking where the "legal argument . . . is . . . inadequate to invoke federal-question jurisdiction." *Barco-Sandoval v. Gonzalez,* 516 F.3d 35, 40 (2d Cir. 2007) (citations and

**12**

quotations omitted).  Similarly, while an "IJ's unambiguous mischaracterization of the record raises a question of law . . . an argument that merely quibbles with the IJ's description of the facts . . . does not." *Maiwand*, 501 F.3d at 105 (quoting *Liu v. INS*, 475 F.3d 135, 138 (2d Cir. 2007) and *Khan v. Gonzalez,* 495 F.3d 31, 36 (2d Cir. 2007)).  Accordingly, the Circuit has declined to consider petitioners' contentions that they met the burden of proof required for a different decision, claims that immigration authorities drew improper inferences of fact, challenges to the weighing of factors employed by the agency, claims that the agency overlooked evidence, and agency reliance on outdated authority that was nevertheless consistent with controlling authority.  *Barco-Sandoval*, 516 F.3d at 40, 42; *Maiwand*, 501 F.3d at 105.

  While the Court fully recognizes and honors the sovereignty of the Connecticut General Assembly, the importance of its proceedings to citizens of the State of Connecticut and the nation as a whole, and the advantages of live testimony when it is reasonably available, here, in denying parole, ICE did not misapply the law, misstate facts, or otherwise fail to validly exercise its discretion.  Its conclusion that Petitioners' physical presence in the United States was not necessary because (i) videoconferencing technology was available in Italy, (ii) such testimony is permissible under the Federal Rules of Civil Procedure, and (iii) ICE might be able to assist Petitioners with obtaining ICE video teleconferencing resources at their request was not irrational or otherwise

13

unlawful based on the information presented for its consideration by the Petitioners.[8]

Similarly, ICE's decision not to defer to the judgment of the Judiciary Committee was within its discretion, and it was not contrary to law. Petitioners assert the Tenth Amendment and principles of federalism in support of their request that *the Court* defer to the judgment of the Judiciary Committee. *See* [Dkt. #1-2, Pet'rs' Mem. at 55-56]. Even if the Court were to construe this argument as being raised against ICE in reaching its parole denial decisions, Petitioners' argument fails.

"Congress has plenary power to legislate on the subject of aliens." *City of New York v. United States*, 179 F.3d 29, 34 (2d Cir. 1999). "The Federal Government has broad constitutional powers in determining what aliens shall be admitted to the United States, the period they may remain, regulation of their conduct before naturalization, and the terms and conditions of their naturalization." *Id.* (quoting *Takahashi v. Fish & Game Comm'n*, 334 U.S. 410, 419 (1948)). "Immigration policy can affect trade, investment, tourism, and diplomatic relations for the entire Nation, as well as the perceptions and expectations of aliens in this country who seek the full protection of its laws." *Arizona v. United States*, __U.S.__, 132 S. Ct. 2492, 2498 (2012). When Congress occupies an entire field, "even complementary state regulation is impermissible." *Id.* at 2502. "But even if Congress does not occupy an entire field . . . a state law is preempted where it stands as an obstacle to the accomplishment and

---

[8] While Petitioners point out that, in denying their parole requests, ICE did not guarantee that it would be able to provide them access to videoconferencing equipment, there is no evidence that Petitioners ever requested access. Instead, Petitioners have exclusively pursued in-person testimony.

execution of the full purposes and objectives of Congress." *Dandamudi v. Tisch*, 686 F.3d 66, 80 (2d Cir. 2012) (quoting *Arizona*, 132 S. Ct. at 2505). Here, at minimum, enforcing the Judiciary Committee's subpoena against ICE's discretionary decision to deny the Petitioners' requests to return to the United States would "conflict with th[e] constitutionally derived federal power to regulate immigration." *Takahashi*, 334 U.S. at 419 (holding as preempted "[s]tate laws which impose discriminatory burdens upon the entrance or residence of aliens").

Petitioners quote, out of context, a series of Supreme Court cases, none of which concern state action in connection with federal regulation of immigration, nor even the enforcement of a state legislative subpoena where such enforcement would directly conflict with the determination of a federal agency which Congress imbued with broad discretionary authority. *See Gregory v. Ashcroft*, 501 U.S. 452 (1991) (finding state constitutional provision imposing on state court judges a mandatory retirement age constitutional upon construing ADEA as exempting the judges under 29 U.S.C. § 630(f)); *FERC v. Mississippi*, 456 U.S. 742 (1982) (rejecting state commission's Tenth Amendment challenge to federal Public Utility Regulatory Policies Act); *McGrain v. Daugherty*, 273 U.S. 135 (1927) (affirming Congress' ability to subpoena an unwilling witness to testify at a Congressional hearing); *Printz v. United States*, 521 U.S. 898 (1997) (holding Brady Act requirement that state law enforcement conduct background checks unconstitutional because it imposed on state officers duty to administer a federal regulatory program); *New York v. United States*, 505 U.S. 144 (1992) (striking "take title" provision of Low-Level Radioactive Waste Policy Act which required states to either accept ownership of waste and assume all liability related thereto

15

or to regulate waste disposal at Congress's direction).  None of these cases involve the protection of the nation's borders, including those who may pass through them, which the federal government has fully occupied to the exclusion of the states.  *Takahashi,* 334 U.S. at 419*; Arizona,* 132 S. Ct at 2498; *Dandamudi, 686* F.3d at 80.

Petitioners' request for a writ of habeas corpus *ad testificandum* constitutes a clear, and tacitly admitted, attempt to effect an end-around ICE's decision to deny them parole—a discretionary decision which is generally not subject to judicial review, and is never subject to judicial review by a district court.  Accordingly, the Court lacks jurisdiction to issue the requested writs.

### B. There is Little if Any Validity to Petitioners' Assertion That They are "In Custody" for § 2241 Purposes

Finally, the Court notes, without deciding, that Petitioners' claim that they are "in custody" for purposes of invoking habeas relief under § 2241 has some appeal.  This section states that:

> (c) The writ of habeas corpus shall not extend to a prisoner unless –
>
> (1) He is in custody under or by color of the authority of the United States or is committed for trial before some court thereof; or
>
> (2) He is in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States; or
>
> (3) He is in custody in violation of the Constitution or laws or treaties of the United States; or
>
> (4) He, being a citizen of a foreign state and domiciled therein is in custody for an act done or omitted under any alleged right, title, authority, privilege, protection, or exemption claimed under the

**16**

> commission, order or sanction of any foreign state, or under color thereof, the validity and effect of which depend upon the law of nations; or
>
> (5) It is necessary to bring him into court to testify or for trial.

28 U.S.C. § 2241.

While most courts in the Circuit have interpreted deportation as divesting the court of jurisdiction, at least one court in this District thoughtfully considered the issue and, in the context of an unusual set of facts, held that habeas jurisdiction attached at the time the petition was filed, and the court was not divested of jurisdiction by the positioner's subsequent deportation. *See Fuller v. INS*, 144 F. Supp. 2d 72, 83-85 (D. Conn. 2000). In *Fuller* the habeas petition was filed, but not decided, before the order of deportation entered. That is not the sequence of events here. Petitioners were deported years before they filed their petition.

This court is mindful of the Supreme Court's holding in *Lehman v. Lycoming Cnty. Children's Servs. Agency*, 458 U.S. 502 (1982), which "tightened the 'in custody' requirement," *Fuller*, 144 F. Supp. 2d at 85, but it does appear that aliens who have been removed and deported are subject to aspects of government control and scrutiny which are similar in kind and degree to individuals on parole or probation, whom courts have recognized as being "in custody" for habeas purposes. *See Jones v. Cunningham*, 371 U.S. 236, 240 (1963); *U.S. ex rel. B. v. Shelly*, 430 F.2d 215, 216 n. 3 (2d Cir. 1970). However, even assuming *arguendo* that the Petitioners are "in custody," this fact alone is insufficient to overcome the jurisdictional bar, for the reasons explained above.

IV.   **Conclusion**

For the foregoing reasons, the Court GRANTS Respondents' Motion to Dismiss and DISMISSES the Emergency Petition with prejudice.

IT IS SO ORDERED, ADJUDGED AND DECREED, this 1st day of April 2016, Hartford, Connecticut

                                                                         /s/
                                                 **Vanessa L. Bryant,**
                                                 **United States District Judge**